**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MAUREEN DOWE individually and
on behalf of those Class Members similarly
situated,

                Plaintiffs,

       v.

LEEDS, MORELLI & BROWN, P.C., LEEDS,
MORELLI & BROWN, LLP,  LEEDS &
MORELLI, PRUDENTIAL FINANCIAL
INC., successor to PRUDENTIAL
SECURITIES, INC., LENARD LEEDS,
STEVEN A. MORELLI, JEFFREY K.
BROWN, ERIC SCHWIMMER, GERALD E.
HARPER, PAUL, WEISS, RIFKIND,
WHARTON & GARRISON, LLP, and JOHN
DOES 1-25, fictitious persons and entities,

              Defendants.
-------------------------------------------------------X

Civil Docket No.

**Class Action Complaint**

**Jury Trial Demanded**

      Plaintiff Maureen Dowe, individually and on behalf of all those Class Members similarly

situated, as and for their Complaint against Defendants, allege and state as follows:

<u>**THE PARTIES**</u>

1.      Plaintiff Maureen Dowe (hereinafter "Dowe") is an individual residing in Patterson, New

York within the Southern District of New York.  Dowe brings these claims individually and on

behalf of all Class Members (collectively "Plaintiff").

2.      At all relevant times, Prudential Securities, Inc. was a corporation with offices located at

One Seaport Plaza, New York City, New York.  Defendant Prudential Financial, Inc. is the

successor in interest to PSI.  Prudential Financial has offices located at 751 Broad Street,

Newark, New Jersey.  (Prudential Securities and Prudential Financial are collectively referred to

as "PSI").

3.      At all relevant times, defendants Leeds Brown Law, P.C., Leeds & Morelli, Leeds Morelli & Brown, P.C. and Leeds, Morelli & Brown, LLP (collectively "LMB") was either a Professional Corporation, limited liability company, a partnership or other legal entity practicing law in the state of New York with offices located at One Old Country Road, Carl Place, New York.

4.      At all relevant times, Defendant Lenard Leeds (hereinafter "Leeds") was an attorney licensed to practice law in the State of New York and a principal of LMB.

5.      At all relevant times Defendant Steven A. Morelli (hereinafter "Morelli") was an attorney licensed to practice law in New York and a principal of LMB.

6.      At all relevant times, Defendant Jeffrey K. Brown (hereinafter "Brown") was an attorney licensed to practice law in New York and a principal of LMB.

7.      At all relevant times, Defendant Eric Schwimmer was an attorney licensed to practice law in New York and an employee, principal and/or agent of Defendant PSI.

8.      At all relevant times, Defendant Gerald E. Harper (hereinafter "Harper") was an attorney licensed to practice law in New York and an employee, principal and/or agent of Defendant Paul, Weiss, Rifkind, Wharton & Garrison, LLP (hereinafter the "Paul Weiss").

9.      Defendants John Does 1-25 are fictitious persons and/or entities unknown to Plaintiff who are associated with Defendants and/or conspired with Defendants and whose identities and/or tortious acts have not been revealed or identified.

## JURISDICTION

10.      This Court has federal question jurisdiction pursuant to 42 U.S.C. §§ 1981 and 1985 over the First, Fourth and Fifth causes of action of this Complaint pursuant to 28 U.S.C. §1331 and

pendant and supplemental jurisdiction over the remaining state court causes of action pursuant to 28 U.S.C. §1367 and applicable law.

## VENUE

11.     Venue is also proper in this District under 28 U.S.C. §1391(b) (2) because a substantial amount of events or omissions occurred in this District and one or more of the Defendants can be found in this District and this matter is "related" to a prior action in the Southern District of New York..

12.     Although no longer pending, the same issues were presented to the Court in *Vaughn v. Leeds, Morelli & Brown, P.C., Prudential Securities, Inc., Prudential Financial, Inc., et al.* (S.D.N.Y. 1:04-cv-08391-DLC). In *Vaughn,* plaintiff Vaughn alleged that PSI bribed LMB to bind 338 African-American clients to a secret agreement without their knowledge or consent.  As detailed below, defendants Schwimmer, PSI, Morelli and LMB perpetrated a fraud on S.D.N.Y. Judge Denise Cote by seeking enforcement of an arbitration clause contained in Vaughn's Settlement Agreement and Release while concealing LMB's theft of $66,667 of the award that was a basis for Vaughn's settlement, which PSI only later discovered, and concealing the Dispute Resolution Agreement ("DRA") that included PSI's bribe of $1,500,000 to LMB, in payment of attorneys' fees in lieu of the collection of contingent fees directly from the clients, upon binding its African-American clients to PSI's dispute resolution agreement, among other things. Defendants' fraud on the court led to enforcement of an arbitration promise when no agreement had been formed, an arbitration that led to the dismissal of the *Vaughn* class action.  Now, the factual allegations in the *Vaughn* matter can be verified through the discovery of documentation and other evidence revealed subsequent to the dismissal of the *Vaughn* matter.

## CLASS ALLEGATIONS

### The Civil Rights Conspiracy Class

13.     Dowe brings this action on her own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of plaintiff Civil Rights Conspiracy Class (the "Conspiracy Class" or the "Class") comprised of 338 African-Americans and other people of color who were employed by Defendant PSI, who become clients of Defendant LMB, and who unwittingly resolved their claims of race-biased personnel practices and racial hostility against PSI under the terms of the Civil Rights Conspiracy between the PSI Defendants and the LMB Defendants. These Defendants expressed their conspiratorial agreement in the DRA, the amended DRAs and PSI's side letters about fees. PSI paid LMB a total of $7,500,000 between February, 1998 and October, 2001 in exchange for LMB's participation in this conspiracy. These Defendants conspired to deprive members of this Class of their right and privilege to work free of racial hostility and race-biased personnel practices.  These Defendants also conspired to deprive members of this Class of having and exercising any right or privilege of a citizen of the United States, namely, the right to sue, to be a party, to give evidence, and to enjoy the full and equal benefit of all laws and proceedings for the security of persons and property of all citizens.

14.     The Class is further divided into a subclass of those individuals whose settlement funds were embezzled by the LMB defendants.  There exists no conflict of interest between Dowe and the other Class Members.  Dowe and her counsel will fairly and adequately represent the interests of the Class.

15.     Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class contains approximately 338 members.  The exact number in the Class and Subclass is unknown to Dowe but can be easily ascertained from the defendants.

16.     Dowe's claims are typical of the Class and Subclass.  Dowe and all Class Members and Subclass Members have suffered damages as a result of Defendants' wrongful conduct complained of herein.  Dowe and all Class Members are entitled to the return of the improper and illegal payments made to LMB and the lawyer defendants by PSI and the return of contingent fees embezzled from Subclass Members, as well as other damages.  All Class Members have been damaged in precisely the same fashion, by precisely the same conduct.

17.     A Class Action is superior to other available methods for the fair and efficient adjudication of this controversy.  At the center of this action are agreements between LMB and PSI that were not disclosed to Dowe and that provide for payments to LMB without LMB's clients' knowledge and were designed to interfere with LMB's fiduciary duties to Dowe and the Class Members to secretly arrange for an aggregate settlement of the claims, as well as substituting for contingent fees which acted as a disincentive for LMB to maximize recoveries for individual clients.

18.     The aforementioned agreements and the conspiracy they furthered were deceit and were deceitful and in violation of New York Judiciary Law §487, New York Penal Law §155 and the ethical rules governing attorneys.  In addition to entering into the secret agreements with PSI, against whom Dowe and the Class Members retained LMB to assert claims and compromising their loyalty to clients in such agreements, LMB also charged Dowe and Class Members attorney fees despite having already been paid their fees and expenses directly by PSI.  LMB was paid all attorney fees by PSI so that contingent attorney fees would not be taken from the clients, or if taken, to be returned to the clients.  The Subclass' embezzlement claims are also best brought as a Class Action for the same reasons.

