**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MAUREEN DOWE individually and
on behalf of those Class Members similarly
situated,

Plaintiffs,

v.

18 CV 11633 (DLC)

LEEDS BROWN LAW P.C., LEEDS MORELLI
& BROWN, P.C., LEEDS,                                    AMENDED
MORELLI & BROWN, LLP, LEEDS &            CLASS ACTION COMPLAINT
MORELLI, P.C., LENARD LEEDS,
STEVEN A. MORELLI, JEFFREY K.
BROWN, PRUDENTIAL FINANCIAL
INC., parent and successor in interest to                    Jury Trial Demanded
PRUDENTIAL SECURITIES INCORPORATED,
ERIC SCHWIMMER, and JOHN DOES 1-25,
fictitious persons and entities,

Defendants.
------------------------------------------------------------------X

Plaintiff Maureen Dowe ("Dowe"), individually and on behalf of all those Class

Members similarly situated, as and for their Complaint against Defendants, allege and state as

follows:

1.      During the period from 1997 to the present, the Defendants continuously violated

42 U.S.C. §1985(2) and (3) – which prohibits racially-based conspiracies involving employment

and access to courts – with the intent to keep African-American employees of Prudential

Securities Incorporated which has since become Prudential Financial Inc. (and hereafter is

collectively referred to as "PSI") from being heard in court with regard to violations of federal,

state, and city laws, including Title VII of the 1964 Civil Rights Act, which prohibit racial

discrimination in employment at PSI.

2.      The Defendants agreed amongst themselves and with others known and not

known ("the Conspirators") that a law firm, Leeds & Morelli, P.C. ("LMB"), and its successor entities as described below (and hereafter collectively referred to as "LMB"), would represent African-American employees of PSI as their lawyers against PSI with respect to claims of racial discrimination.

3.      It was part of the conspiracy that LMB would sign clients to contingency retainer agreements in which the client would be obliged to pay LMB only if the client recovered money from PSI; the lawyers' fees were to be one-third of the settlement amount with no extra withholding for expenses or fees.  The Conspirators agreed that PSI would pay LMB additional money, different from contingent fees earned upon success, eventually totaling about $7,500,000, to persuade their clients, i.e., the employees of PSI, to go through a mediation process, called binding mediation, rather than suing in Court.  The Conspirators further agreed that PSI's payments to LMB, which represented an inherent conflict of interest, would not be disclosed to those clients, who did not know that their lawyers were paid by their opponents so that those lawyers would fraudulently convince them to waive valuable litigation rights.

4.      The Conspirators agreed to engage in conduct constituting common law fraud, legal malpractice, multiple and systematic violations of their fiduciary obligations, aiding and abetting violations of fiduciary obligations, conversion, and violations of New York Judiciary Law, sections 487(2), involving deceit and collusion as fraud on the Court.  The Conspirators agreed to violate their obligations to their clients, employees and to the law so that they could avoid having to pay African-American PSI employees money that was due them as compensation for PSI's civil rights violations.

## THE PARTIES

5.      Plaintiff Maureen Dowe (hereinafter "Dowe") is an individual residing in Patterson, New York within the Southern District of New York.  Dowe was an employee of Prudential Securities Incorporated who was discriminated against because of her race, and who retained LMB.  LMB settled her claim and retained one-third of the money PSI had directed be paid to Dowe from her settlement with PSI, and Dowe was not told of the secret agreement reached between LMB and PSI to convince her to waive valuable litigation rights.

6.      Dowe brings these claims individually and on behalf of all Class Members. Those persons similarly situated as Dowe as a discriminated African-American employee of PSI, who had the secret arrangement concealed from them shall hereafter be referred to as Class Plaintiffs.  Those Class Plaintiffs who had one-third of the recovery from PSI withheld by LMB shall hereafter be referred to as SubClass Plaintiffs.

7.      At all relevant times, Prudential Securities Incorporated was a corporation with offices located at or near One Seaport Plaza, New York City, New York. Defendant Prudential Financial, Inc. is the parent and successor in interest to Prudential Securities Incorporated Prudential Financial, Inc. has offices located at 751 Broad Street, Newark, New Jersey. (Prudential Securities Incorporated and Prudential Financial, Inc. are collectively referred to as "PSI").

8.      Defendant Leeds & Morelli, P.C. was a law firm incorporated as a professional corporation.  In the period since 1997 the law firm has undergone changes in name to Leeds Morelli & Brown, P.C., and to Leeds Brown Law P.C., as well as having been called Leeds, Morelli & Brown, LLP.  Successors in interest all are named defendants and are collectively

referred to herein as LMB.  LMB has had offices located at 101 Greenwich Street, New York, New York and at One Old Country Road, Carle Place, New York.

9.      At all relevant times, Defendant Lenard Leeds (hereinafter "Leeds") was an attorney licensed to practice law in the State of New York and a principal of LMB.

10.      At all relevant times until 2017, when he was convicted of stealing client funds, Defendant Steven A. Morelli (hereinafter "Morelli") was an attorney licensed to practice law in New York and a principal of LMB.

11.      At all relevant times, Defendant Jeffrey K. Brown (hereinafter "Brown") was an attorney licensed to practice law in New York and was a lawyer at and then a principal of LMB.

12.      At all relevant times, Defendant Eric Schwimmer was an attorney licensed to practice law in New York and an employee, principal and/or agent of Defendant PSI.

13.      Defendants John Does 1-25 are fictitious persons and/or entities unknown to Plaintiff who are associated with Defendants and/or conspired with Defendants and whose identities and/or tortious acts have not been revealed or identified.

## JURISDICTION

14.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 with respect to Plaintiffs' federal statutory claims and may assert supplemental jurisdiction over all other claims pursuant to 28 U.S.C. §1367.

## VENUE

15.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial number of events or omissions occurred in this District, one or more of the Defendants can be found in this District, and this matter is "related" to a prior action in the Southern District of New York.

4

## BACKGROUND TO THE CONSPIRACY

16.     During the period from 1997 through 2019, a large group of PSI employees believed PSI had caused them to suffer discrimination on the basis of race through inequality in compensation, denial of advancement and promotion opportunities, harassment based on color and ethnicity, retaliation for speaking out against race-based discrimination, and a hostile work environment.

17.     Attorneys and other persons associated with LMB became aware of these employees and arranged to meet with them and to propose that LMB represent the employees against PSI.  Because LMB would be paid by both PSI and through contingent fee arrangements, LMB and PSI shared an interest in identifying the universe of potential claimants, which would minimize PSI's exposure to discrimination-related claims and maximize LMB's potential to make money for itself.

18.     Rather than commence an action at law on behalf of the PSI employees, the LMB attorneys instead met with Schwimmer, counsel employed by PSI, to discuss a scheme whereby LMB would divert these claims to mediation, thereby reducing PSI's total exposure while allowing LMB to be paid by both sides.  The plan they agreed upon and conspired together to accomplish violated civil rights laws, the attorney code of conduct, fiduciary duties on both sides of the dispute, and was corrupt.

19.     It was part of the conspiracy that LMB would persuade the PSI employees that the clients' interests were aligned with those of LMB.  Under the LMB retainer agreement, LMB was entitled to one-third of the recovery obtained from PSI (see Exh. 3).  Without ever telling the PSI employees, however, that LMB and PSI had entered into a secret agreement by which PSI paid LMB millions of dollars to secure waivers of the PSI employees' right to proceed in Court, and to resolve all claims through a non-judicial mediation process.  This "double-dipping"

arrangement compensated LMB for sacrificing the materially larger potential contingent fees that would have resulted if the employee cases were zealously prosecuted through litigation in court. PSI knew that by agreeing to pay LMB a flat fee they fundamentally changed the economics of the retainer agreement between LMB and LMB's clients. The intent and effect of such agreements was to reduce the potential recovery for each claimant who had waived these valuable litigation rights based on LMB's failure to disclose its corrupt arrangement with PSI.