19.     By the aforementioned conspiracies and specific conduct to further the conspiracy,

Defendants injured Plaintiff Dowe and members of the Conspiracy Class. Dowe's injuries are typical of the injuries of the other class members within the meaning of FRCP 23(a)(3), and raise questions of law and fact about the application of New York Judiciary Law § 487 that are common to the other class members within the meaning of FRCP 23(a)(2).  In addition, as to FRCP 23(a)(3), Plaintiff Dowe's claims for relief incorporate the questions of law or fact common to the class described above, and meet the typicality requirements of FRCP 23(a)(3), as detailed above, and as follows:

- Plaintiff Dowe is an African-American.
- Plaintiff Dowe was employed by Defendant PSI.
- Plaintiff Dowe had race-based employment claims against Defendant PSI.
- Plaintiff Dowe hired Defendant LMB to represent her against her employer, Defendant PSI.
- Plaintiff Dowe never knew that Defendant PSI paid her lawyer, Defendant LMB, $1,500,000 in February 1998.
- Plaintiff Dowe never knew that Defendant PSI paid her lawyer, Defendant LMB, $1,000,000 in June 1998.
- Plaintiff Dowe never knew that Defendant PSI paid her lawyer, Defendant LMB, $1,500,000 in March 1999 around the time she settled her claims.
- Plaintiff Dowe never knew that Defendant PSI paid her lawyer, Defendant LMB, $3,500.000 as follows:   $1,000,000 in June 2000; $1,000,000 in August 2000; and $1,500,000 in October 2001.
- Plaintiff Dowe never knew that Defendant LMB had bound her to the terms of Defendant PSI's DRA, and Plaintiff Dowe was never provided a copy of any agreements between Defendant PSI and Defendant LMB.
- Plaintiff Dowe's claims were never resolved through the DRA process but instead LMB merely recommended a settlement to Dowe.
- Plaintiff Dowe never knew that the DRA incorporated an arbitration promise in its attached form for settlement agreements.

In these and in the other ways detailed above, Plaintiff Dowe asserts claims that are typical of the claims of the members of the Civil Rights Conspiracy Class, meeting the typicality requirements of FRCP 23(a)(3).

20.     As to Rule 23(a)(4), Plaintiff Dowe has no interests antagonistic to those of members of the Civil Rights Conspiracy Class. Plaintiff Dowe will fairly and adequately protect the interests of the class, meeting the requirements of FRCP 23(a)(4).

21.     As to Rule 23(b)(3), and its predominance element, the questions common to members of the Conspiracy Class under FRCP 23(a)(2) and the typicality of those claims of Plaintiff Dowe under FRCP 23(a)(3) demonstrate the salience of the class-wide claims of the Conspiracy Class, which predominate over the individual damages claims of Plaintiff Dowe and members of the Conspiracy Class, thus fulfilling the predominance requirements of FRCP 23(b)(3). As to superiority—with 338 members of the Conspiracy Class possessing closely comparable liability claims, consolidated litigation conserves the resources of the court and the parties. None of the four factors of FRCP 23(b)(3)(A)-(D) raise contrary concerns, fulfilling the superiority requirements of FRCP 23(b)(3). In summary—because the questions of law or fact common to members of the Conspiracy Class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, the Conspiracy Class satisfies the requirements for a class action under FRCP 23(b)(3).

22.     Common questions of law and fact exist as to all Class Members, and they predominate over any questions affecting solely individual Members of the Class.  Among the questions of law and fact common to the Class are:

Whether LMB and PSI entered into secret agreements;

Whether the secret agreements constituted an illegal aggregate settlement;

Whether the secret agreements were designed to shield PSI from potentially substantial legal, financial and reputational harm in return for payments to LMB;

Whether Plaintiff was aware of the secret agreements at the time they were executed by

LMB and PSI;

Whether the secret agreements were in violation of New York Code of Professional Responsibility, are illegal, void *ab initio* and unenforceable;

Whether the conflicts of interest created by the terms of secret agreements caused the LMB defendants to be placed in an irreconcilable conflict of interest which prevented them from ethically representing Plaintiff in accordance with their professional duties;

Whether the LMB defendants have been unjustly enriched by their receipt of payments/fees from PSI in exchange for unethical and illegal conduct, along with collecting contingent attorneys' fees from plaintiff and the potential class;

Whether Plaintiff is entitled to disgorgement of the payments to LMB of their fees and the payment from PSI for the same services;

Whether PSI and LMB established their racial bias by targeting African-American PSI employees for Defendant LMB to recruit as clients, and then bind them to an unfair DRA that deprived them of the full value of their race bias claims, and of the full benefit of laws and proceedings available to white citizens;

Whether PSI and LMB conspired to deprive 338 former and current African-American PSI employees of the same right to make and enforce employment contracts free of race-bias, and to work free from racial hostility, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizen;

Whether PSI and LMB conspired to injure the 338 African-Americans by paying them unfairly undervalued amounts for injuries to their careers and their dignity, and by depriving them of the full and equal benefit of all laws and proceedings protecting their rights.

### The Embezzlement Subclass

23.     Dowe is also a member of the Embezzlement Subclass.  The Embezzlement Subclass is comprised of approximately 210 LMB clients whose claims against PSI were settled between February 13, 1998 and April 24, 2000 from which LMB converted an unwarranted one-third contingent fee. Members of this Embezzlement Class are also members of the Civil Rights Conspiracy Class detailed above.

24.     The Embezzlement Subclass meets the prerequisites for class certification set out in

FRCP 23(a).

25.     With approximately 210 members, the Embezzlement Subclass is so numerous that joinder of all members is impracticable, thereby satisfying FRCP 23(a)(1).

26.     The questions of law or fact common to members of this Embezzlement Subclass include:

Whether members of the Embezzlement Subclass signed individual retainer agreements with LMB in which they promised to pay one-third of their recovery to LMB;

Whether the individual retainer agreements signed by members of the Embezzlement Subclass included LMB's promise that no disbursements or costs would be deducted from a member's settlement proceeds;

Whether in the February 13, 1998 DRA and the April 24, 2000 amendment to the DRA, PSI promised to pay the legal fees otherwise owed by members of the LMB, and agreed to binding arbitration of any dispute over the amount of legal fees owed;

Whether PSI knew of, agreed to, permitted and/or consented to LMB's breach of its various duties of candor to its clients by failing to insist on proof of each client's authorization to LMB binding that client to the DRA, when Defendant Morelli's apparently committed fraud by signing the DRA within hours of Defendant Schwimmer's transmittal of it to him for signature, while formally representing to PSI in the Covenants and Representations of Counsel provisions of the DRA that each of its then 48 clients had "reviewed this Dispute Resolution Agreement;"

Whether PSI knew of, agreed to, permitted and/or consented to LMB's breach of its various duties of candor to its clients by providing for its payments to LMB in side letters that promised fee payments, and arbitration of any disputes about fee payments, while the DRA contained an integration clause that provided that the DRA was the entire agreement between the parties;

Whether PSI knew of, agreed to, permitted and/or consented to LMB's breach of its various duties of candor to its clients by requiring March 1998 acknowledgments from LMB's clients that were void for their vagueness, and that failed to mention the amounts or timing of PSI's payments to LMB;

Whether, after PSI discovered LMB had embezzled one-third of each of their clients' recoveries as a contingent fee, Defendant Schwimmer  violated his  mandatory duty as a New York lawyer to report LMB's embezzlement to authorities as indicating the lack of fitness of Defendants Leeds, Morelli, and Brown to practice law in New York;

Whether, after PSI discovered LMB embezzling one-third of each of their clients'

recoveries, Defendant Schwimmer failed to enforce the terms of the DRA to benefit members of the Embezzlement Subclass;

Whether PSI facilitated LMB's scheme to defraud its clients of repayment by failing to require compliance with the terms of the April 24, 2000 amendment to the DRA which required Defendant LMB to produce copies of:

 1) the "full written disclosures by the Firm regarding the Firm's policy and practices regarding expenses or disbursements advanced by the Firm" to all members of the LMB Embezzlement Subclass;

 2) the "written consents" executed by members of the LMB Embezzlement Subclass permitting LMB to deduct one-third of their settlement proceeds; and

 3) documents proving that Defendant LMB "actually incurred expenses at least equal to the Withheld Amounts."

Whether Defendants committed any deceit or collusion with intent to deceive the court or any party in the *Vaughn* matter; and

Whether Defendants consented to any deceit or collusion with intent to deceive the court or any party in the *Vaughn* matter.