20.     There could be (and can be) no confidence that the settlements arbitrarily reached by the conspirators between themselves fairly reflected the injuries to the PSI employees, for the scheme required LMB to be compensated by its clients' opponent, representing an unwaivable conflict of interest. The waiver of valuable litigation rights proximately caused reduced claim values to be quantified at trial. LMB, having made an illicit agreement in breach of its professional duties, had no right to accept any fees from its discrimination clients. All such fees are subject to disgorgement and should be disgorged.

21.     Leeds, a lawyer and principal of LMB, described LMB's role in a letter to outside counsel for PSI about the purpose of an $1,500,000 payment from PSI to LMB:

> This payment was also made in recognition of all the extraordinary time and effort it would take to keep a group of this size together, and within the process, particularly given the stated desire of various individuals that this matter be brought to the attention of the United States Attorney, Congress, and other public officials, for investigation and possible prosecution for illegal acts, and to the press. The clients believed that the horror stories concerning 'nigger jokes,' KKK hotlines, banana peels and the like should made public in an effort to get PSI to change its 'plantation type' atmosphere. The agreement and the effort made by both sides have thus far thwarted these individuals from pursuing such independent means of redress.

The letter is appended to the Amended Complaint as Exhibit 1.

22.     Although PSI responded to the letter through outside counsel on August 31, 1999, the response did not dispute the purpose or effect of the engagement by PSI of LMB in its effort

to minimize its exposure to the victims of racial discrimination.  A copy of the August 31, 1999, letter is appended to the Amended Complaint as Exhibit 2.

23.    It had been further agreed that neither PSI nor LMB would disclose this fraudulent arrangement and non-waivable conflict of interest.  Such conduct constitutes legal malpractice and breach of professional ethics by both LMB as attorneys for the clients and the attorneys at PSI.

24.    It was further agreed that, as part of the conspiracy, the Conspirators would engage in the fraudulent concealment of their unlawful activities so that no one would know of, nor could effectively bring a case against them for, *inter alia*, the violation of their fiduciary duties.  The Conspirators actively concealed their fraudulent activity from the employees, thus depriving them of any reasonable means to discover it.  Among the victims were Dowe and hundreds of other former PSI employees who were deliberately deprived of the information by which they could have known that they were injured by this fraudulent scheme between their own lawyers and their employer.

25.    Dowe was an African-American employee of PSI who was discriminated against by PSI on account of her race through inequality in compensation, denial of advancement and promotion opportunities, harassment based on color and ethnicity, retaliation for speaking out against race-based discrimination, and a hostile work environment.

26.    On January 21, 1998, Dowe executed a retainer agreement with LMB as her counsel to represent her and obtain redress for the damages she had suffered at PSI and to improve her work environment there.  The retainer agreement provided that (1) LMB would receive a one-third contingency fee; (2) this initial arrangement between  LMB and Dowe might

be superseded by a different arrangement between LMB and Dowe if circumstances changed; and (3) LMB would not deduct litigation costs from any settlement obtained on behalf of Dowe.

27.     The retainer agreement Dowe executed was on a form used by LMB with her and with the Class Plaintiffs.  A copy of that form retainer agreement is appended to the Complaint as Exhibit 3.

28.     The retainer agreement did not give LMB the right to act on Dowe's behalf to waive a jury trial or to waive possible punitive damages or to enter into arbitration or "binding mediation."  Nor did it disclose that LMB had an agreement with PSI to convince her to do exactly that.

29.     Dowe was asked to sign other documents by LMB in the course of her representation, and signed what documents LMB directed her to sign.  She was not told of any arrangements between PSI and LMB or of any arrangement by which PSI was engaging LMB and paying LMB.

30.     In or about February 1999, LMB informed Dowe that PSI had offered $150,000 to settle Dowe's claim.  LMB recommended that Dowe accept the settlement.  Believing LMB was acting solely in her best interests, Dowe accepted the advice and executed a "Settlement Agreement and General Release" on February 16, 1999 ("Settlement Agreement").  According to the Settlement Agreement, Dowe would be paid $150,000 "less all applicable taxes, withholding and deductions."

31.     PSI did not provide Dowe with a check for the $150,000.  Instead, the check for the $150,000 was sent to LMB by PSI.  LMB kept $50,000 and sent Dowe a check for $100,000 along with a letter signed by Morelli, dated March 1, 1999, that represented that LMB was keeping $50,000 of the settlement as the contingency fee agreed to in the retainer agreement.

32.     In November 2016, Dowe spoke to an attorney in New York about an unrelated matter.  During that conversation Dowe said that she had been represented in the past by LMB. The attorney recognized the name of the firm and suggested that Dowe speak to an attorney in New Jersey who was familiar with LMB and had handled claims against LMB.

33.     On December 15, 2016, Dowe spoke to the New Jersey attorney.  That attorney revealed to Dowe that PSI had paid attorney's fees to LMB in connection with the discrimination litigation involving PSI's African-American employees.  That attorney further revealed to her that such an arrangement had been improper and that such an arrangement might have been harmful to Dowe's interests.

34.     The information Dowe received on December 15, 2016 was new information to her.  She had not been aware of any claims of improper conduct involving LMB before that date, nor was she aware prior to her conversation with the New York attorney that LMB might have been the subject of claims against it by former clients.

## FACTUAL ALLEGATIONS REGARDING SECRET AND ILLEGAL AGREEMENTS OF WHICH DOWE AND CLASS PLAINTIFFS WERE UNAWARE

35.     Unknown to Dowe and Class Plaintiffs, in June 1997, Elvie Moore, a PSI employee, represented by LMB, sued PSI, alleging racial discrimination in connection with claims that he was passed over for pay increases and promotions due to his race.   The complaint was docketed in the Southern District of New York under 97CV4510.  LMB sought damages of $2,700,000 from PSI.

36.     In September 1997, LMB, representing Connie Hernandez, a PSI employee, sued PSI in the Eastern District of New York, alleging racial discrimination.  LMB sought damages in the amount of $20,000,000.

37.     Unknown to Dowe and Class Plaintiffs, both the lawsuit LMB brought on behalf of Moore and the one brought by LMB on behalf of Hernandez, were withdrawn without prejudice in 1998.

38.     Unknown to Dowe and Class Plaintiffs, after LMB brought the lawsuits on behalf of just two of the employees with claims of racial discrimination, LMB and PSI negotiated a means to avoid the significant monetary risks posed to PSI by civil litigation of numerous claims of racial discrimination.   These discussions were between Morelli on behalf of LMB and Schwimmer on behalf of PSI.

39.     Unknown to Dowe and Class Plaintiffs, on or about February 13, 1998, an agreement entitled "Dispute Resolution Agreement" (hereafter "2/13/1998 DRA") was signed by Morelli on behalf of LMB and by Schwimmer on behalf of PSI.  A copy of the relevant portions of the 2/13/1998 DRA is appended to the Amended Complaint as Exhibit 4.   Under the 2/13/1998 DRA, the employees of PSI represented by LMB (who, unknown to Dowe and the Class Plaintiffs, were named in an exhibit to the 2/13/1998 DRA) "irrevocably agree to forgo a jury trial and submit to the dispute resolution procedure" provided for in the agreement.   The 2/13/1998 DRA provided for a two-step process.  The first step was to try to resolve each claim by direct negotiations between LMB and PSI.  The second step (if the first step failed) was to submit the claim to binding mediation.  Pursuant to the 2/13/1998 DRA, PSI agreed to pay for the "reasonable mediation costs."   Moreover, the 2/13/1998 DRA provided that, "[a]s consideration for each Claimant's irrevocable agreement to submit all Claims to the Dispute Resolution Procedure pursuant to the terms of the Agreement, PSI agrees to pay Claimants' reasonable attorneys' fees in connection with this process.  It is understood and agreed that [LMB] will advise the Claimants regarding the attorneys' fee arrangement entered into with

PSI." They did not do so. On information and belief both LMB and PSI knew that Claimants would not be so advised, as there was no economic incentive or rationale for Claimants to waive valuable trial rights. Further, there was no disclosure that LMB was being paid by PSI.