27. These common questions of fact and law fulfill the requirements of FRCP 23(a)(2).

28. The claims of the representative party, Plaintiff Dowe include claims in equity for an accounting of client funds converted by the LMB defendants without authority and with: (1) PSI facilitating its unjust enrichment for disgorgement of the unjust gains of the LMB defendants; (2) aiding and abetting of the PSI Defendants; (3) under New York Judiciary Law § 487(2) against the LMB Defendants for wilfully receiving money for disbursements not incurred; (4) for compensatory and punitive damages against the LMB Defendants under New York common law of conversion by exercising dominion and control over client funds without authority, interfering with the right of possession of those funds by the clients; (5) against the PSI Defendants for aiding and abetting LMB's conversion; and (6) a claim against the PSI Defendants for compensatory and punitive damages for conspiring to hinder the due course of justice for members of the Embezzlement Subclass in violation of 42 USC

§ 1985.

29. The claims of the representative party, Plaintiff Dowe, are typical of those of the other members of the Embezzlement Subclass, thereby fulfilling the requirements of FRCP 23(a)(3).

30. The representative parties will fairly and adequately protect the interests of the Embezzlement Subclass, thereby fulfilling the requirements of FRCP 23(a)(4).

31. The questions common to members of the Embezzlement Subclass under FRCP 23(a)(2) and the typicality of those claims of the representative parties under FRCP 23(a)(3) demonstrate the salience of the class-wide claims of the Embezzlement Subclass, which predominate over the individual damages claims of the Plaintiff and members of the Embezzlement Subclass, thus fulfilling the predominance requirements of FRCP 23(b) (3).

32.  With an estimated 210 members in the Embezzlement Subclass members possessing closely comparable liability claims, consolidated litigation conserves the resources of the court and the parties. None of the four factors of FRCP 23(b)(3)(A)-(D) raise contrary concerns, fulfilling the superiority requirements of FRCP 23(b)(3).

33. Because the questions of law or fact common to members of the Embezzlement Class predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, the Embezzlement Subclass qualifies as a class action under FRCP (b)(3).

## FACTUAL BACKGROUND

34. Dowe retained LMB to represent her interests in a racial discrimination claim against PSI. Dowe executed a retainer agreement retaining LMB on January 21, 1998.  The agreement

expressly provided that under no circumstances would LMB deduct litigation costs from any settlement obtained behalf of Vaughn, attached hereto as Exhibit "A".

35. Sometime in 1998, Dowe executed a document containing a signature page allegedly acknowledging her understanding of the February 13, 1998 DRA between PSI and LMB. Dowe was not shown, provided or given the DRA nor permitted to review the DRA or retain a copy of the DRA, nor was the DRA explained to her by representatives of LMB.

36. LMB negotiated a resolution of Dowe's claims against PSI and advised Dowe to accept PSI's settlement offer in the amount of $150,000.   In or about February 1999, Dowe followed LMB's advice and agreed to settle her claims against PSI.   In furtherance of this settlement, Dowe executed a Settlement Agreement and General Release on February 16, 1999 prepared by defendants.

37. LMB reduced Dowe's $150,000 settlement by one-third, or $50,000, retaining that sum for attorney fees pursuant to the retainer agreement, as indicated in Morelli's letter to Dowe dated March 1, 1999, attached hereto as Exhibit "B".

38. In November 2016, Dowe contacted an attorney in New York regarding an unrelated matter. During discussions with the attorney, she mentioned that she had been represented in the past by LMB.   This attorney indicated that Dowe should contact an attorney that he knew in New Jersey who had handled claims against LMB.

39. On December 15, 2016, Dowe contacted attorneys in New Jersey who first revealed to her the secret payments by PSI to her former attorneys, LMB, and the corrupt bargain such payments represented.   Prior to this date, Dowe was unaware of these payments, as they had been concealed from her by her fiduciaries who had a duty to disclose them.

40.  It was only on December 15, 2016 that Dowe first learned that PSI and LMB conspired and

entered into secret agreements to dispose of Dowe's and the other LMB's African-American clients' racial discrimination employment claims against PSI for a reduced value in a sham alternative dispute resolution process ("ADR"). Dowe also learned that as part of this secret arrangement between PSI and LMB, PSI paid LMB $7,500,000 as a commercial bribe to corral Dowe and other similarly situated African-American employees and entrap them in an ADR process designed to cap the damages for their claims and waive important rights to the benefit of PSI.

41. In January 2017, Dowe first came into possession of and for the first time saw various documents that were exchanged in discovery in a related matter that was litigated in New Jersey State Court against Prudential Insurance Company and LMB. Dowe never saw or received these documents before January, 2017 despite allegedly signing the signature page to a document purporting to be the DRA between PSI and LMB. Defendants LMB, had a duty to disclose and provide copies of these documents, more particularly described in paragraphs 41 through 59, to Dowe and members of the Class but failed to disclose same to Dowe and members of the Class. LMB engaged in conduct to conceal these documents from Dowe in breach of their fiduciary duty to her and to further the interests of Defendant, PSI, its co-conspirator.

42. The aforementioned concealment (and continuing concealment) by LMB on behalf of its co-conspirator, PSI, equitably tolled any applicable Statute of Limitations for legal malpractice and other claims in this complaint.

43. The DRA between PSI and LMB dated February 13, 1998 was signed by Morelli on behalf of LMB the same day it was drafted and communicated to LMB.

44. The DRA provided that "Claimants irrevocably agree to forgo a jury trial and submit to the

dispute resolution procedure described below" for any and all claims against PSI.

45. The DRA further provided that the dispute resolution procedure was to be in two phases; first, a negotiation phase, and second, a binding mediation" phase as denominated in the DRA ("binding mediation").

46. The DRA further provided that during the binding mediation phase, the mediator was not empowered to grant punitive damages unless PSI was found by clear and convincing evidence to have acted or failed to act willfully or with reckless indifference; Claimant could not receive any additional PSI office title and no attorney's fees or costs could be a part of the award.

47. The DRA further provided that "PSI agrees to pay Claimants' reasonable attorney's fees in connection with this process.  It is understood and agreed that Leeds & Morelli will advise the Claimants regarding the attorneys' fees arrangement entered into with PSI".

48. The DRA further provided that the claims subject to the agreement, the evidence presented, the execution and terms of the agreement, Claimants' employment or separation from PSI and any settlement or award would be and remain confidential.

49. The DRA further provided that Leeds & Morelli make the following covenants and representations: "Each Claimant has reviewed this Dispute Resolute Agreement and has authorized Leeds & Morelli to execute the agreement on its behalf.  This Agreement shall become effective and binding on all Claimants upon execution hereof by Leeds & Morelli".

50. Eric Schwimmer, Esq. ("Schwimmer") of PSI in a letter addressed to Morelli dated February 13, 1998, acknowledged that PSI would be paying the LMB $1.5 Million shortly after receipt of the signed DRA, and further acknowledged LMB's ability to request additional fees after the completion of the claims of the claimants listed in the document annexed to the letter (the

attachment was not obtained by Plaintiff).

51. Pursuant to the DRA, PSI paid LMB an initial sum of $1.5 Million on or about February 20, 1998.

52. PSI and LMB negotiated a Supplement to the DRA dated June 12, 1998.   In that Supplement, a non-binding mediation phase was added to the dispute resolution procedure, and the Supplement acknowledged additional Claimants that had retained LMB and incorporated these new clients into the process.  Morelli signed the Supplement on behalf of LMB on June 12, 1998.

53. By letter dated June 12, 1998, Schwimmer wrote to Morelli acknowledging that PSI would pay the firm the sum of $1.0 Million upon receipt of the execution of a copy of the letter. The letter stated:  "It is understood and agreed that this payment is for attorneys' fees and costs expended, and to be expended, by Leeds & Morelli and is made without prejudice or waiver or either parties' rights regarding any issue regarding the payment of attorneys' fees and costs prior to, during or after the resolution of the claims asserted through the Dispute Resolution process".  The letter was counter-signed by Morelli on behalf of the firm as agreeing to the terms contained in the letter.

54. By letter dated March 2, 1999, Schwimmer wrote to Morelli acknowledging that PSI would pay the firm the sum of $1.5 Million upon receipt of an executed copy of the letter. The letter stated:  "It is understood and agreed that this payment is for attorneys' fees and costs expended, and to be expended, by Leeds & Morelli and is made without prejudice or waiver or either parties' rights regarding any issue regarding the payment of attorneys' fees and costs prior to, during or after the resolution of the claims asserted through the Dispute Resolution process".  The letter was counter-signed by Morelli on behalf of the firm as

agreeing to the terms contained in the letter.