40.     Unknown to Dowe and Class Plaintiffs, LMB was obliged by its agreement with PSI to have each claimant represented by LMB execute a copy of the 2/13/1998 DRA. Indeed, the 2/13/1998 DRA falsely represented that each claimant had reviewed the 2/13/1998 DRA prior to its signing and had authorized LMB to execute the 2/13/1998 DRA on behalf of each client. Both LMB and PSI knew at the time of the DRA that there had been no discussions or authorizations regarding the execution of the 2/13/98 DRA.

41.     Unknown to Dowe and Class Plaintiffs, the 2/13/1998 DRA contained a confidentiality clause requiring that the claimant keep confidential the claims subject to the agreement, evidence presented in connection with the mediation, and the execution and terms of the agreement.

42.     The 2/13/1998 DRA did not set forth that attorney fees were to be paid by PSI to LMB. Unknown to Dowe, a side communication, also dated February 13, 1998, and signed by Schwimmer, stated that LMB would be paid $1,500,000 within a week  in connection with the 2/13/1998 DRA in exchange for LMB's representation that it had obtained waivers of jury trial from a certain number of its clients. A copy of the February 13, 1998, side communication is appended to the Amended Complaint as Exhibit 5. The February 13th communication further agreed that LMB could in the future request additional fees after the resolution of the claims of specified claimants. Unknown to Dowe and Class Plaintiffs, PSI paid LMB the $1,500,000 on or about February 20, 1998. This payment was illegal, unauthorized, fraudulent, and in breach of professional obligations of LMB and Schwimmer and PSI.

43.     Unknown to Dowe and Class Plaintiffs, LMB and PSI amended the 2/13/1998 DRA in June 1998.  The amended document (the "6/12/1998 DRAS"), dated June 12, 1998, was signed by Morelli on behalf of LMB.  The 6/12/1998 DRAS added an intermediate non-binding mediation phase to the dispute resolution process that had been agreed to by PSI and LMB. According to the 6/12/1998 DRAS, LMB had been retained by additional claimants.   The 6/12/1998 DRAS provided status information regarding resolved claims and a timetable to resolve additional claims.   The 6/12/1998 DRAS further provided that PSI was to receive "personally executed" copies of the 2/13/1998 DRA from claimants.

44.     Unknown to Dowe and Class Plaintiffs, a side letter, signed by Schwimmer on behalf of PSI, and dated June 12, 1998, acknowledged  that LMB was being paid an additional $1,000,000 for attorneys' fees and costs expended and that this payment would be without prejudice to claims that PSI or LMB might have regarding attorneys' fees.    Morelli countersigned the June 12, 1998 side letter. This payment was illegal, unauthorized, fraudulent, and in breach of professional obligations of LMB and Schwimmer and PSI.

45.     Unknown to Dowe and Class Plaintiffs, a letter dated March 2, 1999, signed by Schwimmer on behalf of PSI and directed to and countersigned by Morelli at LMB, stated that PSI was paying LMB an additional $1,500,000 in attorneys' fees in connection with the dispute resolution agreement. This payment was illegal, unauthorized, fraudulent, and in breach of professional obligations of LMB and Schwimmer and PSI.

46.     Unknown to Dowe and Class Plaintiffs, individuals at PSI who were not previously aware of the nature of the relationship between PSI and LMB learned, at some point after March 1999, that LMB had also been keeping one-third of the settlement money being paid to the claimants represented by LMB as contingency fees.

12

47.     Unknown to Dowe and Class Plaintiffs, by the end of July 1999, LMB had retained one-third of the settlement funds intended to be paid to 87 of the claimants of resolved racial discrimination claims, a total of $1,682,767 of the $5,048,300 awarded to the claimants under the dispute resolution agreement arrangement, in addition to the secret amounts paid by PSI to LMB to induce LMB to have its clients waive valuable litigation rights.

48.     By a letter dated August 25, 1999, and attached to the Amended Complaint as Exhibit 1, Leeds, having been confronted by outside counsel for PSI, who had asserted that the implementation of the mediation process was being delayed by LMB, claimed that PSI was not paying LMB the fees to which PSI was entitled for having obtained the participation of the claimants in the dispute resolution process.   LMB also insisted that PSI was aware of the contingency fee arrangements LMB had with its clients.   Leeds used highly charged language to demonstrate that the PSI employees had accepted mediated settlements despite having significant and substantial grievances against PSI.   In other words, LMB articulated in writing that the overall purpose of the scheme was to drive down the value of the settlements by the secret agreement to have uninformed clients waive valuable litigation rights in exchange for large secret payments by PSI to LMB.

49.     As stated above, while outside counsel's response to Leeds' letter, appended to the Amended Complaint as Exhibit 2, disputed PSI's knowledge that PSI was keeping contingency fees despite the 2/13/1998 DRA and the 6/12/1998 DRA, it did not dispute that LMB's assertion that the mediation process had effectively minimized PSI's liability for racial discrimination.   Moreover, as described below, PSI's actions thereafter were consistent with PSI having knowledge of the arrangement and PSI took no steps either to make certain that Claimants were informed of the arrangement or that they were entitled to have one-third of their

claims retained by LMB returned to them.  PSI simply papered the record and continued as before.

50.     Unknown to Dowe and Class Plaintiffs, by a letter dated August 31 1999, PSI, through outside counsel, stated that the 2/13/1998 DRA was intended to supersede any prior contingency arrangements LMB had had with its clients.  As set forth in that letter "by the time the parties entered into the Dispute Resolution Agreement, which was in February 1998, the parties had agreed that, in consideration for PSI paying your firm's attorneys' fees, your firm would not take a one-third contingency fee from each of the negotiated settlements.  In fact, during the negotiations with PSI, your office expressly represented that it wanted PSI to pay your firm's attorneys' fees so that the entire settlement would go directly to the claimants."

51.     Unknown to Dowe and Class Plaintiffs, *after* the August 31, 1999 letter, LMB demanded additional attorneys' fees from PSI, in the form of $2,500,000 as an interim fee, $3,500,000 in January 2000, and a further $3,500,000 in February or March 2000.

52.     Unknown to Dowe and Class Plaintiffs, in response to LMB's demands, PSI's outside counsel wrote to LMB in a letter dated September 21, 1999.  That letter repeated outside counsel's position that LMB's taking of contingency fees was inconsistent with the 2/13/1998 DRA, and rejected the additional fees demanded by LMB.  Yet this position by PSI was incoherent.  PSI claimed that there was no entitlement to one-third contingent fees, but knew that the fees had been taken, and took no steps to rectify the position.  In addition, the terms of the secret agreement presupposed that PSI would pay LMB fees, yet the August 31, 1999 letter refused to pay those fees.  And in the meantime PSI continued with its dispute resolution process, continuing to gain the benefits of the waiver of valuable litigation rights without ever

taking any action to ascertain whether those waivers were procured through the corrupt double-dipping arrangement of which they were aware.

53.     Unknown to Dowe and Class Plaintiffs, LMB continued to withhold one-third of the settlement funds intended to be paid to Claimants who obtained money through the dispute resolution agreement arrangement.  By late April 2000, 123 more claimants had had their claims resolved by the dispute resolution agreement arrangement for an aggregate total of $4,911,350, of which LMB had taken approximately $1,637,117 from their clients in contingency fees.

54.     Unknown to Dowe and Class Plaintiffs, the dispute between PSI and LMB resulted in an agreement dated April 24, 2000 between PSI and LMB, signed by Morelli on behalf of LMB and Schwimmer on behalf of PSI (the "4/24/2000 Amendment").  Under the 4/24/2000 Amendment, PSI would pay LMB an additional $3,500,000 in three stages, and those funds – in addition to the prior funds paid by PSI – constituted the entire sum owed to LMB "whether for attorneys' fees or expenses or disbursements or otherwise."  PSI and LMB made a deal so that they could continue to profit at the expense of the defrauded claimants.