55. Notwithstanding the express language of the DRA, PSI learned on July 12, 1999 that LMB was nevertheless taking a one-third contingency fee from Claimants' settlements.  By letter dated August 31, 1999, Steven M. Cooper, Esq. ("Cooper"),  attorney for PSI, wrote to Lenard Leeds, Esq. ("Leeds") of LMB advising Leeds of how PSI learned of LMB's action regarding taking contingency fees, and further stated:  "by the time the parties entered into the Dispute Resolution Agreement, which was in February 1998, the parties  had agreed that, in consideration for PSI paying your firm's attorneys' fees, your firm would not take a one-third contingency fee from each of the negotiated settlements.   In fact, during the negotiations with PSI, your office expressly represented that it wanted PSI to pay your firm's attorneys' fees so that the entire settlement would go directly to the claimants".

56. By letter dated September 21, 1999, Cooper wrote to Leeds and Jeffrey Brown, Esq. ("Brown") of LMB responding to LMB's demand that it receive an additional $2.5 Million as an interim fee, $3.5 Million in January 2000, and $3.5 Million in February or March 2000.  Cooper stated:  there is a firm conviction that (1) your firm's contingency fee agreements with the claimants is inconsistent with the terms of the [Dispute Resolution] Agreement and was never the subject of any agreement with PSI, and (2) the additional fees your firm is seeking will not be approved by an arbitrator, given that your firm has already received $4 million in attorneys' fees and, in addition, a contingency arrangement which, in total, amounts to over $6 million in fees to date (or 60% of the total amount paid by PSI to date)".

57. PSI and LMB resolved their dispute with regard to the amount of additional fees to be paid by PSI to LMB and with regard to PSI's contention that LMB had breached the DRA dated February 12, 1998 (by taking legal fees from clients' settlements) and entered into an

Amendment to the DRA dated April 24, 2000.  The Amended Agreement provided that PSI would pay LMB an additional $3.5 Million as follows:  $1 Million within 7 days; $1 Million within 7 days of the completion of all pending non-binding mediations; and $1.5 Million within 7 days of receipt of a notice from LMB that the process has been completed as to all covered claimants.

58. The Amended Agreement further stated in paragraph 3: "Notwithstanding any Covered Employee's prior or subsequent agreement or willingness to pay the Firm's attorneys' fees or expenses or disbursements, the Firm hereby relieves and releases each and every Covered Employee of any obligation he or she has undertaken, by signing a retainer agreement with the Firm; by operation of law, or otherwise, to pay the Firm's attorneys' fees in the amount of 33-1/3% of the Covered Employees' recovery, if any, or expenses or disbursements and the Firm hereby releases and discharges each and every Covered Employee from any obligation to pay attorneys' fees or expenses or disbursements to the Firm for its representation of the Covered Employee in any proceedings whatsoever; any provision of any retainer agreement between the Firm and a Covered Employee, any course of dealings; custom and usage; standard practice; or other requirement to the contrary notwithstanding, except as noted in paragraph 4 and paragraph 5".

59. The Amended Agreement further states in paragraph 4: "The Firm has represented to PSI during its representation of the Covered Employees that it has withheld certain sums from negotiated settlements paid to certain of the Covered Employees for purposes of reimbursing the Firm for certain expenses or reimbursements which the firm had previously incurred on behalf of each Covered Employee ("the Withheld Amount") but that, in certain other instances, the Firm has sometimes waived such reimbursement, in whole or in part.  The

Firm hereby confirms and restates this representation.  The Firm agrees to discontinue this practice hereafter and never to reinstate it, in whole or in part, with respect to any Covered Employee.  Hereafter, each and every award to a Covered Employee represented by the Firm, whether in the Process or otherwise, shall be paid to the Covered Employee in full, without any diminution thereof by the Firm or by any other person for any reason".

60. The Amended Agreement further states in paragraph 5: "Notwithstanding the provisions of paragraphs 2, 3 and 4 above, the Firm may retain such portion of the Withheld Amount (a "Portion") as the Firm certifies to PSI in writing no later than 7 days from the date hereof that the Firm can demonstrate that it satisfies all of the following criteria: (a) The Portion was the subject of full written disclosure by the Firm to the relevant Covered Employee regarding the Firm's policy and practices regarding expenses or disbursements advanced by the Firm on behalf of its clients, including the fact that reimbursement thereof is sometimes waived by the Firm. (b)  The Portion was the subject of a written consent by the Covered Employee acknowledging receipt and an understanding of the full disclosure by the Firm referred to in subparagraph (a) above. (c) The Firm represents that it has actually incurred expenses at least equal to the Withheld Amount.  To the extent that the sum of the Portions do not equal or exceed the Withheld Amount, the Firm shall return the balance thereof to the relevant Covered Employees not later than 14 days from the date hereof, and shall certify to PSI in writing within 2 days thereof that it has done so".

61. In furtherance of the terms of the Amended Agreement, Brown certified in his letter dated April 24, 2000 to Schwimmer at PSI that:  "(a) Any monies withheld were the subject of full written disclosures by the Firm to the relevant Covered Employee regarding the Firm's policy and practices regarding expenses or disbursements advanced by the Firm on behalf of

its clients, including the fact that reimbursement thereof is, at times, waived by the Firm, in whole or in part.  (b)  Any monies withheld were paid pursuant to a written consent executed by the Covered Employee, and only upon the full disclosure by the Firm referred to in subparagraph (a) above.  (c) The Firm represents that it has actually incurred expenses at least equal to the Withheld Amounts referred to in subparagraphs (a) and (b)".

62. LMB failed to contact Dowe as required by April 24, 2000 letter, and did not provide written disclosures to Dowe regarding the firm's policy and practices expenses and disbursements advanced by the firm on behalf of its clients in contravention of the certification of Brown.

63. Dowe never executed a written consent regarding all monies withheld by LMB from Dowe in contravention to the certification of Brown.

64. Dowe never received the return of the $50,000 contingent attorney fee retained by LMB from the proceeds of her settlement with PSI.

65. Dowe was unaware of Defendants' wrongdoing, because Defendants conspired to conceal same from her.

66. Dowe first became aware of the concealment of Defendants' theft of her funds when she communicated with counsel on December 15, 2016.

## FRAUD ON THE COURT IN *VAUGHN v. PSI and LMB*

67. Jeffrey Vaughan ("Vaughn"), an African-American employed at the time by PSI, retained LMB to represent his interests in a racial discrimination claim against PSI. Vaughn executed the retainer agreement on January 5, 1998.  The agreement expressly provided that under no circumstances would LMB deduct litigation costs from any settlement obtained behalf of

Vaughn.

68. In 1998, Vaughn executed a document containing only a signature page which purports that he was acknowledging his understanding of the DRA between PSI and LMB.  Vaughn was not given a copy of the DRA, shown a copy of the DRA,  nor permitted to review the alleged DRA agreement or retain a copy of the alleged DRA  agreement, nor was the alleged DRA agreement explained to him by representatives of LMB.

69. LMB negotiated a resolution of Vaughn's claims against PSI and advised Vaughn to accept PSI's settlement offer in the amount of $200,000.   Vaughn followed LMB's advice and agreed to settle his claims against PSI.  In furtherance of this settlement, Vaughn executed a Settlement Agreement and General Release dated October 27, 1998.

70. LMB reduced Vaughn's $200,000 settlement by one-third, or $66,667, for attorney fees pursuant to the retainer agreement.

71. In or about October 2004, Vaughn learned that PSI and LMB conspired and entered into secret agreements to dispose of Vaughn's racial employment discrimination claims against PSI for a reduced value in a sham alternative dispute resolution process ("ADR").  Vaughn also learned that as part of this secret arrangement between PSI and LMB, PSI paid LMB to corral Vaughn and other similarly situated minority employees and entrap them in an ADR process designed to cap the damages for their claims and waive important rights to the benefit of PSI.

72. Vaughn filed a putative class action complaint on October 25, 2004 alleging that PSI and LMB conspired through secret agreements to defraud Vaughn and other PSI employees from asserting their rights against PSI and that LMB committed theft by wrongfully withholding fees from Vaughn's settlement proceeds. The complaint was subsequently amended to add a

claim for RICO violations.