55.     Unknown to Dowe and Class Plaintiffs, the 4/24/2000 Amendment further represented in paragraph 3 that:

> Notwithstanding any Covered Employee's prior or subsequent agreement or willingness to pay the Firm's attorneys' fees or expenses or disbursements, the Firm hereby relieves and releases each and every Covered Employee of any obligation he or she has undertaken, by signing a retainer agreement with the Firm; by operation of law, or otherwise, to pay the Firm's attorneys' fees in the amount of 33-1/3% of the Covered Employees' recovery, if any, or expenses or disbursements and the Firm hereby releases and discharges each and every Covered Employee from any obligation to pay attorneys' fees or expenses or disbursements to the Firm for its representation of the Covered Employee in any proceedings whatsoever; any provision of any retainer agreement between the Firm and a Covered Employee, any course of dealings; custom and usage; standard practice; or other requirement to the contrary notwithstanding, except as noted in paragraph 4 and paragraph 5.

Neither PSI nor LMB notified LMB's clients of this change in their retainer agreement with LMB or took any measures to return the one-third contingent shares previously taken. Nor did they inform Dowe or Class Plaintiffs that they had been induced to waive valuable litigation rights through an unenforceable agreement and that their settlements were legally voidable. Not knowing of that agreement, Dowe and Class Plaintiffs could not enforce their rights under it.

56.     Unknown to Dowe and Class Plaintiffs, the 4/24/2000 Amendment further represented in paragraph 4 that:

> The Firm has represented to PSI during its representation of the Covered Employees that it has withheld certain sums from negotiated settlements paid to certain of the Covered Employees for purposes of reimbursing the Firm for certain expenses or reimbursements which the firm had previously incurred on behalf of each Covered Employee ("the Withheld Amount") but that, in certain other instances, the Firm has sometimes waived such reimbursement, in whole or in part. The Firm hereby confirms and restates this representation. The Firm agrees to discontinue this practice hereafter and never to reinstate it, in whole or in part, with respect to any Covered Employee. Hereafter, each and every award to a Covered Employee represented by the Firm, whether in the Process or otherwise, shall be paid to the Covered Employee in full, without any diminution thereof by the Firm or by any other person for any reason.

Neither PSI nor LMB notified the LMB clients of this change.

57.     Unknown to Dowe and Class Plaintiffs, the 4/24/2000 Amendment further represented in paragraph 5 that:

> Notwithstanding the provisions of paragraphs 2, 3 and 4 above, the Firm may retain such portion of the Withheld Amount (a "Portion") as the Firm certifies to PSI in writing no later than 7 days from the date hereof that the Firm can demonstrate that it satisfies all of the following criteria: (a) The Portion was the subject of full written disclosure by the Firm to the relevant Covered Employee regarding the Firm's policy and practices regarding expenses or disbursements advanced by the Firm on behalf of its clients, including the fact that reimbursement thereof is sometimes waived by the Firm. (b) The Portion was the subject of a written consent by the Covered Employee acknowledging receipt and an understanding of the full disclosure by the Firm referred to in subparagraph (a) above. (c) The Firm represents that it has actually incurred expenses at least equal to the Withheld Amount. To the extent that the sum of the Portions do not equal or exceed the Withheld Amount, the Firm shall return the balance thereof to

the relevant Covered Employees not later than 14 days from the date hereof, and
shall certify to PSI in writing within 2 days thereof that it has done so.

58.     Unknown to Dowe and Class Plaintiffs, Brown of LMB falsely certified that the

withholding of funds from the LMB clients had been consented to by the clients and were to be

retained by LMB after full disclosure of the facts relating thereto to the clients by LMB.  Brown

further falsely certified that LMB had incurred expenses on behalf of the clients at least equal to

the amounts withheld from the clients.   This latter certification contradicted the only fee

agreement that had been negotiated between LMB and the clients themselves, i.e., the

contingency fee agreements.  In those agreements, LMB represented to the clients it would not

charge the clients for costs.  PSI knew or was willfully blind to the fact that the representation

was false, as no reasonable client would have consented to the withholding of expenses, nor

would the expenses in these claims conceivably have amounted to one-third of the total recovery.

This was an attempt by PSI to cover its tracks and put the burden on LMB without undertaking

any independent efforts to make proper disclosure to the defrauded clients.

59.     LMB never provided any of its clients with a statement of cost disbursements

advanced in the course of representing each of those clients.  PSI never requested any proof that

this had been done and, indeed, it would have known that statements of cost disbursements

would not have been able to justify the one-third share that LMB took without justification.

60.     Prior to December 15, 2016, Dowe was unaware of the dispute resolution

agreement between PSI and LMB, was unaware of the payments made to LMB by PSI, was

unaware of the supplement to the dispute resolution agreement and the amendment to the dispute

resolution agreement.  There is no question that by the mid-2000s, certain lawyers and certain

employees at PSI were aware of the injuries committed against African-American PSI

employees, the out-of-court resolution of substantive discrimination claims of apparent merit, the

withholding by LMB of substantial funds due to the victims of employment discrimination, and the malpractice in representation of those victims.

61.     Dowe and Class Plaintiffs, however, were unaware and had no reason to be on notice of this fraudulent scheme.  Dowe was denied essential information by the defendants, including her own lawyers, and had no reason to think that they were being duplicitous. Defendants have been aware of their conduct during the entire period.  Defendants have been seeking to prevent the victimized clients of LMB and former employees of PSI from learning what was denied them.  Defendants' actions, to fraudulently conceal their scheme, estop them from asserting that any claims related to that scheme are untimely.

62.     Upon information and belief, Dowe is not the only former African-American PSI employee who was left victimized by the dispute resolution agreement, the terms of which were kept hidden from them, by a system of double-dipping of attorneys' fees, and by a representation with a built-in, undisclosed inherent conflict that limited potential damage recoveries.  On information and belief, none of the other participants in the dispute resolution process were informed of its terms or were on inquiry notice of them.

63.     Even with reasonable diligence, Class Plaintiffs would not have known (a) that the secret arrangements by which PSI employed LMB had taken place and that (b) even if there was no conflict and the mediations were conducted at arms' length, they were entitled to receive the full amounts of the settlements agreed between LMB and PSI.  In any event, LMB had no right to any fees given its unwaivable conflict of interest and is required to disgorge all contingent fees to Class Plaintiffs.

64.     LMB actively prevented Dowe and upon information and belief many others from learning of their legal rights and privileges.  PSI knew that LMB was double-dipping and failed

to take steps to insure that the claimants received damages or to rectify the illegal agreement or ensure that the Class Claimants were aware of its terms.

## CLASS ACTION ALLEGATIONS

### The Civil Rights Conspiracy Class

65.     Dowe brings this action on her own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of similarly situated plaintiffs, all of whom suffered damage through the conspiracy orchestrated by Defendants to deny them of their rights under the law, (collectively referred to herein as the "Class Plaintiffs"), described as follows: African-American individuals who were employed by PSI, who suffered race-based discrimination by PSI including inequality in compensation, denial of advancement and promotion opportunities, retaliation for speaking out against race-based discrimination, harassment based on color and ethnicity, and a hostile work environment, who then engaged LMB to represent them in seeking redress and damages for their claims against PSI, and who thereafter resolved their claims against PSI under the terms of the undisclosed agreements described herein, including the 2/13/1998 DRA and simultaneously executed side letter, the 6/12/1998 DRA and simultaneously executed side letter, and the 4/24/2000 Amendment (collectively "the Agreements").  The Class Plaintiffs were not informed of the terms of the Agreements and did not know that PSI had agreed to pay, and did pay, millions of dollars to LMB.  The Class Plaintiffs were not told that they were advised to enter into an Agreement to waive valuable litigation rights as a result of the illegal agreements between LMB and PSI.  The Class Plaintiffs had no knowledge of Defendant's conspiracy until December 15, 2018 or thereafter.

66.     The Defendants conspired to deprive the Class Plaintiffs of their right and privilege to pursue legal challenges against discriminatory practices in federal, state, and local courts.