73. The allegations of theft, fraud and conspiracy were filed upon information and belief as Vaughn was not aware of the existence of, nor the contents of the secret agreements and did not possess copies of these secret agreements. In lieu of an answer, PSI and LMB each filed motions to dismiss the amended complaint and to compel arbitration. PSI relied upon the Affirmation of Gerald E. Harper, Esq. and his brief in support of its motion.  Harper only attached a copy of the Settlement Agreement and Release signed by Vaughn to his Affirmation and failed to disclose to the Court the existence of a DRA, amended DRA or other documents relevant to Vaughn's claims contained in the Amended Complaint, a clear breach of his duty to disclose these documents to the Court. Harper concealed the actual DRA as well as its contents from the Court during a court proceeding.  In addition, Harper refused to provide these documents and other related documents requested by Vaughn. LMB relied upon the Affirmation of Steven Morelli, Esq. and a brief submitted by Daniel T. Hughes, Esq. in support of its motion. Morelli only attached the following documents to his Affirmation:  Exhibit A:  Vaughn's Amended Complaint;

Exhibit B:  the January 5, 1998 retainer agreement;

Exhibit C:  type-written statement of Vaughn in furtherance of his claim against PSI;

Exhibit D:  questionnaire filled out by Vaughn in furtherance of his claim against PSI;

Exhibit E:  "signature page executed by Jeffrey Vaughn on March 5th, 1998 attesting to his review of the February 12, 1998 Agreement"; and

Exhibit F: settlement agreement and general release executed by PSI and Vaughn on October 27, 1998.

74. Morelli, in Exhibit E to his affirmation, attached only a signature page, alleging it was the signature page to the DRA, but did not attach a copy of the DRA, a clear breach of his duty

to disclose this document to the Court. Morelli concealed the actual DRA as well as its contents from the Court during a court proceeding. Morelli also failed to disclose to the Court the existence or contents of the amended DRA and other documents relevant to Vaughn's claims contained in the Amended Complaint, a clear breach of his duty to disclose these documents to the Court. Instead they were concealed. The Honorable Denise Cote, U.S.D.J., issued an Opinion and Order dated August 12, 2005, granting both PSI and LMB's motions to compel arbitration to resolve Vaughn's claims against PSI and LMB based upon the arbitration clause contained in the Settlement Agreement and Release, and stayed the action pending completion of the arbitration.

75. Vaughn submitted the claims contained in the Amended Complaint to arbitration with the National Association of Securities Dealers; however, the claims were dismissed by the arbitrators on May 10, 2007.

76.  The Honorable Denise Cote, U.S.D.J., by a November 19, 2007 Opinion and Order, and a November 20, 2007 Judgment, confirmed the arbitration award, dismissed the Amended Complaint and denied Vaughn's motion to vacate the arbitration award.


### COUNT I

**Violation of 42 U.S.C. § 1985(3)**
**Conspiring to Deprive 338 African-Americans and**
**Other People of Color of Their Rights to Equal Employment**
**Guaranteed by 42 U.S.C. § 1981(a), (b), and (c)**

77.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

78.    Defendant PSI, Inc., at all times material hereto, acted through its respective officers, employees and agents, including Schwimmer, who in turn acted within, or outside of the scope

of their authority and employment in furtherance of the business of, or to carry out acts nevertheless intended by Defendant PSI, Inc.

79.     Defendant LMB, at all times material hereto, acted through its named partners, employees and agents, who in turn acted within, or without, the scope of their authority and employment in furtherance of the business of, or to carry out acts nevertheless intended by, Defendant LMB.

80.     Defendants PSI and LMB established their racial bias by targeting African-American PSI employees for Defendant LMB to recruit as clients, and then bind them to an unfair DRA that deprived them of the full value of their race bias claims, and of the full benefit of laws and proceedings available to all citizens.

81.     Defendants PSI and LMB conspired by forming, agreeing to and implementing a dispute resolution process that administered a dispute resolution agreement (DRA) with amendments, side letters, and other communications and then by engaging in conduct to facilitate these agreements.

82.     Defendants engaged in conduct to bind the 338 former and current African-American PSI employees to the DRA and other agreements without informing the clients, without the knowing consent of the clients and by engaging in conduct to bind the clients without their knowledge.

83.     Defendants' conspiracy aimed to deprive 338 former and current African-American PSI employees of the same right to make and enforce employment contracts free of race-bias, and to work free from racial hostility, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all citizens.

84.     The PSI Defendants carried out their conspiracy by paying the LMB Defendants $7,500,000 to breach their duty of loyalty to their clients, 338 African-Americans, by binding

them to an unfair DRA for processing their claims, which were based upon racial discriminatory

conduct by PSI,   without informing the clients, without the knowing consent of the clients and

by engaging in conduct to bind the clients without their knowledge.

85.     Defendants PSI and LMB's conspiracy injured the 338 African-Americans by paying

them unfairly undervalued amounts for injuries to their careers and their dignity, and by

depriving them of the full and equal benefit of all laws and proceedings protecting their rights,

and did so for the purpose of depriving them of equal privileges and immunities under the law.

86.     Defendants PSI and LMB's conspiracy also deprived 338 African-Americans of their

right to careers at a workplace free of racial hostility and free of race-biased personnel selection

and compensation practices, like those enjoyed by all citizens.

87.     Defendants PSI and LMB's conspiracy violated the Civil Rights Act of 1871, 42 USC §

1985(3).

        WHEREFORE, Plaintiff demands judgment for herself and the members of a Civil Rights

Conspiracy Class against Defendants jointly, severally and in the alternative, as follows:

        A.      Declaring this Civil Rights Conspiracy Class to be a class under FRCP 23;

        B.      Awarding compensatory and punitive damages against each Defendant, jointly
        and severally, in favor of Plaintiff and members of a Civil Rights Conspiracy Class for all
        losses and damages suffered as a result of Defendants' violations, together with pre- and
        post-judgment interest;

        C.      Awarding Plaintiff and members of the Civil Rights Conspiracy Class, the costs
        of this action, including attorneys' and experts' fees and costs;

        D.      Granting equitable and/or injunctive relief, including enjoining future
        wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching,
        impounding, or imposing a constructive trust upon or otherwise restricting the proceeds
        of Defendants' ill-gotten gains, an accounting of the fees paid to LMB by PSI, any other
        relief available under 18 U.S.C. § 1964(a); and

        E.      Granting such other relief the case may require that Court deems just and proper.

## COUNT II

### Violation of New York Judiciary Law § 487(2)
### Willfully Receiving Money For Disbursements Not Incurred

Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

88.    "An attorney or counselor who willfully receives any money or allowance for or on account of any money which he has not laid out forfeits to the party injured treble damages to be recovered in a civil action."  New York Judiciary Law § 487(2).

89.    In July of 1999, Sheila Chervin, in-house counsel for PSI, discovered that LMB was illegally retaining a one-third attorney fee from their clients' settlement awards when PSI had already paid LMB in full and LMB had agreed not to retain a fee from its clients.

90.    The DRA that Defendant LMB and LMB partner Steven Morelli executed on February 13, 1998 provided that PSI would pay LMB the attorney fees otherwise owed by its clients as contingent attorney fees and the LMB would not retain a fee from its clients.

91.    By the end of July 1999, when Ms. Chervin discovered that LMB was illegally retaining client funds, the first 87 clients had been awarded a total of $5,048,300.

92.    By the end of July 1999, LMB had illegally retained one-third of that total, or approximately $1,682,767.

93.    Upon Ms. Chervin's report of her discovery of LMB's theft of client funds, PSI & LMB started to negotiate a cessation of LMB's theft.

94.    Approximately eight months later, in late April 2000, LMB signed an amended DRA agreeing to cease taking legal fees from clients' settlement proceeds and to return fees to the clients.

95.    By late April 2000, 123 additional clients had been awarded $4,911,350.

96.     By the end of April 2000, LMB had illegally and contrary to its agreement retained one-third of that total, or an additional amount of approximately $1,637,117.

97.     Between October 1, 1998 and April 30, 2000, Defendant Leeds, Defendant Morelli, Defendant Brown, and the firm Leeds, Morelli & Brown, illegally and contrary to its agreement received an additional $3,319,883 from the awards of 210 clients.

98.     On April 24, 2000, Defendant Brown, individually and on behalf of LMB falsely certified that any monies withheld were covered by a written consent of the client after full disclosure by LMB of its practices regarding disbursements.

99.     Defendant Brown further certified falsely that LMB had actually incurred expenses in amounts at least equal to the amounts it had withheld.