67.     The Class Plaintiffs are further divided into a subclass of those individuals whose settlement funds were wrongfully converted by LMB, and are referred to herein as the "SubClass Plaintiffs."

68.     As discussed below, there exists no conflict of interest between Dowe and the other Class Plaintiffs and SubClass Plaintiffs.  Dowe and her counsel will fairly and adequately represent the interests of the Class Plaintiffs and the SubClass Plaintiffs.  The Class and SubClass are addressed in turn.

### The Civil Rights Conspiracy Class (the Class Plaintiffs)

69.     The Class Plaintiffs are so numerous that joinder of all members is impracticable. Upon information and belief, the Class contains over 300 members.  FRCP 23(a)(1).  The exact number of Class and SubClass Plaintiffs is unknown to Dowe but can be easily ascertained from the Defendants.

70.     Dowe's claims are typical of the Class Plaintiffs.  At the center of this action are the Agreements and the Defendant's conspiracy to agree to induce her to waive valuable litigation rights and the resulting diminished value of her claims as a result of the illegal Agreements to pay LMB to direct Class Plaintiffs into a claims resolution process, all while failing to disclose the Agreements and that LMB was in an unwaivable conflict of interest.  The Agreements – all secret and none disclosed to Dowe and the Class Plaintiffs – make clear the scope and nature of the conspiracy: PSI would provide monetary payments to LMB without LMB's clients' knowledge, and LMB would abandon its fiduciary duties and ethical obligations

to Dowe and the Class Plaintiffs.  This is the fundamental issue and circumstances for every member of the Class.

71.     Dowe's injuries are typical of the injuries of the other Class members within the meaning of FRCP 23(a)(3), and raise questions of law and fact that are common to the members of the Class within the meaning of FRCP 23(a)(2), as follows:

   a.  Dowe is an African-American;

   b.  Dowe had credible race-based employment claims against PSI;

   c.  Dowe hired LMB to represent her against PSI;

   d.  Dowe was never informed of the terms of the Agreements;

   e.  Dowe was never provided a copy of the Agreements;

   f.  Dowe did not know that her lawyers, LMB, received compensation from Defendant
       PSI; and

   g.  Dowe waived valuable litigation rights which diminished the value of her claims
       based upon the conspiracy of Defendants.

72.     Dowe has no interests antagonistic to those of the other Class Plaintiffs, and Dowe will fairly and adequately protect the interests of the Class, meeting the requirements of FRCP 23(a)(4).

73.     As to Rule 23(b)(3), and its predominance element, the questions common to members of the Class under FRCP 23(a)(2) and the typicality of those claims under FRCP 23(a)(3) demonstrate the salience of the class-wide claims, which predominate over the individual damages claims of Dowe and other members of the Class.  In other words, the identity in fact of the underlying legal and factual issues, and the commonality of the type of harm suffered across the Class, vastly outweigh the narrow and distinct individual issues of the

monetary amount damage, thus satisfying the predominance requirements of FRCP 23(b)(3).  As to superiority, with hundreds of Class Plaintiffs possessing closely comparable claims, consolidated litigation conserves the resources of the court and the parties.  None of the four factors of FRCP 23(b)(3)(A)-(D) raise contrary concerns, fulfilling the superiority requirements of FRCP 23(b)(3).

74.     Common questions of law and fact exist as to all Class Plaintiffs, and they predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class Plaintiffs are:

a.  Whether LMB and PSI entered into secret agreements;

b.  Whether the secret agreements constituted an illegal or fraudulent aggregate settlement;

c.  Whether the secret agreements and the conduct of the Defendants thereunder constituted a breach of fiduciary duty;

d.  Whether the secret agreements were designed to shield PSI from potentially substantial legal, financial and reputational harm in return for payments to LMB;

e.  Whether the Class Plaintiffs were aware of the secret agreements at the time they were executed by LMB and PSI or during the settlement proceedings;

f.  Whether the secret agreements were in violation of New York Code of Professional Responsibility and interfered with the Class Plaintiffs' attorney-client relationship;

g.  Whether the terms of secret agreements caused the LMB Defendants to be placed in an irreconcilable conflict of interest which prevented them from ethically representing the Class Plaintiffs in accordance with their professional duties;

h.   Whether LMB's receipt of payments/fees from PSI in exchange for entering into the Agreements constituted a breach of fiduciary duty and LMB's ethical obligations to the Class Plaintiffs;

i.   Whether the Class Plaintiffs are entitled to disgorgement of the payments to LMB;

j.   Whether PSI and LMB targeted African-American PSI employees for LMB to recruit as clients, and then entered into secret agreements with each other thereby depriving Class Plaintiffs of their right and ability to prosecute claims against PSI, and of the full benefit of laws and judicial proceedings available to individuals that were not identified by their race for being recruited into a group to be defrauded by their employer and their unfaithful lawyers;

k.   Whether PSI and LMB conspired to deny the Class Plaintiffs the right to enforce employment contracts free of race-bias, and to work free from racial hostility, and the right to bring actions to enforce such rights, and to the full and equal benefit of laws and proceedings as enjoyed by white citizens; and

l.   Whether PSI and LMB conspired to injure the Class Plaintiffs by paying them undervalued amounts for injuries to their careers and their dignity, and by depriving them of the full and equal benefit of all laws and proceedings protecting their rights.

75.   Dowe's claims as a representative plaintiff of the Conspiracy Class include claims in equity for an accounting of client funds converted by the LMB defendants without legal authority and with: (1) violation of 42 U.S.C. § 1985(3) against all Defendants for conspiring to deprive Class Plaintiffs of their rights to equal employment; (2) violation of 42 U.S.C. § 1985(2) against all Defendants for conspiring to deprive Class Plaintiffs of their right to pursue potential claims in federal, state, and local court; (3) fraudulent concealment against LMB, Morelli, Leeds,

and Brown; (4) fraudulent concealment against PSI and Schwimmer; (5) breach of fiduciary duty against LMB, Morelli, Leeds, and Brown; (6) aiding and abetting breach of fiduciary duty against PSI and Schwimmer; (7) violation of New York Judiciary Law § 487(2) against LMB, Morelli, Leeds, and Brown for willfully delaying their clients' suit and receiving money for disbursements not incurred; (8) Legal Malpractice against LMB, Morelli, Leeds, and Brown; (9) conspiracy to commit breach of fiduciary duty against all Defendants; and (10) conspiracy to defraud against all Defendants.

76.     Dowe will fairly and adequately protect the interests of the SubClass Plaintiffs, thereby fulfilling the requirements of FRCP 23(a)(4).   None of the four factors of FRCP 23(b)(3)(A)-(D) raise contrary concerns, fulfilling the superiority requirements of FRCP 23(b)(3).

### The Embezzlement Subclass (the SubClass Plaintiffs)

77.     The invalid agreements require disgorgement of all monies paid by PSI to LMB, and all monies otherwise kept from the Class Plaintiffs by LMB.   Even if the Court should find that disgorgement of the monies paid by PSI to LMB were not required by the Defendant's misconduct, which the Class Plaintiffs do not concede, this is a subclass of Class Plaintiffs who should not be denied the contingency fees retained by LMB.

78.     Dowe is also a member of a sub-class of plaintiffs who were victims of LMB's scheme to embezzle contingency fees from the member's financial settlements.   They are referred to herein as the SubClass Plaintiffs.  The Subclass is comprised, upon information and belief, of over 200 LMB clients whose claims against PSI were settled between February 13, 1998, and April 24, 2000, of from which LMB took a one-third contingent fee.  The SubClass Plaintiffs are also members of the Class detailed above.

79.    The Subclass meets the prerequisites for class certification set out in FRCP 23(a). The Subclass is so numerous that joinder of all members is impracticable, thereby satisfying FRCP 23(a)(1).

80.    Dowe's injuries are typical of the injuries of the other SubClass members within the meaning of FRCP 23(a)(3), in that each member of the SubClass suffered the identical injury, to wit, the unlawful conversion of one-third of their settlement amount.