100.    Defendant Brown's certification also violated the promise LMB had made to its clients in its retainer agreements with them to not take a deduction for costs.

101.    Defendant LMB did not advance disbursements in the course of representing its clients that justified its willful receipt of $3,319,883 from their awards.

102.    Defendant LMB's willful diversion of $3,319,883 from the clients' awards was also unjustified and violated its promise to its clients to take no deductions.

103.    Defendant Leeds, Defendant Morelli, Defendant Brown, and the firm Leeds, Morelli & Brown, in 1998, 1999 and 2000, willfully diverted $3,319,883 that they falsely claimed were amounts deducted on account of monies not actually advanced, and to date have failed to return the misappropriated funds, thereby continuing to violate  New York Judiciary Law § 487(2)(Deceit by attorneys) by attempting to deceive the Court or a party about the fees, the DRA or the expenses during a litigation.

104.    As counsel for their clients, Defendant LMB and Defendants Leeds, Morelli and Brown

(together "the LMB Defendants") all stood in a fiduciary relationship to their clients.

105.    As detailed above, these LMB Defendants wilfully received $3,319,883 that Defendants had not advanced. To date, the continuing failure to return the misappropriated funds and the concealment of this conduct constitutes a knowing breach of the LMB Defendants' duty of loyalty, caused their clients losses, and constitutes a breach of their fiduciary duty to their clients.

106.    Upon discovery of the LMB Defendants' breach of their fiduciary duty, Defendant Schwimmer took steps to stop the practice alleged above in future settlements, but failed to compel the LMB Defendants to reimburse their clients' losses from past settlements, and failed to obtain proof from the LMB Defendants of their compliance of their return of the misappropriated funds to their clients, thereby directly resulting in the pecuniary loss to the clients, which continues to date.

107.    Defendant Schwimmer knowingly participated in the LMB Defendants' breach of their fiduciary duty, thereby aiding and abetting the LMB Defendants in violating New York Judiciary Law § 487(2).

WHEREFORE, Plaintiff demands judgment for herself and members of the LMB Embezzlement Subclass against Defendants jointly, severally and in the alternative as follows:

A.    Declaring the LMB Embezzlement Subclass to be a class under FRCP 23;

B.    Awarding compensatory and treble damages pursuant to NY Judiciary Law §487 against each Defendant, jointly and severally, in favor of Plaintiff and members of the LMB Embezzlement Subclass, for all losses and damages suffered as a result of Defendants' violations, together with pre- and post-judgment interest;

C.    Awarding Plaintiff and members of the LMB Embezzlement Subclass, the costs of this action, including attorneys' and experts' fees and costs in both the underlying and this action;

E.    Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds

of Defendants' ill-gotten gains, an accounting of the settlements obtained on behalf all members of the Civil Rights Conspiracy Class, and of amounts illegally retained by LMB from those settlements, and any other relief available under 18 U.S.C. § 1964(a); and

F.      Granting such other relief the case may require that Court deems just and proper.

## COUNT III

### Conversion by
### Taking Client Funds Without Authority

108.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

109.    When Defendant LMB recruited clients, it had them sign retainer agreements in which each client promised to pay a one-third contingent fee to LMB for its legal services and further provided that no costs would be deducted from the proceeds of any recovery.

110.    Unknown to these clients, Defendant LMB had also signed an agreement with Defendant PSI, the DRA, in which PSI promised to pay the same attorney fees otherwise owed by the clients to Defendant LMB in lieu of payment by LMB's clients and in consideration of that promise to pay attorney fees, LMB agreed not to deduct contingent attorney fees from its clients.

111.    After that agreement, Defendant LMB no longer had any right to any attorney fees taken from their clients and the client's settlement proceeds.

112.    Defendant LMB never advised its clients that the attorneys' fees were already paid by PSI, nor obtained approval from its clients, nor advised its clients that this agreement might dilute LMB's fiduciary obligations to its clients.  They were paid twice for the same recovery.

113.    When each of the first 210 clients settled their cases against Defendant PSI, Defendant Morelli and other employees and partners of Defendant LMB misrepresented to each client that the client still owed a one-third fee under their retainer agreement, while concealing Defendant

PSI's payment of those fees to Defendant LMB in lieu of collection from the clients.

114.    Defendant LMB then took a one-third contingent attorney fee from each of these 210 clients even after already having been paid by PSI, wrongfully exercising a right of ownership, dominion and control over settlement funds that belonged to its clients, interfering with the clients' right of possession of those funds.  LMB was paid twice for the same recovery.

115.    When Defendant PSI discovered Defendant LMB's theft of client funds, Defendant Leeds defended LMB's practice on specious and deceitful grounds.

116.    In April 2000, Defendant PSI demanded that Defendant LMB return the funds it had wrongfully taken, which then totaled approximately $3,319,883.

117.    In April 2000, Defendant Brown of Defendant LMB certified falsely to Defendant PSI that it had returned any funds wrongfully withheld.

118.    After the filing of the Vaughn complaint, Defendant PSI learned that Defendant LMB had not returned the misappropriated funds to its clients, but did nothing to cure this breach, helped conceal the conduct, conspired in concealing the conduct, refused to provide the Court with the DRA, deceitfully withheld information from the Court during a litigation, attempted to deceive the Court or a party, thereby aiding and abetting the embezzlement of client funds by Defendant LMB.  PSI failed to alert any authority, nor did it alert any client, and actively concealed the diversion of attorney fees.

119.    Plaintiff Dowe never received a return of the $50,000 that Defendant LMB wrongfully exercised dominion, possession and control from her settlement proceeds.

120.    On information and belief, none of the other 209 clients of Defendant LMB who had a one-third deduction taken from their settlement funds representing contingent attorney fees received reimbursement of that one-third contingent fee from Defendant LMB.

121.   After the LMB Defendants illegally withheld amounts from their clients' recoveries, Defendant PSI failed to compel the LMB Defendants to give an accounting of their illegal deductions, to prove the assertions Defendant Brown made in his April 24, 2000 certification, or to otherwise account for its compliance with the Amended DRA. By failing to enforce the duties of the LMB Defendants, Defendant PSI aided and abetted the embezzlement of client funds by the LMB Defendants.

122.   The conduct of the LMB and PSI Defendants was egregious and warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment for herself and members of the LMB Embezzlement Subclass against Defendants jointly, severally and in the alternative as follows:

A.   Declaring the LMB Embezzlement Subclass a Subclass under FRCP 23;

B.   Awarding compensatory and punitive damages against each Defendant, jointly and severally, in favor of Plaintiff, members of the Subclass, for all losses and damages suffered as a result of Defendants' violations, together with pre- and post-judgment interest;

C.   Awarding Plaintiffs, members of the Subclass, the costs of this action;

D.   Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' ill-gotten gains, an accounting of the attorneys' fees deducted from plaintiff and the Subclass, and

E.   Granting such other relief the case may require that Court deems just and proper.

## COUNT IV

**Violation of 42 U.S.C. § 1985(2)**
**Conspiring to Hinder the Due Course of Justice For**
**Members of the LMB Embezzlement Subclass**

Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

123.    Defendants LMB, PSI and Schwimmer conspired to conceal evidence of LMB's embezzlement, as well as the civil rights conspiracy within which it occurred, from scrutiny by the "constituted authorities" of New York, authorities empowered to compel restitution of the amounts stolen from the African-American members of the Embezzlement Subclass and engaged in conduct to conceal the evidence.

124.    After Ms. Chervin's revelations in July, 1999, Defendants Schwimmer and PSI  knew LMB had stolen one-third of each Subclass members' award for his or her race-based employment claim starting in October 1988 when the first DRA claims were processed.

125.    Defendants Schwimmer and PSI knew LMB had individual retainer agreements with its clients, the African-American clients.

126.    Defendants Schwimmer and PSI knew that the individual retainer agreements LMB had with the African-American clients charged a contingent one-third of each client's recovery to pay LMB for its legal services and the costs it incurred in the course of that clients' case.

127.    Defendants Schwimmer and PSI knew that PSI had paid LMB $2,500,000 in attorney fees in 1998 before any of the DRA claims were processed.

128.    Defendants Schwimmer and PSI knew that PSI had paid $4,000,000 in attorneys' fees before Ms. Chervin discovered LMB's diversion from the settlement awards of the African-American clients who settled their race-based employment claims within the DRA process

before July 1999.