81.    Dowe's case raises questions of law and fact that are common to the members of the Class within the meaning of FRCP 23(a)(2), as follows:

a.    Whether members of the SubClass signed individual retainer agreements with LMB in which they agreed to pay one-third of their recovery to LMB;

b.    Whether LMB did, in fact, receive contingent fee payments from settlements paid to the SubClass Plaintiffs;

c.    Whether the individual retainer agreements signed by the Subclass Plaintiffs included LMB's promise that no disbursements or costs would be deducted from the member's settlement proceeds;

d.    Whether in the Agreements, PSI promised to pay the legal fees of LMB, and that LMB and PSI agreed to binding arbitration of any dispute over the amount of legal fees owed;

e.    Whether PSI did, in fact, pay legal fees to LMB;

f.    Whether, after PSI discovered LMB had wrongfully taken one-third of each of LMB's clients' recoveries as a contingent fee, Schwimmer, an attorney, violated his ethical obligations by failing to report such misconduct to the Bar Disciplinary Committee;

g.  Whether, after PSI discovered LMB had wrongfully taken one-third of each of LMB's clients' recoveries as a contingent fee, Defendants continued to conspire to protect the secrecy of the terms of the Agreements.

82.  The questions common to members of the Subclass under FRCP 23(a)(2) and the typicality of those claims under FRCP 23(a)(3) demonstrate the salience of the class-wide claims of the Subclass, which predominate over the individual damages claims of Dowe and each SubClass Plaintiff, thus fulfilling the predominance requirements of FRCP 23(b)(3).  While the dollar amount of each member's damages may vary, the cause of the injury and conspiratorial scheme is identical across the Subclass.

83.  Dowe's claims as a representative plaintiff of the Subclass include claims in equity for an accounting of client funds converted by the LMB Defendants without legal authority and with: (1) breach of fiduciary duty against LMB, Morelli, Leeds, and Brown; (2) violation of New York Judiciary Law § 487(2) for willfully delaying their clients' suit and receiving money for disbursements not incurred against LMB, Morelli, Leeds, and Brown; (3) Legal Malpractice against LMB, Morelli, Leeds, and Brown; and (4) conversion against LMB, Morelli, Leeds, and Brown for exercising dominion and control over client funds without authority, and interfering with the right of possession of those funds by the SubClass Plaintiffs.

84.  Dowe will fairly and adequately protect the interests of the SubClass Plaintiffs, thereby fulfilling the requirements of FRCP 23(a)(4).  None of the four factors of FRCP 23(b)(3)(A)-(D) raise contrary concerns, fulfilling the superiority requirements of FRCP 23(b)(3).

## CAUSES OF ACTION

### COUNT I

**Violation of 42 U.S.C. § 1985(3)**
**Conspiring to Deprive Class Plaintiffs of Their Rights to**
**Equal Employment**
**Guaranteed by Title VII of the 1964 Civil Rights Act (42 U.S.C. § 1981(a), (b), and (c)) and**
**<u>Their Right to Seek Redress in Federal, State, and Local Courts</u>**
*(As to All Defendants)*

85.     Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

86.     PSI at all times material hereto, acted through its respective attorneys, officers, employees, and agents, including Eric Schwimmer.  LMB, at all times material hereto, acted through its named partners, attorneys, employees, and agents, including Morelli, Leeds, and Brown.

87.     PSI and LMB entered into a conspiracy - explicitly established through the Agreements - with the conscious objective of depriving Dowe and Class Plaintiffs of the full and equal benefit of all laws and proceedings protecting their rights.  Specifically, the conspiracy interfered with their rights to make and enforce employment contracts free of racial bias and to sue, be parties to, give evidence in, have a jury determine their claims, and enjoy the full and equal benefit of all laws and proceedings in a court of law as is enjoyed by all citizens.

88.     The conspiracy of the Defendants affected and denied the privilege of Dowe and Class Plaintiffs to enjoy the civil rights guaranteed them by the laws of the United States and New York State.

89.     The conspiracy was motivated by a racially discriminatory animus.  PSI and LMB specifically targeted African-American PSI employees for LMB to recruit as clients without their knowing consent, and to bind said employees without their knowledge to an unfair method to

process their claims, which were based upon racially discriminatory conduct by both LMB and PSI.  Moreover, LMB intentionally created an unconsentable conflict by its arrangements with PSI.  In addition, a central goal of the conspiracy was to deprive Dowe and Class Plaintiffs of their right to pursue causes of action available to them to rectify workplace racial hostility and race-based personnel selection and compensation practices, including causes of action available under Title VII.

90.     PSI and LMB engaged in conduct and carried out multiple acts in furtherance of the conspiracy, including *inter alia* the implementation of the Agreements, including payments by PSI to LMB totaling $7,500,000 to breach LMB's fiduciary duty to its clients.  This and other actions had the express purpose of depriving Dowe and Class Plaintiffs of their rights to pursue their claims against PSI in court.  PSI would have had no reason or basis to pay these amounts if it did not believe that LMB was reducing its costs in resolving valid claims in amounts in excess of that amount.

91.     As a consequence of this conspiracy, Dowe and Class Plaintiffs were unfairly paid undervalued amounts for injuries to their careers and dignity, were deprived of the full and equal benefit of all laws and proceedings protecting their rights, and were deprived of their right to careers at a workplace free of racial hostility and free of race-based personnel selection and compensation practices.

## COUNT II

### Violation of 42 U.S.C. § 1985(2)
### Conspiring to Deprive Class Plaintifs
### of Their Right to Pursue Potential
### Claims in Federal, State, and Local Courts
*(As to All Defendants)*

92.     Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

93.     PSI at all times material hereto, acted through its respective attorneys, officers, employees, and agents, including Eric Schwimmer.  LMB, at all times material hereto, acted through its named partners, employees and agents, including Leeds, Morelli, and Brown.

94.     PSI and LMB entered into a conspiracy explicitly established through the Agreements with the conscious objective of depriving Dowe and Class Plaintiffs of the full and equal benefit of all laws and proceedings protecting their rights.

95.     Together, PSI, LMB, and their respective attorneys, officers, and agents asserted sufficient force to deter and effectively bar Dowe and Class Plaintiffs from asserting their claims against PSI to rectify workplace racial hostility and race-based personnel selection and compensation practices, including causes of action available under Title VII, in federal, state, and local courts.

96.     PSI and LMB engaged in conduct and carried out multiple acts in furtherance of the conspiracy, including *inter alia* the implementation of the Agreements, including the payment by PSI to LMB totaling $7,500,000 to breach LMB's fiduciary duty to its clients.  This and other actions had the express purpose of depriving Dowe and Class Plaintiffs of their rights to pursue their claims in court.

97.     As a consequence of this conspiracy, Dowe and Class Plaintiffs were unfairly paid undervalued amounts for injuries to their careers and dignity, were deprived of the full and equal benefit of all laws and proceedings protecting their rights, and were deprived of their right to careers at a workplace free of racial hostility and free of race-based personnel selection and compensation practices.

## COUNT III

### Fraudulent Concealment
*(As to Leeds Brown Law P.C.; Leeds Morelli & Brown, P.C.; Leeds, Morelli & Brown, LLP; Leeds & Morelli, P.C.; Steven A. Morelli; Lenard Leeds; and Jeffrey K. Brown)*

98.     Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

99.     LMB, Morelli, Leeds, and Brown, as attorneys of Dowe and Class Plaintiffs, had a duty to disclose the execution and implementation of the Agreements with PSI to their clients. LMB, Morelli, Leeds, and Brown had a duty to disclose that they had an unconsentable conflict of interest in recommending and agreeing to limits of potential damage recoveries, undisclosed payments to themselves to bind their clients, and depriving Dowe and Class Plaintiffs, who were clients of the firm, of access to the judicial system.  LMB, Morelli, Leeds, and Brown did not inform Dowe and Class Plaintiffs that they were being paid by PSI or that they had harmed Class Plaintiffs in their ability to secure fair compensation for their discrimination by inducing them to waive valuable rights to pursue their causes of action against PSI in court.