129.     Defendants Schwimmer and PSI were aware that the LMB Defendants knew that PSI had promised to pay and did in fact pay the attorneys' fees of the African-American members of the LMB Embezzlement Subclass in lieu of LMB's collection of a contingent fee from the clients.

130.     Under New York Penal Law § 155, specifically sections 155.40 and 155.42, larceny is the wrongful taking of property from its owner, and includes "takings by a fiduciary," "takings by trick," and "takings under false pretenses", each a class B felony.

131.     Defendant LMB, as attorney to the clients was a fiduciary to its clients. Defendant LMB repeatedly took and concealed an unearned additional one-third contingent fee from various clients' settlement awards without justification or an accounting. The total amount taken was in excess of $3,000,000.

132.     Defendant LMB committed and concealed a series of wrongful takings by a fiduciary, which amounted to larceny, and continue to this date.  This conduct has been concealed to this date.

133.     Defendant LMB committed and concealed a series of wrongful takings by trick, which amounted to larceny, which continue to this date with concealment continuing to this date.

134.     Defendant LMB committed and concealed a series of wrongful takings under false pretenses, which amounted to larceny, and continue to this date with concealment continuing to this date.

135.     Defendants Schwimmer and PSI knew of and concealed Defendants LMB's larceny from the Embezzlement Subclass from the individuals and eventually from the Court.

136.     Defendants Schwimmer and PSI concealed LMB's larceny from any enforcement authorities as well as from the clients and later, from the Court.  Instead they amended the DRA

to stop the LMB Defendants from continuing their larceny in future settlements and to avoid discovery by the clients.

137.    Defendant Schwimmer violated his mandatory duty as a New York lawyer pursuant to Disciplinary Rule 1-103A by failing to report LMB's larceny to a tribunal or other authority empowered to investigate or act on grand larceny, or grand larceny intertwined with civil rights violations.

138.    Defendant PSI refrained from seeking to require LMB to account for the amounts stolen and costs incurred.

139.    Defendants Schwimmer and PSI never verified that Defendant LMB had, in fact, complied with the representations Defendant Brown made in his April 24, 2000 letter certifying its compliance with the terms of the Amended DRA requiring LMB to return "withheld amount[s]."

140.    After discovery of the LMB embezzlement and concealment, on or about June 19, 2000, PSI nevertheless paid LMB $1,000,000; on or about August 8, 2000, PSI paid LMB $1,000,000; and on or about October 12, 2001, PSI paid LMB $1,500,000.

141.    From October 1998 through the present date, LMB committed larceny and concealment amounting to $1,682,767 that it stole from the first 87 African-Americans whose race-based claims were resolved through the DRA process, concealed and continued to conceal these acts.

142.    From August 1999 through the present date, LMB continued its larceny and concealment, stealing an additional $1,637,117 from an additional 123 African-Americans whose race-based claims were resolved through the DRA process.

143.    "Constituted authorities" were obligated to prevent LMB from continuing to steal funds from its African-American clients. Any official who is informed of a civil rights conspiracy, who

has the power to prevent or aid in preventing its occurrence, and who neglects or refuses to prevent its occurrence, is liable to the party injured for the resulting damages. 42 USC § 1986. This provision subordinates other rules of prosecutorial discretion; it is a mandate that protect civil rights, such as those of these 210 African-American clients.

144.    Defendants Schwimmer and PSI conspired and concealed to prevent or hinder the constituted authorities in New York from giving or securing to the African-American clients of the LMB Defendants, their right to equal treatment under the laws, and to the full benefit of laws and procedures securing the rights of white citizens.

145.    Defendant Schwimmer engaged in acts, deceit to the court or a party and concealment to further the conspiracy, including violating his mandatory duty as a New York lawyer to report LMB's larceny to an authority empowered to investigate and correct the violation, refraining from seeking to compel LMB to provide an accounting of the amount stolen or the case costs incurred, and paying LMB $3,500,000 to process the last 128 clients through the DRA scheme.

146.    Defendants Schwimmer and PSI's conspiracy injured 210 African-American clients by preventing public enforcement authorities from recovering for them the $3,319,883 stolen from their awards by LMB, or by otherwise compelling LMB to restore their stolen funds.

147.    Defendants Schwimmer and PSI conspired and concealed for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws or granting members of the LMB Embezzlement Subclass the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, in violation of 42 USC § 1985(3) (Protection from Hindering).

WHEREFORE, Plaintiff demands judgment for herself and members of the LMB

Embezzlement Subclass against Defendants jointly, severally and in the alternative as follows:

      A.     Declaring the LMB Embezzlement Subclass to be class under FRCP 23;

      B.     Awarding compensatory and punitive damages against each Defendant, jointly and severally, in favor of Plaintiff, members of the LMB Embezzlement Subclass, for all losses and damages suffered as a result of Defendants' violations, together with pre- and post-judgment interest;

      C.     Awarding Plaintiff and members of the LMB Embezzlement Subclass the costs of this action, including attorneys' and experts' fees and costs;

      D.     Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' ill-gotten gains, an accounting of the attorneys' fees deducted from plaintiff and the LMB Embezzlement Subclass, and any other relief available under 18 U.S.C. § 1964(a); and

      E.     Granting such other relief the case may require that Court deems just and proper.

## COUNT V

**Violation of 42 U.S.C. § 1985(3)**
**By Conspiring During *Vaughn v. PSI & LMB* to**
**Fraudulently Conceal Prior Misconduct**

148.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

149.    In *Vaughn v. PSI & LMB*, Defendants Schwimmer and Morelli conspired to commit frauds on the Court to deprive Vaughn, members of the Civil Rights Conspiracy Class, and its LMB Embezzlement Subclass, of the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all citizens, thereby depriving of their rights to make and enforce contracts, to sue, be parties, give evidence, as is enjoyed by all citizens.

150.    In *Vaughn v. PSI & LMB*, Defendants Schwimmer and Morelli committed the following acts to further their conspiracy to commit a fraud on the Court:

*Violations of "superior knowledge doctrine"—*

- In the course of committing their civil rights conspiracy against Vaughn and the members of the Civil Rights Conspiracy Class, Defendants Schwimmer and Morelli gained superior knowledge of Vaughn's potential dispute with them about that conspiracy, as well as the potential dispute each member of the Class had about it, which disputes they had misled Vaughn and those Class members to unwittingly settle. In the course of embezzling $66,667 from Vaughn, and additional amounts from and the members of the LMB Embezzlement Subclass, and later concealing those embezzlements from constituted authorities, breaching their duty to disclose those embezzlements, Defendants Schwimmer and Morelli gained superior knowledge of the potential dispute Vaughn and members of that Subclass had about the embezzlement from their recoveries, and its subsequent concealment. In *Vaughn v. PSI & LMB*, Defendants Schwimmer and Morelli committed deceit and a fraud on the Court by failing to disclose their superior knowledge of genuine issues of material fact as to whether the arbitration promises made by Vaughn, the Class and the Subclass members, were invalid, when Defendants knew they had superior knowledge of these facts needed to avoid deception, Defendants knew from Vaughn's allegations that their superior knowledge would not be available to the Court, and Defendants knew that the Court would act on the basis of mistaken knowledge, breaching their duty to disclose their superior knowledge of genuine issues of material fact.

- *Representations misleading because incomplete*--In addition, in *Vaughn v. PSI & LMB*, Defendants Schwimmer and Morelli each presented Vaughn's Settlement Agreement and Release without the fact  and concealing that PSI paid $1,500,000 to Morelli's firm for it to bind Vaughn to the DRA, and withholding a copy and failing to enclose a copy of the DRA that superseded Vaughn's individual retainer agreement by binding Vaughn and first 48 members of the Civil Rights Conspiracy Class, when that payment, and that document, raised genuine questions of material fact as to whether Vaughn's had agreed to an arbitration clause, and that the arbitration agreement of each member of the Class was invalid because the terms of the arbitration clause were concealed from each client. Defendants Schwimmer and Morelli intentionally and deceitfully withheld material, relevant and competent evidence from the Court in a deceitful manner, breaching their duty to disclose such material, relevant and competent evidence to the Court.