100.     LMB and its principals intended to defraud their clients.  While the conflict was unconsentable, LMB, Morelli, Leeds, and Brown did not even attempt to obtain actual consent from their clients or explain the conflict of interest to their clients.  Their intent was to be paid twice first by PSI and later by the clients as their actions demonstrate.  PSI knew of this

arrangement and took no effective actions to change or prevent it, as it minimized liability for PSI.

101.   LMB, Morelli, Leeds, and Brown's clients relied upon LMB to settle their claims through the settlements LMB obtained from PSI, which resulted in damages to the clients.  Dowe and Class Plaintiffs reasonably relied upon LMB's representations or were unaware of its unfair and secret agreement with PSI.  Even with reasonable due diligence, Dowe and Class Plaintiffs would not have discovered LMB's fraudulent concealment at an earlier date.

102.   LMB, Morelli, Leeds, and Brown were aware that LMB's Agreements with PSI had created a conflict that LMB, Morelli, Leeds, and Brown were required to disclose to their clients, and that such waiver would require Dowe and Class Plaintiffs to seek the advice of independent counsel.

103.   LMB, Morelli, Leeds, and Brown's failure to disclose this material information and their concealment from their clients as well as the active concealment and secrecy they maintained surrounding their Agreements with PSI was material and intentional and evidences the Defendants' intent to induce Dowe and Class Plaintiffs' reliance.

104.   As a result of LMB, Morelli, Leeds, and Brown's fraudulent concealment, Dowe and Class Plaintiffs were unfairly paid undervalued amounts for injuries to their careers and dignity, were deprived of the full and equal benefit of all laws and proceedings protecting their rights, and were deprived of their right to careers at a workplace free of racial hostility and free of race-based personnel selection and compensation practices.

## COUNT IV

### Fraudulent Concealment

*(As to Prudential Financial Inc., Prudential Securities Incorporated, and Eric Schwimmer)*

105.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

106.    As counterparties to settlement agreements with Dowe and Class Plaintiffs, PSI and Eric Schwimmer had the obligation to disclose whether PSI had made any payments or reached any agreements with Dowe and Class Plaintiffs' Counsel, LMB.

107.    Neither PSI nor Eric Schwimmer informed Dowe or Class Plaintiffs of the existence of the Agreements, their execution, or their implementation.  Specifically, Dowe and Class Plaintiffs were not made aware of the fact that PSI had made payments totaling $7,500,000 and that, pursuant to the Agreements, LMB had waived Dowe and Class Plaintiffs' rights to pursue their claims against PSI in court.

108.    PSI and Schwimmer intended to defraud Dowe and Class Plaintiffs.  Despite purporting to encourage LMB to disclose the existence of the Agreements to Dowe and Class Plaintiffs, PSI had actual knowledge that LMB was not disclosing this conflict to its clients and maintained this material fact secret from Dowe and Class Plaintiffs, as well.

109.    PSI and Schwimmer knew that PSI's Agreements with LMB were material facts that may have affected their settlement agreements with Dowe and Class Plaintiffs.

110.    Dowe and Class Plaintiffs reasonably relied upon PSI's representations or were unaware of its unfair and secret agreement with LMB.  Even with reasonable due diligence, Dowe and Class Plaintiffs would not have discovered PSI's fraudulent concealment at an earlier date.

111.    As a result of PSI and Scwhimmer's fraudulent concealment, Dowe and Class Plaintiffs were unfairly paid undervalued amounts for injuries to their careers and dignity, were deprived of the full and equal benefit of all laws and proceedings protecting their rights, and were deprived of their right to careers at a workplace free of racial hostility and free of race-based personnel selection and compensation practices.

## COUNT V

### Breach of Fiduciary Duty
*(As to Leeds Brown Law P.C.; Leeds Morelli & Brown, P.C.; Leeds, Morelli & Brown, LLP; Leeds & Morelli, P.C.; Lenard Leeds; and Jeffrey K. Brown)*

112.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

113.    As Dowe and Class Plaintiffs' attorney, LMB and its principals, Morelli, Leeds, and Brown, owed Dowe and Class Plaintiffs fiduciary duties.  Included was the duty to act in Dowe and Class Plaintiffs' best interests, zealously advocate for its clients, and convey all information pertinent to its representation of Dowe and Class Plaintiffs.  In addition, LMB, Morelli, Leeds, and Brown were obliged to inform Dowe and Class Plaintiffs of all material facts in connection with any legal waivers they might make in connection with LMB's representation of Dowe and Class Plaintiffs.

114.    LMB, Morelli, Leeds, and Brown breached the fiduciary duty owed to Dowe and Class Plaintiffs when LMB secretly entered into the Agreements, which caused it to, *inter alia*, advise and cause Dowe and Class Plaintiffs to settle their claims without resorting to bringing a lawsuit.

115.    LMB, Morelli, Leeds, and Brown's intention in violating their fiduciary duty to their clients was further manifest in the fact that LMB retained one-third of the recovery delivered to the LMB Defendants by PSI on behalf of Dowe and SubClass Plaintiffs.

116.    Neither LMB, Morelli, Leeds, nor Brown had a reasonable belief that LMB was acting in the best interests of Dowe or Class Plaintiffs when it executed and implemented the Agreements with PSI.

117.    LMB, Morelli, Leeds, and Brown's breach of fiduciary duty to Dowe and Class Plaintiffs caused injuries, including Dowe and Class Plaintiffs' acceptance of an undervalued amount for injuries to their careers and dignity and deprivation of the full and equal benefits of all laws and proceedings to protect their rights.

118.    Even with reasonable due diligence, Dowe and Class Plaintiffs could not have discovered this breach of fiduciary duty at an earlier date.

## COUNT VI

### Aiding and Abetting Breach of Fiduciary Duty
*(As to Prudential Financial Inc., Prudential Securities Incorporated, and Eric Schwimmer)*

119.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

120.    As set forth above, LMB owed and breached its fiduciary duties to Dowe and Class Plaintiffs.

121.    PSI and Schwimmer were aware that Dowe and Class Plaintiffs were LMB's clients and were therefore owed a fiduciary duty.

122.    PSI and Schwimmer knowingly induced LMB to breach its fiduciary duty when it entered into the Agreements.  PSI and Schwimmer knew that, as a result of these Agreements, LMB would advise and cause Dowe and Class Plaintiffs to settle their claims without resorting

to bringing a lawsuit, regardless of whether such settlements were in the best interests of Dowe and Class Plaintiffs.  PSI had an interest in the illegal arrangement because it minimized its liability to Class Plaintiffs for its intentional discrimination.

123.    As a result of PSI and Schwimmer aiding and abetting LMB's breach of fiduciary duty, Dowe and Class Plaintiffs sustained damages when they accepted an undervalued amount for injuries to their careers and dignity and were deprived of the full and equal benefits of all laws and proceedings to protect their rights.

## COUNT VII

### Violation of New York Judiciary Law § 487(2)
### <u>Willfully Receiving Money For Disbursements Not Incurred</u>
*(As to Leeds Brown Law P.C.; Leeds Morelli & Brown, P.C.; Leeds, Morelli & Brown, LLP;*
*Leeds & Morelli, P.C.; Steven A. Morelli; Lenard Leeds; and Jeffrey K. Brown)*

124.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

125.    Pursuant to the invalid Agreements, LMB, Morelli, Leeds, and Brown agreed not to retain contingency fees from Class Plaintiffs, including Dowe.  Assuming *arguendo* the Agreements had a legal effect, Dowe and Class Plaintiffs were released and discharged from paying attorneys' fees or expenses to LMB under their earlier retainer agreements in connection with LMB's representation of Dowe and Class Plaintiffs in their claims against PSI.  That release from paying contingency fees was not disclosed to Dowe and Class Plaintiffs.