- In *Vaughn v. PSI & LMB*, Defendant Morelli presented Vaughn's individual retainer agreement without the DRA containing PSI's superseding promise to pay Vaughn's fees, which also superseded the individual retainer agreements of members of the Civil Rights Conspiracy Class. The DRA proved that Morelli's firm no longer had an economic incentive to maximize Vaughn's recovery, or to maximize the recoveries of members of the Class. At the least, the DRA raised a genuine question of material fact as to whether Vaughn's arbitration promise, and the arbitration promise of each member of the Class, was invalid, breaching his duty to disclose the existence and content of the DRA to the Court.

- *Fraudulent Concealment*--In *Vaughn v. PSI & LMB*, Defendant Morelli's firm's initial memorandum supporting PSI's motion to compel arbitration fraudulently concealed the DRA from the Court, thereby preventing the Court from finding, at the least, a genuine question of material fact as to whether Vaughn's arbitration promise, and the arbitration

promise of each member of the civil rights conspiracy class, was invalid, breaching his duty to disclose the existence and content of the DRA to the Court.

- *Violation of Disciplinary Rules Governing NY Lawyers*--In *Vaughn v. PSI & LMB*, to facilitate Defendant PSI's frauds on the Court, Defendant Schwimmer violated Disciplinary Rule 7-102(B)(2), which mandated that he immediately report Defendant Morelli's frauds to the Court.

In these and other ways, Defendants Schwimmer and Morelli committed fraud on the Court whereby they perpetuated, concealed and covered up their Civil Rights Conspiracy and their misconduct towards Vaughn, and members of the LMB Embezzlement Subclass.  Had the Court been aware of LMB's embezzlement of funds, the Court would have taken the appropriate action to require the return of the misappropriated funds.

151.   After considering Defendants' fraudulent submission, the court mistakenly concluded that the parties agreed that Vaughn's arbitration promise was valid and ordered the arbitration of Vaughn's civil action based upon the arbitration clause contained in the Settlement Agreement and Release, whereupon Vaughn's civil action was ultimately dismissed.

152.   Defendants' conspiracy to commit these frauds and its concealment from the Court injured Vaughn, members of the Civil Rights Conspiracy Class, and the LMB Embezzlement Subclass, including Plaintiff Dowe.

153.   Defendants' conspiracy and concealment injured Plaintiff Dowe, and other members of the LMB Embezzlement Subclass, as putative members of the Class represented by Vaughn, in their person and property by denying them relief from the LMB Embezzlement scheme, which deprived them of the amounts embezzled, together with interest, treble damages, punitive damages and attorneys' fees proximately caused.

154.   Defendants' conspiracy and concealment further injured Plaintiff Dowe, and other members of the Civil Rights Conspiracy Class, as putative members of the Class represented by Vaughn, in their person and property by denying them relief from the Civil Rights Conspiracy

that used the DRA to process and undervalue their race-bias recoveries, which deprived members of the Class of the amounts undervalued, together with interest, punitive or treble damages, and attorneys' fees proximately caused.

155.    Defendants' conspiracy and concealment further injured Plaintiff Dowe, and other members of the Civil Rights Conspiracy Class,  as putative members of the Class represented by Vaughn, by denying them the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by all citizens

WHEREFORE, Plaintiff demands judgment for herself, members of the Civil Rights Conspiracy Class, and members of the LMB Embezzlement Subclass against Defendants jointly, severally and in the alternative as follows:

A.    Declaring the Civil Rights Conspiracy Class and the LMB Embezzlement Subclass to be classes under FRCP 23;

B.    Awarding compensatory and punitive damages against each Defendant, jointly and severally, in favor of Plaintiff, members of the Class and members of the Subclass, for all losses and damages suffered as a result of Defendants' violations, together with pre- and post-judgment interest;

C.    Awarding Plaintiff, members of the Class and Subclass, the costs of this action, including attorneys' and experts' fees and costs;

D.    Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' ill-gotten gains, an accounting of the fees paid to LMB by PSI and retained by LMB from settlements obtained on behalf of the DRA Bribery Class and any other relief available under 18 U.S.C. § 1964(a); and

E.    Granting such other relief the case may require that Court deems just and proper.

## COUNT VI

**Violation of New York Judiciary Law § 487(1)
Deceit Or Collusion, and Consent To Deceit Or Collusion,
With The Intent To Deceive A Party Or Court**

156.    Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint as if they were fully restated.

157.    Defendants Schwimmer and Morelli are guilty of "any deceit or collusion, with intent to deceive the court" or Vaughn (a party), during a litigation by their failure to disclose their superior knowledge of the conspiracy that they perpetrated on members of the Civil Rights Conspiracy Class, by concealment of the DRA scheme and by using an unfair DRA to process their race-bias claims. These acts took place within litigation venued in the State of New York and are sufficiently egregious to warrant review.

158.    Defendants Schwimmer and Morelli are guilty of "any deceit or collusion, with intent to deceive the court" or Vaughn (a party) during a litigation by their failure to disclose their superior knowledge of the embezzlement and concealment of it and the DRA that they perpetrated on members of the LMB Embezzlement Subclass.

159.    Defendants Schwimmer and Morelli are guilty of "any deceit or collusion, with intent to deceive the court" or Vaughn (a party), during a litigation by making representations that were misleading,   intentionally by commission or by omission by each presenting Vaughn's Settlement Agreement and Release but withholding that PSI paid $1,500,000 to Morelli's firm for it to bind Vaughn to the DRA, and by withholding a copy of the DRA that superseded Vaughn's individual retainer agreement by binding Vaughn and first 48 members of the Civil Rights Conspiracy Class.

160.    Defendant Morelli is guilty of "any deceit or collusion, with intent to deceive the court"

or Vaughn (a party), by making a representation that was misleading intentionally by commission or by omission because incomplete by presenting Vaughn's individual retainer agreement without the DRA containing PSI's superseding promise to pay Vaughn's fees, by concealment of the docuemtns which also superseded the individual retainer agreements of members of the Civil Rights Conspiracy Class. The DRA proved that Morelli's firm no longer had an economic incentive to maximize Vaughn's recovery, or to maximize the recovery of any member of the Class. By his silence, Defendant Schwimmer demonstrated that he knew of and consented to Defendant Morelli's deceit or collusion with intent to deceive the court or Vaughn during a litigation and in an egregious manner.

161.    Defendant Morelli is guilty of "any deceit or collusion, with intent to deceive the court" or Vaughn (a party), during a litigation by the deceit in its initial memorandum to the Court of fraudulently concealing the DRA from the Court and from Vaughn. By his silence, Defendant Schwimmer demonstrated that he knew of and consented to Defendant Morelli's deceit or collusion with intent to deceive the court or Vaughn.

162.    Defendant Schwimmer is guilty of "any deceit or collusion, with intent to deceive the court" or Vaughn (a party), during a litigation by violating the mandate of Disciplinary Rule 7-102(B)(2) that he immediately report Defendant Morelli's frauds to the Court.

163.    Defendants Schwimmer and Morelli's deceits and collusions, and their consent to the other's deceits and collusions constituted attorney misconduct that violated Judiciary Law § 487(1).

WHEREFORE, Plaintiff Dowe demands judgment for herself, members of the Civil Rights Conspiracy Class, and members of the LMB Embezzlement Subclass against Defendants jointly, severally and in the alternative as follows:

A.    Declaring the Civil Rights Conspiracy Class and the LMB Embezzlement Subclass to be classes under FRCP 23;

B.      Awarding compensatory, treble, and punitive damages against each Defendant, jointly and severally, in favor of Plaintiff Dowe, members of the Civil Rights Conspiracy Class, and members of the LMB Embezzlement Subclass, for all injuries suffered as a result of Defendants' violations, together with pre- and post-judgment interest;

C.      Awarding Plaintiff Dowe, members of the Civil Rights Conspiracy Class, and members of the LMB Embezzlement Subclass, the costs of this action, including attorneys' and experts' fees and costs;

D.      Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' ill-gotten gains, an accounting of the fees paid to LMB by PSI and illegally retained by LMB and any other relief available under 18 U.S.C. § 1964(a); and

E.      Granting such other relief the case may require that Court deems just and proper.

WHEREFORE, it is respectfully requested that this Court award judgment to Plaintiffs on each cause of action, along with the costs and disbursements of this action, to certify the classes requested in this complaint, and for such, other, different and further relief as to this Court may seem just and proper.


_____
Andrew Lavoott Bluestone
233 Broadway, Suite 2702
New York, NY 10279
(alb@bluestonelawfirm.com)
(212) 791-5600
Attorney for Plaintiffs