126.    Under that approach, in connection with Dowe's claims against PSI, LMB received $150,000 from PSI that it had no right to retain as it was secretly being paid by PSI.  In any event, LMB had no right to take a fee from a client with whom it had an unwaivable conflict of interest.  LMB retained and did not forward one-third of this recovery a total sum of $50,000

to Dowe and has continued to retain that $50,000 from 1998 to the present.  LMB should not have retained this amount, and therefore is in receipt of money or allowance not incurred.

127.    LMB retained and did not forward one-third of SubClass Plaintiffs' recoveries against PSI, and has continues to retain those funds to the present.  LMB should not have retained this and therefore is in receipt of money or allowance not deserved or to which it was entitled.  Defendant LMB willfully delayed its clients' suit with a view to its gain or willfully received any money or allowance on account of money which had not been laid out or for which they became answerable.

128.    Dowe learned of her injuries and damages sustained as a result of LMB's conduct on December 16, 2016.  Likewise, LMB, Morelli, Leeds, and Brown, which agreed with PSI to not retain contingency fees from Class Plaintiffs, became aware no later than the decision in *Johnson v. Nextel*, 660 F.3d 131 (2d Cir. 2011) on September 26, 2011, of the impropriety of their conduct, but continued to hold the funds thereafter and did not notify Dowe or the Class Plaintiffs or disgorge the funds that it received without legal entitlement.  LMB, Morelli, Leeds, and Brown should be barred from claiming a defense of statute of limitation based upon their continued conduct.  In *Nextel*, the Second Circuit held that arrangements such as the ones LMB had here with PSI created an "uncontestable" conflict of interest for LMB.

## COUNT VIII

### Legal Malpractice
*(As to Leeds Brown Law P.C.; Leeds Morelli & Brown, P.C.; Leeds, Morelli & Brown, LLP; Leeds & Morelli, P.C.; Steven A. Morelli; Lenard Leeds; and Jeffrey K. Brown)*

129.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

130.     As counsel to Dowe and Class Plaintiffs, LMB, Morelli, Leeds, and Brown were obligated to act with a degree of care, skill, and diligence commonly possessed and exercised by an ordinary member of the legal community.

131.     By entering into the Agreements, LMB, Morelli, Leeds, and Brown waived their clients' rights, departed from that standard, and waived their clients' rights, including the right to bring lawsuits to obtain redress from PSI for the racial discrimination suffered by Dowe and Class Plaintiffs.  These actions failed to meet the duty of care that a lawyer owes to a client and constitute legal malpractice.  As a result of LMB, Morelli, Leeds, and Brown's malpractice, Dowe and Class Plaintiffs waived their rights to pursue causes of action available to them to rectify workplace racial hostility and race-based personnel selection and compensation practices, including causes of action available under Title VII, which resulted in the diminution of value of Dowe and Class Plaintiffs' damages in remedying the injury to them, but for which there would have been a better economic outcome.

132.     Moreover, LMB retained funds intended by PSI to be paid to Dowe and SubClass Plaintiffs.  In Dowe's case, LMB withheld $50,000, resulting in damages of no less than $50,000 to Dowe alone.

133.     Due to LMB entering into the Agreements with PSI, Dowe and Class Plaintiffs were denied advice from attorneys representing their interests without an unwaivable conflict regarding the advantages and disadvantages of bringing lawsuits rather than accepting negotiated settlements.

## COUNT IX

### Conspiracy to Commit Breach of Fiduciary Duty
*(As to All Defendants)*

134.   Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

135.   As set forth in Count V and VI, above, LMB, Morelli, Leeds, and Brown committed the tort of breach of fiduciary duty, and PSI and Schwimmer committed the tort of aiding and abetting a breach of fiduciary duty.

136.   This tort was committed as a result the Agreements between the Defendants, through which PSI would minimize its liability to Dowe and Class Plaintiffs and LMB would earn significant fees.  These Agreements were concealed and hidden from Dowe and Class Plaintiffs.

137.   The Agreements were implemented by overt acts that included the implementation of the written agreements and understandings between the Defendants, such as payments totaling $7,500,000 by PSI to LMB and the retention of settlement funds that belonged to Dowe and Class Plaintiffs by LMB.

## COUNT X

### Conspiracy to Commit Fraud
*(As to All Defendants)*

138.   Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

139.   As set forth in Count III and IV, above, LMB, Morelli, Leeds, and Brown committed the tort of fraudulent concealment, and PSI and Schwimmer committed a separate tort of fraudulent concealment.

140.    This tort was committed as a result of the Agreements between the Defendants, through which PSI would minimize its liability to Dowe and Class Plaintiffs and LMB would earn significant fees.  These Agreements were concealed and hidden from Dowe and Class Plaintiffs.

141.    The Agreements were implemented by overt acts that included the implementation of the written agreements and understandings between the Defendants, payments totaling $7,500,000 by PSI to LMB, and the retention of settlement funds that belonged to Dowe and Class Plaintiffs by LMB.

### COUNT XI

### Conversion by Taking Client Funds
### Without Authority
*(As to Leeds, Morelli & Brown, P.C.; Leeds, Morelli & Brown, LLP; Leeds & Morelli; Steven A. Morelli; Lenard Leeds; and Jeffrey K. Brown)*

142.    Dowe and Class Plaintiffs incorporate by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

143.    Dowe and Class Plaintiffs assert the agreements to be invalid.  To the extent that they had legal effect, Dowe and SubClass Plaintiffs have still been wronged.

144.    Pursuant to the Agreements, LMB agreed not to retain contingency fees from the Class Plaintiffs, including Dowe.  As a result, Dowe and Class Plaintiffs were released and discharged from paying attorneys' fees or expenses to LBM in connection with LBM's representation of Dowe and Class Plaintiffs in their claims against PSI.

145.    The Agreements between PSI and LMB superseded the contingency fee arrangement between LMB and Dowe, as well as the contingency fees between LMB and Class Plaintiffs.

146.   In connection with Dowe's claims against PSI, LMB received $150,000 from PSI that, by virtue of the Agreements, was intended to be provided to Dowe as a settlement of her claims against PSI.

147.   LMB retained and did not forward one-third of this recovery a total sum of $50,000 to Dowe.

148.   LMB also retained and did not forward one-third of SubClass Plaintiffs' recoveries against PSI.   That money was intended to be provided to SubClass Plaintiffs as settlement of their claims against PSI.

149.   Dowe and SubClass Plaintiffs have a right to the one-third that was retained by LMB in contravention of its Agreements with PSI.

150.   LMB continues to retain the $50,000 owed to Dowe and the other one-third owed to SubClass Plaintiffs presently, in derogation of Dowe and SubClass Plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Dowe and Class Plaintiffs requests the Court enter judgment in their favor and against Defendants as follows:

A.   Declaring this Conspiracy Class and Subclass to be classes under FRCP 23;

B.   Awarding compensatory and punitive damages against each Defendant, jointly and severally, in favor of Dowe and Class Plaintiffs for all losses and damages suffered as a result of Defendants' violations, and disgorging from LMB all monies paid to LMB by PSI and all funds LMB withheld from Dowe and the Class Plaintiffs, together with pre- and post-judgment interest;

C.   Awarding Dowe and Class Plaintiffs the costs of this action, including attorneys' and experts' fees and costs;

D.  Awarding Dowe and Class Plaintiffs treble damages in connection with the violations of Judiciary Law § 487;

E.  Granting equitable and/or injunctive relief, including enjoining future wrongdoing, rescission, disgorgement of Defendants' ill-gotten gains, and attaching, impounding, or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' ill-gotten gains, an accounting of the fees paid to LMB by PSI, any other relief available under 18 U.S.C. § 1964(a); and

F.  Granting such other relief the case may require that Court deems just and proper.

Dated April 5, 2019

Respectfully Submitted,

Andrew Lavoott Bluestone
233 Broadway, Suite 2702
New York, NY 10279
alb@bluestonelawfirm.com
212-791-5600
Attorney for Plaintiffs

John W. Moscow
405 Lexington Avenue
62nd Floor
New York, NY 10174
John.Moscow@lbkmlaw.com
212-826-7001
Attorney for Plaintiffs