UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAUREEN DOWE, Individually and on
Behalf of All Others Similarly Situated,

                              Plaintiffs,

                v.

LEEDS BROWN LAW, P.C., LEEDS
MORELLI & BROWN, P.C., LEEDS
MORELLI & BROWN, LLP,  LEEDS &
MORELLI, P.C., LENARD LEEDS, STEVEN
A. MORELLI, JEFFREY K. BROWN,
PRUDENTIAL FINANCIAL INC., parent and
successor in interest to PRUDENTIAL
SECURITIES, INC., ERIC SCHWIMMER,
and JOHN DOES 1-25, fictitious persons and
entities,

                              Defendants.

Civil No. 18-cv-11633

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PRUDENTIAL FINANCIAL INC. AND ERIC SCHWIMMER'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

I.  Underlying Action and Settlement Agreement ................................................................... 3

II. The Same Issues—and the Same Arbitration Provision—Were Presented To This
    Court In the *Vaughn* Litigation .......................................................................................... 5

III. Claims Against PSI Involving the Leeds Defendants Were Subject To Widespread
     Publicity Over a Decade Ago ............................................................................................. 7

ARGUMENT ............................................................................................................................ 8

I.  Dowe's Settlement Agreement Mandates Individual Arbitration For All Claims
    Alleged In the Complaint .................................................................................................... 8

II. Dowe's Claims Are Barred By the Statute Of Limitations ................................................. 12

    A.  Dowe's Claims Could Have Been Discovered In 2004 At the Latest ................. 13

    B.  Dowe Cannot Claim the Benefit Of Equitable Tolling ....................................... 15

        1.  Dowe cannot plead "wrongful concealment" .......................................... 16

        2.  Dowe does not plead "due diligence" ..................................................... 17

III. Dowe's Claims Fail As a Matter Of Law ......................................................................... 17

    A.  The Complaint Fails To Adequately Allege Conspiracy Claims Under
        Section 1985(2) and (3) (Count I and Count II) ................................................. 18

        1.  Dowe's Section 1985 claims are not cognizable because there are
            no allegations of state action .................................................................... 18

        2.  Dowe fails to plead Section 1985 claims with the requisite
            particularity ............................................................................................... 19

    B.  Dowe's Remaining Claims Against the Prudential Defendants Fail
        Because the Prudential Defendants Owed No Duty to Dowe .............................. 21

        1.  Dowe's Claims Against The Prudential Defendants For Fraudulent
            Concealment and Conspiracy to Commit Fraud Fail (Count IV,
            Count X) ..................................................................................................... 21

      2.     Dowe's Claims Against The Prudential Defendants For Aiding &
              Abetting Breach of Fiduciary Duty, and Conspiracy to Commit
              Breach of Fiduciary Duty Fail (Count VI, Count IX) ............................... 23

CONCLUSION ............................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009)............................................................................................................12

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007)..........................................................................................15, 17

*Abercrombie v. Andrew Coll.*,
438 F. Supp. 2d 243 (S.D.N.Y. 2006)................................................................................15

*Adams v. Deutsche Bank AG & Deutsche Bank Sec., Inc.*,
No. 11 Civ. 1893 (RJS), 2012 WL 12884365 (S.D.N.Y. Sept. 24, 2012)..............................13

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005)........................................................................................22, 23

*Ajaj v. Fritz*,
No. 07 Civ. 5959 (DF), 2011 WL 5116516 (S.D.N.Y. Oct. 27, 2011)...................................20

*Albion All. Mezzanine Fund, L.P. v. State St.t Bank & Tr. Co.*,
797 N.Y.S.2d 699, 704 (Sup. Ct.2003), *aff'd*, 2 A.D.3d 162 (1st Dep't 2003) .....................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................17

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
No. 99 Civ 9623 (RWS), 2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007).................................22

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)................................................................................................16, 17

*China Auto Care, LLC v. China Auto Care (Caymans)*,
859 F. Supp. 2d 582 (S.D.N.Y. 2012)...............................................................................9, 10

*China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*,
182 F. Supp. 3d 42 (S.D.N.Y. 2016)....................................................................................8

*City of Syracuse v. Loomis Armored US, LLC*,
900 F. Supp. 2d 274 (N.D.N.Y. 2012).................................................................................17

*Connie Hernandez and L'Oreal Diaz v. Gentile et. al*,
04-cv-04885 (D.N.J. Sept. 28, 2006)..........................................................................7, 14, 15

*Consol. Edison Co. of N.Y. Inc. v. United States*,
221 F.3d 364 (2d Cir. 2000).................................................................................................9

*Corcoran v. N.Y. Power Auth.*,
   202 F.3d 530 (2d. Cir. 1999).............................................................................................14, 16

*Danann Realty Corp. v. Harris*, 157 N.E.2d 597 (N.Y. 1959).......................................................22

*De Sole v. Knoedler Gallery, LLC*,
   974 F. Supp. 2d 274 (S.D.N.Y. 2013)......................................................................................22

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
   747 F. Supp. 922 (S.D.N.Y. 1990) .........................................................................................17

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
   755 F.2d 239 (2d Cir. 1985)...................................................................................................22

*Ferguson v. Lion Holdings, Inc.*,
   312 F. Supp. 2d 484 (S.D.N.Y. 2004).....................................................................................21

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003)....................................................................................................9, 10, 11

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
   748 F.2d 729 (2d Cir. 1984)...................................................................................................22

*Hackett v. Milbank, Tweed, Hadley & McCloy*,
   86 N.Y.2d 146 (N.Y. 1995) ....................................................................................................12

*Henry Schein, Inc. v. Archer & White Sales Inc.*,
   139 S. Ct. 524 (2019)..............................................................................................................11

*Hernandez–Avila v. Averill*,
   725 F.2d 25 (2d Cir. 1984)......................................................................................................12

*JLM Indus. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)......................................................................................................8

*Johnson v. Nextel Communs., Inc.*,
   --- Fed. App'x ---, 2019 WL 990800 (2d Cir. Feb. 28, 2019) ...........................................18, 19

*Jones v. Bock*,
   549 U.S. 199 (2007)................................................................................................................12

*Katz v. Cellco P'Ship*,
   794 F.3d 341 (2d Cir. 2015).....................................................................................................12

*Khan v. City of New York*,
   No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298 (E.D.N.Y. Feb. 1, 2016) .......................18

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012).....................................................................................................15

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998)................................................................................................13

*Lamps Plus, Inc. v. Varela*,
    --- S. Ct. ---, 2019 WL 1780275 (Apr. 24, 2019) ...................................................................11

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)................................................................................................22

*Marin v. N.Y. State Dep't of Labor*,
    512 F. Supp. 353 (S.D.N.Y. 1981) ......................................................................................12

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 430 (S.D.N.Y. 2015)..................................................................................13

*Martin v. Creative Mgmt. Group*,
    No. 10-CV-2214 (DLC), 2010 WL 2629580 (S.D.N.Y. June 29, 2010)...................................9

*Mass v. McClenahan*,
    893 F.Supp. 225 (S.D.N.Y. 1995) .......................................................................................18

*McCabe v. Lifetime Entm't Servs., LLC*,
    No. 18-1149, 761 Fed. Appx. 38 (2d Cir. 2019)....................................................................12

*Merck & Co., Inc. v. Reynolds*,
    559 U.S. 633 (2010)...........................................................................................................13

*Mira v. Kingston*,
    715 Fed. App'x 28 (2d Cir. 2017)........................................................................................19

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir. 1977)................................................................................................18

*Peavey v. Polytechnic Inst. of N.Y.*,
    775 F. Supp. 75 (E.D.N.Y. 1991), *aff'd*, 969 F.2d 1042 (2d Cir. 1992)..................................18

*Peterson v. City of N.Y.*,
    No. 10 Civ. 7283, 2018 WL 5811432 (S.D.N.Y. Nov. 11, 2018) ...........................................19

*Pomerance v. McGrath*,
    124 A.D.3d 481 (N.Y. App. Div. 2015) ...............................................................................23

*Purcell v. Navient Sols., LLC*,
    No. 18-CV-6045 (CS), 2019 WL 188693 (S.D.N.Y. Jan. 14, 2019)........................................8

*Ross v. O'Donnell*,
    No. 13-CV-01250 (LEK/DEP), 2014 WL 3735667 (N.D.N.Y. July 29, 2014) .....................18

*Sarmiento v. United States*,
    678 F.3d 147 (2d Cir. 2012)................................................................................................17

*Tanz v. Kasakove*,
   No. 08 Civ. 1462 (LAK), 2008 WL 2735973 (S.D.N.Y. July 7, 2008)...................................17

*Testa v. Becker*,
   910 F.3d. 677 (2d. Cir. 2018)...................................................................................................17

*Vaughn v. Leeds, Morelli & Brown, P.C.*,
   04-cv-8391 (DLC), 2005 WL 1949468 (S.D.N.Y. Aug. 12, 2005).................................. *passim*

*Vaughn v. Leeds, Morelli & Brown, P.C.*,
   04-cv-8391 (DLC), 2007 WL 4157275 (S.D.N.Y. Nov. 19, 2007)........................................1, 6

*Vaughn v. Leeds, Morelli & Brown, P.C.*,
   315 F. App'x 327 (2d Cir. 2009) .............................................................................1, 6, 10, 11

*Webb v. Goord*,
   340 F.3d 105 (2d. Cir. 2003)....................................................................................................20

*Williams v. Aries Financial, LLC*,
   09-cv-1816, 2009 WL 3851675 (E.D.N.Y. 2009) ....................................................................16

*Williams v. Long Beach Mortg. Co.*,
   No. 15-CV-5952 (KMK), 2016 WL 5720810 (S.D.N.Y. Sept. 30, 2016),
   *aff'd*, 709 F. App'x 92 (2d Cir. 2018).......................................................................................19

*Zerilli–Edelglass v. N.Y.C. Trans. Auth.*,
   333 F.3d 74 (2d Cir. 2003).......................................................................................................16

## Statutes and Rules

9 U.S.C.
   § 4......................................................................................................................................8

42 U.S.C.
   § 1985(2)...........................................................................................................17, 18, 19, 20
   § 1985(3)...............................................................................................................17, 18, 19

N.Y. C.P.L.R.
   § 213(8)..............................................................................................................................13

N.Y. Code of Professional Responsibility
   DR 7-104(a)(1).....................................................................................................................22

Defendants Prudential Financial Inc., allegedly successor in interest to Prudential Securities Inc. ("PSI" or "Prudential"), and Eric Schwimmer ("Schwimmer" together with PSI, the "Prudential Defendants") submit this memorandum of law in support of their motion to compel arbitration under the Federal Arbitration Act and their motion to dismiss the Amended Class Action Complaint ("Complaint") filed by Plaintiff Maureen Dowe ("Plaintiff" or "Dowe").

## PRELIMINARY STATEMENT

The original complaint filed in this action contained more than 90 references to the *Vaughn* litigation, a case brought in 2004 in this Court, that involved identical issues to the ones presented by Dowe here.[1]  Like Dowe, the plaintiff in the *Vaughn* litigation attempted to bring a class action in which he sought to represent "hundreds of [] Prudential employees with discrimination claims against the company" who were purportedly "adversely affected by collusion between the Leeds Defendants and the Prudential Defendants based on . . . secret agreements." *Vaughn v. Leeds, Morelli & Brown, P.C.*, 04-cv-8391 (DLC), 2005 WL 1949468, at *2 (S.D.N.Y. Aug. 12, 2005) (the "Vaughn 2005 Arbitration Opinion").  And, like Dowe, plaintiff Vaughn had agreed to a broad arbitration provision in settling his discrimination claims—indeed, the arbitration provisions are identical pursuant to which this Court compelled arbitration.  This Court subsequently confirmed the arbitration award, which determined that a class action based on the same allegations could not be brought in federal court, and both decisions were affirmed by the Second Circuit in 2009.[2]

---

[1] A court may take judicial notice of the pleadings in its own files because the existence and content of judicial records is covered by Fed. R. Evid. 201.

[2] *Vaughn v. Leeds, Morelli & Brown, P.C.*, 04-cv-8391 (DLC), 2007 WL 4157275 (S.D.N.Y. Nov. 19, 2007) (the "Vaughn 2007 Confirmation Opinion").  The Second Circuit affirmed the Vaughn 2005 Arbitration Opinion (on *de novo* review) and the Vaughn 2007 Confirmation Opinion (on *de novo* legal review and clear error review of the factual challenges).  *Vaughn v.*

Now, ten years after the *Vaughn* litigation was finally and completely resolved, Dowe purports to relitigate "the same issues [that] were presented to the Court in *Vaughn*," (Original Compl. ¶ 12), but attempts to conceal the meritless nature and the untimeliness of her claims by removing all references to *Vaughn* from the Amended Class Action Complaint.  Dowe cannot pretend that *Vaughn* did not happen and that it does not preclude her claims merely because she deleted words from her original Complaint.  This Court held in *Vaughn* that the same allegations must be arbitrated pursuant to a broad arbitration clause and general release in a settlement agreement between plaintiff Vaughn and PSI that is *identical* to the arbitration clause and release in the Dowe Settlement Agreement.  The outcome must be the same here.  Dowe pleads nothing that would, or could, lead to a different result than *Vaughn* and thus the Court should compel arbitration of Dowe's claims.

Even if Dowe's claims *could* be heard in federal court, they are untimely on their face and no excuse justifies Dowe's delay in filing this action.  Dowe's purported discovery of her claims in 2016 is legally irrelevant, as the claims could have been discovered, and in fact were discovered, when they were litigated before this Court in the *Vaughn* litigation.

No more should be necessary to dismiss this action; however, even if the court were to consider the merits of Dowe's civil rights, conspiracy, and fraud claims, the pleadings fall far short of rationality and fail as a matter of law.  Section 1985 of the Civil Rights Act bars state action, and neither PSI nor Schwimmer is a state actor.  Dowe's remaining claims against the Prudential Defendants fail because no duty was owed to Dowe, an opposing party who had

---

*Leeds, Morelli & Brown, P.C.*, 315 F. App'x 327, 329 (2d Cir. 2009) (the "Vaughn 2009 Second Circuit Opinion").

retained her own lawyers.  Dowe cannot set forth any arguments that save her claims and therefore this Court should compel arbitration and dismiss the complaint with prejudice.

## BACKGROUND

This case—like the Vaughn action before it—arises out of the settlement of hundreds of alleged discrimination claims against defendant PSI that took place twenty years ago as part of an alternative dispute resolution process created in 1998 (the "ADR process").  Although the Prudential Defendants vigorously dispute the allegations of the Complaint, for purposes of this motion to dismiss, the Prudential Defendants must assume the truth of well-pleaded facts.

## I.   Underlying Action and Settlement Agreement

Between 1998 and 2001, PSI and the purported class members participated in the ADR process, which resulted in the settlement of hundreds of claims.  As demonstrated by Dowe's own retainer agreement, hundreds of then-current and former PSI employees had retained the Leeds Defendants [3] expressly to "seek a negotiated settlement" of their claims of alleged workplace discrimination.  PSI and the Leeds Defendants negotiated an agreement executed on February 13, 1998 pursuant to which PSI agreed to pay the attorneys' fees of the Leeds Defendants' clients in exchange for their agreement to participate in a multi-stage ADR process (the "Dispute Resolution Agreement" or "DRA").[4]  *See* Compl. ¶ 39.

Dowe, under penalty of perjury, signed the "Execution and Acknowledgement" for the DRA on March 8, 1998, in which she swore: "I, Maureen Dowe, have read the foregoing Agreement and I accept and agree to the provisions it contains and hereby execute it voluntarily

---

[3] Leeds & Morelli, P.C. and its alleged successors in interest, including Leeds Brown Law, P.C., Leeds Morelli & Brown, P.C., Leeds Morelli & Brown, LLP, are collectively referred to as "LMB", and together with its principals Lenard Leeds, Steven A. Morelli, and Jeffrey K. Brown, as the "Leeds Defendants" (together with the Prudential Defendants, "Defendants").

[4] The DRA was subsequently amended on June 12, 1998.

with full understanding of its consequences. I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct." *See* Declaration of Vincent A. Sama ("Sama Decl."), Ex. A.

After participating in the ADR process, Dowe entered into the Dowe Settlement Agreement with PSI on February 16, 1999 and accepted $150,000 to settle her discrimination claims. *See* Compl. ¶ 30. The Dowe Settlement Agreement was signed on behalf of PSI by Schwimmer. *Id.* ¶ 39. It includes a release of "PSI, its parent, divisions, subsidiaries and affiliates and their current and former directors, officers, shareholders, agents and employees, and each of their predecessors, successors, and assigns . . . from any and all claims and causes of action . . . arising out of or related to Dowe's employment . . ." *See* Sama Decl., Ex. B, ¶ 2. The Dowe Settlement Agreement also includes a broad arbitration clause, which provides:

> Any claim or controversy arising out of or related to this Agreement or the interpretation thereof will be settled by arbitration under the then prevailing constitution and rules of the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof. The governing law of this Agreement shall be the substantive and procedural law of the State of New York.

*Id.*, Ex. B, ¶ 11.

Dowe now brings claims based on allegations arising out of and related to her Settlement Agreement. Dowe's claims fall into two categories: (1) allegations that the Leeds Defendants received advanced attorneys' fees from PSI unbeknownst to Dowe and, contrary to the agreement between the Leeds Defendants and PSI, improperly retained a portion of Dowe's settlement award; and (2) allegations that Defendants fraudulently concealed this conduct. Specifically, Dowe alleges violations of 42 U.S.C. § 1985 based on Defendants' purported conspiracy to deprive her and the other purported class members of their civil rights during the

ADR process. Dowe also alleges claims for breach of fiduciary duty against the Leeds Defendants and for aiding and abetting breach of fiduciary duty against the Prudential Defendants. Finally, Dowe alleges fraudulent concealment and conspiracy to commit fraud.

## II.   The Same Issues—and the Same Arbitration Provision—Were Presented To This Court In the *Vaughn* Litigation

Plaintiff has acknowledged that her claims are "the same issues [ ] presented to the Court in [*Vaughn*]" in 2005. Original Compl. ¶ 12. There, Jeffrey S. Vaughn, also a former employee of PSI, retained the Leeds Defendants to represent him in claims against PSI. Original Compl. ¶ 67. Vaughn "[e]xecuted a Settlement Agreement and General Release dated October 27, 1998," in which he agreed to settle his claims for $200,000 and to arbitrate any disputes arising out of or related to the agreement. Original Compl. ¶ 69. The settlement agreement signed by Vaughn is virtually identical to the one signed by Dowe and includes the exact same arbitration clause at paragraph 11.

Vaughn affirmatively pled that he learned the facts underlying his complaint "[i]n or about October 2004, [when] Vaughn learned that PSI and LMB conspired and entered into secret agreements to dispose of Vaughn's racial employment discrimination claims against PSI for a reduced value in a sham alternative dispute resolution process." Original Compl. at ¶ 71. Vaughn subsequently filed a putative class action on October 25, 2004, and an Amended Complaint on March 15, 2005 against, among others, the Leeds Defendants and PSI (the "Vaughn Compl."). *See* Original Compl. at ¶ 72. Vaughn alleged that "PSI and LMB conspired through secret agreements to defraud Vaughn and other PSI employees from asserting their rights against PSI and that LMB committed theft by wrongfully withholding fees from Vaughn's settlement proceeds." *Id.* Vaughn alleged that during the pendency of the Vaughn litigation that the "Defendants continue[d] to conceal" their conspiracy. Vaughn Compl. at ¶ 71.

PSI moved to compel arbitration and to dismiss certain of the claims as time-barred. PSI argued that Vaughn had no claims actionable in court because the settlement agreement and general release contained a clear arbitration provision. Specifically, that "[a]ny claim or controversy arising out of or related to this [Settlement] Agreement or the interpretation thereof will be settled by arbitration." *See Vaughn* Mot. to Compel Arbitration and Mot. to Dismiss, Dkt. No. 18 (4-cv-08391). This Court compelled arbitration at that time, holding that the arbitration clause in the Settlement Agreement was broad in scope and that the issue of whether the parties had agreed to class arbitration was a question that "'concerns contract interpretation and arbitration procedures,' and is therefore 'for the arbitrator, not the courts to decide.'" Vaughn 2005 Arbitration Opinion, 2005 WL 1949468, at *3 (citation omitted).

Vaughn chose not to arbitrate on the merits, and instead submitted to arbitration the issue of whether, notwithstanding this Court's order compelling him to arbitration, he could maintain a class action in federal court. The NASD arbitrators confirmed that he could not litigate his class action claims in court: "the Settlement Agreement . . . precludes Claimant from bringing a Class Action in court." *Vaughn v. Leeds*, Award in NASD Dispute Resolution, Case No. 06-00534 (Kaurlantzick, Lubow & Lindergh, Arbs.), *available at Vaughn*, 04-cv-08391, Dkt. No. 67-2.

This Court denied Vaughn's motion to vacate the arbitration award, and confirmed Prudential's motion to confirm the award. "[I]n addition to Vaughn's testimony, the arbitrators considered the settlement agreement and considerable submissions from both parties. Accordingly, 'a ground for the arbitrator's decision can be inferred from the facts of the case,' and the arbitrators' decision must be confirmed." Vaughn 2007 Confirmation Opinion, 2007 WL 4157275, at *4 (citation omitted). The Second Circuit affirmed both the order compelling

arbitration, and the order confirming the arbitration award. Vaughn 2009 Second Circuit Opinion, 315 Fed. App'x. at 330.

## III. Claims Against PSI Involving the Leeds Defendants Were Subject To Widespread Publicity Over a Decade Ago

Vaughn was not the only PSI employee to bring a lawsuit alleging secret agreements between PSI and the Leeds Defendants in 2004. Two other PSI employees also brought a federal lawsuit in October 2004 against the LMB defendants, among others, "alleging that the [Leeds Defendants] improperly received excessive and improper compensation" from PSI, when the LMB defendants negotiated a "direct, secret payment." *Connie Hernandez and L'Oreal Diaz v. Gentile et. al*, 04-cv-04885 (D.N.J. Sept. 28, 2006) (Dkt. No. 27) (granting motion to dismiss on jurisdictional grounds). Plaintiffs there affirmatively pled that they first learned about their action from "a newspaper article in the New York Times containing a description . . . of attorney misconduct by the attorneys at Leeds Morelli." *Id.* at 2. That article, published in 2000, appeared in the national edition of the New York Times and was, and is, freely available online.[5]

The New York Times article is just one example of numerous and widespread publicity regarding the Leeds Defendants and Prudential-related entities about this matter. Indeed, Angela Roper ("Roper"), who submitted an affidavit in support of Dowe's Original Complaint here, and was "co-counsel" in the *Vaughn* litigation, was quoted in several articles.[6] For instance, shortly after the filing of *Vaughn*, Roper was quoted in a December 2004 Newsweek article, in which it was reported that a "suit also claims that Leeds, Morelli had a deal in which Prudential paid millions in fees that weren't disclosed, lowering their award[s], and that Roper says "Leeds,

---

[5] John W. Fountain, *Co-Op City Accuses a Law Firm of Extortion*, NY Times (July 8, 2000), *available at* https://www.nytimes.com/2000/07/08/nyregion/co-op-city-accuses-a-law-firm-of-extortion.html, attached hereto as Sama Decl., Ex. C.

[6] *See Vaughn*, 04-cv-08391, Dkt. No. 30 ("Affirmation of Angela Roper").

Morelli puts its own interests above its clients', and 'undermines the spirit of anti-discrimination laws.'"[7]

## ARGUMENT

### I.     Dowe's Settlement Agreement Mandates Individual Arbitration For All Claims Alleged In the Complaint

The Dowe Settlement Agreement, like the settlement agreement at issue in *Vaughn*, prohibits her from bringing this purported class action in federal court.  The Federal Arbitration Act (the "FAA") requires that upon a determination that the "making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  It is well-established that "federal public policy strongly favors arbitration as an alternative means of dispute resolution."  *China Media Express Holdings, Inc. by Barth v. Nexus Exec. Risks, Ltd.*, 182 F. Supp. 3d 42, 48 (S.D.N.Y. 2016) (internal quotations omitted). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *JLM Indus. v. Stolt-Nielsen SA* , 387 F.3d 163, 171 (2d Cir. 2004) (internal quotations omitted).

To determine whether an action is arbitrable under the FAA, courts must resolve four inquiries: "(1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration."  *Purcell v. Navient Sols., LLC*, No. 18-CV-6045 (CS), 2019 WL 188693, at *5 (S.D.N.Y. Jan. 14, 2019) (internal quotations omitted).

---

[7] *Suing the Street*, Newsweek (Dec. 5, 2004), *available at* https://www.newsweek.com/suing-street-123331, attached hereto as Sama Decl., Ex. D.

As this Court found in *Vaughn*, the answers to all four of these questions require that arbitration be compelled.

*First*, there can be no dispute that the parties agreed to arbitrate. Dowe executed a Settlement Agreement that expressly provides that "[a]ny claim or controversy arising out of or related to" the agreement must be arbitrated.[8] Sama Decl., Ex B, ¶ 11.

*Second*, the broad scope of the arbitration provision at issue was noted in this Court's decision in *Vaughn*, and there is no reason the analysis should differ here. In *Vaughn*, this Court found that an arbitration clause identical to the one contained in Dowe's Settlement Agreement was broad because it "contains sweeping language concerning the scope of the questions committed to arbitration, as it commits to arbitration '[a]ny claim or controversy arising out of or *related to this Agreement or the interpretation thereof*.'" Vaughn 2005 Arbitration Opinion, 2005 WL 1949468, at *1 (emphasis in decision). (internal quotations and citations omitted) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003)). Given the breadth of this arbitration clause, the Court held Vaughn's claims challenging PSI's payment of attorneys' fees and the Leeds Defendants' retention of a portion of its clients' settlement amounts in the ADR process that led to Vaughn's settlement agreement had alleged precisely the type of "substantially interdependent and concerted misconduct" that estops him from avoiding arbitration of his claims. *Id.* at *5 (internal quotations omitted).

Where an arbitration clause is broad, as this Court has found the one here to be, the presumption of arbitrability attaches and the opposing party bears the burden of proving that the

---

[8] It is well settled that affixing a signature to a contract bounds the signatory by the contract's terms and creates a presumption that the signer read, understood and assented to its terms. *See Consol. Edison Co. of N.Y. Inc. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000); *Martin v. Creative Mgmt. Group*, No. 10-CV-2214 (DLC), 2010 WL 2629580, at *2 (S.D.N.Y. June 29, 2010).

"arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." *China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F. Supp. 2d 582, 587 (S.D.N.Y. 2012) (internal quotations omitted).  As this Court previously held, "[i]n the absence of 'clear and unmistakable evidence to the contrary' in an arbitration clause, only in limited circumstances will a court 'assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter.'"   Vaughn 2005 Arbitration Opinion, 2005 WL 1949468, at *3 (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)); *see also* Vaughn 2009 Second Circuit Opinion, 315 F. App'x at 329 ("[T]he question whether an arbitration contract forbids class arbitration concerns 'contract interpretation and arbitration procedures,' which fall under the domain of arbitrators who 'are well situated to answer' questions relating to those issues." (quoting *Green Tree Fin. Corp.*, 539 U.S. at 453)).  According to the FAA and the strong presumption in favor of arbitration, the court must examine the factual allegations in the complaint and if they "touch matters" covered by the parties' agreement, then those claims must be arbitrated even if they are matters beyond the interpretation or enforcement of particular agreement provisions.  *China Auto Care, LLC*, 859 F. Supp. at 587 (S.D.N.Y. 2012) (internal quotations omitted).

The intent of the parties to arbitrate their disputes is clear and unambiguous—the Prudential Defendants and Dowe intended for "[a]ny claim or controversy arising out of or related to [the Settlement] Agreement" to be submitted to arbitration.  Sama Decl., Ex B, ¶ 11. Thus, the strong presumption in favor of arbitration applies.  Moreover, a review of the Complaint makes clear that Dowe's claims arise out of and relate to the parties' Settlement Agreement and, therefore, must be subject to arbitration.  Dowe's allegations that her civil rights were violated when she settled her discrimination claims for an "undervalued amount" pursuant

to the ADR process, instead of through a court proceeding, are dependent on the fact that she received a settlement. Compl. ¶¶ 91 & 97. Likewise, Dowe's allegations that PSI's aiding and abetting of the Leeds Defendants' breach of fiduciary duty and fraudulent concealment "affected" her employment discrimination claims and resulted in her receipt of an "undervalued amount" also relate to her Settlement Agreement. Compl. ¶¶ 111 & 123. The intertwined claims in the Complaint all arise out of or relate to Dowe's settlement of her employment claims in the ADR process and all are subject to arbitration just as this Court concluded in the *Vaughn* case.

To the extent Dowe argues that her putative class action claims fall outside the arbitration provision in her Settlement Agreement, that position is contrary to law. The United States Supreme Court recently reaffirmed the rule that under the FAA, when a dispute arises regarding threshold arbitrability, that issue is determined by the language of the arbitration clause, which here, is exceedingly broad. *Henry Schein, Inc*. *v. Archer & White Sales Inc.*, 139 S. Ct. 524, 527 (2019) (the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes"). As this Court has ruled and the Second Circuit has affirmed in *Vaughn*, the question of whether the arbitration provision forbids class actions "concerns 'contract interpretation and arbitration procedures,' which fall under the domain of arbitrators who 'are well situated to answer' questions relating to those issues." Vaughn 2009 Second Circuit Opinion, 315 Fed. App'x at 329 (quoting *Green Tree Fin. Corp.*, 539 U.S. at 453). Indeed, the importance of enforcing the parties' agreement to arbitrate was further affirmed by the Supreme Court in the recent *Lamps Plus, Inc. v. Varela*, ---S. Ct. ---, 2019 WL 1780275 (Apr. 24, 2019) decision, in which the Court held that class (as opposed to individual) arbitration cannot be compelled in the absence of an arbitration provision

which clearly and expressly indicates the parties' consent to class arbitration. *Id.* at *8 ("Courts may not infer . . . that parties have consented to arbitrate on a classwide basis").

*Third*, Congress has not indicated any intent that the counts in the Complaint cannot be arbitrated. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 269 (2009) ("At bottom, objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory antidiscrimination claims."). Furthermore, the fact that a party claims to raise issues of public import, including the professional ethics of lawyers, does not provide an escape from an agreement to arbitrate. *See Hackett v. Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146 (N.Y. 1995).

*Finally*, the fourth question is not relevant here because all claims must be arbitrated thereby obviating the need to determine whether a stay of proceedings is appropriate during the pendency of an arbitration. *See Katz v. Cellco P'Ship*, 794 F.3d 341, 345–47 (2d Cir. 2015).

## II.  Dowe's Claims Are Barred By the Statute Of Limitations

Even if this Court was to determine that it should consider Dowe's claims described in the Complaint, Dowe's claims are time-barred as the longest conceivable statute of limitations under applicable law is six years. Dowe's claims accrued in 1999 when she executed the Dowe Settlement Agreement, or at the very latest, by 2004, when the *Vaughn* action was brought. Since this action was not brought by 2010, six years after that action was filed, it is barred. This should be the beginning and the end of the inquiry as the claims are untimely on their face. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (dismissing complaint that was untimely on its face).[9]

---

[9] The Second Circuit has repeatedly affirmed the granting of Rule 11 sanctions for the bringing of time-barred complaints. *See, e.g.*, *McCabe v. Lifetime Entm't Servs.*, *LLC*, No. 18-1149, 761 Fed. Appx. 38, 42 (2d Cir. 2019).

### A.     Dowe's Claims Could Have Been Discovered In 2004 At The Latest

No exception applies to extend the time period in which Dowe had to file her Complaint. Dowe executed, under penalty of perjury, an acknowledgement in March, 1998, affirming that she read the "secret" DRA *twenty years ago*.  Original Compl. ¶¶ 40-41.  Yet Dowe alleges she first learned of "new information" relating to the DRA on December 15, 2016, when she did nothing more than contact attorneys who had litigated a "related matter" in New Jersey State Court.  Compl ¶ 32-34; Original Compl. ¶ 62.

Even if a discovery rule applied to all of Dowe's claims, her purported December 2016 discovery date is legally irrelevant, as "for more than a century, courts have understood that [a claim subject to a discovery rule] is deemed to be discovered [] when, in the exercise of reasonable diligence, it could have been discovered."  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010) (internal quotations omitted).  When Dowe signed the DRA in 1998, she was on notice—or at a minimum on inquiry notice—of the facts underlying these claims.  Furthermore, these claims "could have been discovered," and in fact were "discovered," when they were publicly litigated before this Court in the *Vaughn* action starting in October 2004, which Dowe

Section 1985 does not specify a statute of limitations period, but, under applicable New York law, it is three years.  *See Marin v. N.Y. State Dep't of Labor*, 512 F. Supp. 353, 355 (S.D.N.Y. 1981); *see also Hernandez–Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984).  This claim accrued at the time of injury, which was either in 1999, or at the very latest, in 2004, when the *Vaughn* putative class action complaint raising the same claims that Dowe is raising again now was filed.  *See Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998) (a federal claim accrues at the time of injury).

Under New York law, fraud claims, including "conspiracy to commit fraud, must be commenced within 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . . discovered the fraud, or could with reasonable diligence have discovered it.'" *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 459 (S.D.N.Y. 2015) (quoting N.Y. C.P.L.R. § 213(8)).  The same statute of limitations, including the two year discovery rule, governs Dowe's aiding and abetting breach of fiduciary duty and conspiracy to commit breach of fiduciary duty claims.  *Adams v. Deutsche Bank AG & Deutsche Bank Sec., Inc.*, No. 11 Civ. 1893 (RJS), 2012 WL 12884365, at \*3 (S.D.N.Y. Sept. 24, 2012).

concedes involved the "same issues" (Original Compl. ¶ 12), and where Vaughn alleged that the Defendants were continuing to "conceal" their purported conspiracy. Vaughn Compl. ¶ 71. Dowe alleges that "**[a]t the center of this action** are the Agreements and the Defendant's conspiracy to agree to induce her to waive valuable litigation rights and the resulting diminished value of her claims as a result of the illegal Agreements to pay LMB to direct Class Plaintiffs into a claims resolution process, all while failing to disclose the Agreements and that LMB was in an unwaivable conflict of interest." Compl. ¶ 70 (emphasis added); Original Compl. ¶ 17. These allegations also formed the basis for the claims in *Vaughn*. *See, e.g.*, Vaughn 2005 Arbitration Opinion, 2005 WL 1949468, at *5 ("Vaughn contends that the Leeds Defendants had a complex scheme to settle employment discrimination claims *en masse*, and that this scheme involved capping liability for employers such as the Prudential Defendants in exchange for direct payment of attorney's fees by the employers."). To be on reasonable notice of a claim, a "plaintiff need not know each and every relevant fact," only "enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d. Cir. 1999).

It is beyond doubt that Dowe's claims "could have been discovered" long before this lawsuit was brought. Indeed, Vaughn was not the only PSI claimant to have brought a federal lawsuit in 2004, as the two plaintiffs in *Hernandez* brought similar claims at the same time as Vaughn, a lawsuit that was prompted by what they had read in "a newspaper article in the *New York Times*."[10] *Hernandez v. Gentile*, 04-cv-04885 (D.N.J. Sept. 28, 2006). "[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he

---

[10] Indeed, discovery materials that Dowe attaches to her Complaint were produced to Roper in 2007 in another litigation. *See, e.g.*, Complaint, Exhibits 1-5.

has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 152 (2d Cir. 2012) (internal quotations omitted).

Dowe pleads no facts demonstrating diligence on her part and provides no explanation for why she—unlike Vaughn and the *Hernandez* plaintiffs—did not file her claims sooner. Despite this publicly available litigation, it is apparent that Dowe did nothing. "Failure to investigate [is] fatal to the plaintiff's claim[s]." *Koch*, 699 F.3d at 156.

### B.     Dowe Cannot Claim the Benefit Of Equitable Tolling

Dowe's allegations that her claims are timely because of concealment by the Prudential and Leeds Defendants cannot save her claims. The alleged facts about which Dowe complains were not concealed, they were *matters of public record*. Indeed*,* they were the very same facts that were before this Court in *Vaughn*. Regardless, "[l]itigants may benefit from equitable tolling only if they were 'diligent in pursuit of their claims.'" *Testa v. Becker*, 910 F.3d 677, 683 (2d Cir. 2018) (quoting *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018)). Not only does Dowe plead no diligence in pursuing her claims prior to her contact with an attorney in 2016, as noted above, she pleads no diligence *after* she learned about her claims. [11] Her claims of equitable tolling must fail.

---

[11] In addition, Dowe cannot receive the benefit of equitable estoppel if the alleged concealment forming the basis of her estoppel claim is the same conduct which underlies her cause of action for fraud. *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006). That is the case here.

### 1.    Dowe cannot plead "wrongful concealment"

To benefit from equitable tolling, a plaintiff must "articulate . . . acts by defendants that prevented [plaintiff] from timely commencing suit . . . . " *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007).   Although Dowe alleges "concealment," (*see* Compl. ¶¶ 105-111); she does not allege any acts taken by Defendants that prevented her from bringing her claims.   Unwillingness to divulge wrongful activities is not sufficient to establish wrongful concealment; "[t]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Williams v. Aries Financial, LLC*, 09-cv-1816, 2009 WL 3851675, at *9 (E.D.N.Y. 2009).   This is a high bar:   when a plaintiff seeks to invoke the doctrine of equitable estoppel on a fraudulent concealment claim they must prove "that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y.C. Trans. Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003).

While Dowe acknowledged the existence of the *Vaughn* litigation (in her Original Complaint at ¶ 12), she pleads no set of facts or circumstances as to why Vaughn was able to learn of his allegations by 2004, yet her claims could not have been brought until 2018.   At the time of the *Vaughn* action, there was widespread national press coverage of claims brought against the Leeds Defendants, and even widespread coverage of statements made by Vaughn's counsel, Roper, regarding PSI and Leeds purportedly "undermining" anti-discrimination laws through their actions.[12]   Under these circumstances, any tolling would have ended with the dismissal of the *Vaughn* litigation at the latest, because Dowe, like Vaughn, knew, "or should have known, the nature of [her] claim within the statutory period." *Corcoran*, 202 F.3d, at 543.

---

[12] *See, e.g.*, Sama Decl., Ex. D.  (*Suing the Street*, Newsweek, Dec. 5, 2004)*.*

### 2. Dowe does not plead "due diligence"

"Litigants may benefit from equitable tolling only if they were diligent in pursuit of their claims." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018); *Zerilli–Edelglass*, 333 F.3d at 80–81. As previously discussed, Dowe "was not 'diligent' in any sense of the word;" instead she "sat" on her rights from 1999 until December 2018. *Testa*, 910 F.3d. at 684 (holding plaintiff was not diligent nor eligible for equitable tolling where "he sat on his rights" for over 12 years).

Dowe pleads she "learned" of her claim in December 2016. But far from saving her claims, that fact only further dooms them. Even where the doctrine of equitable tolling applies, "[t]he plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." *Abbas*, 480 F.3d at 642 (internal quotations omitted). That means Dowe must have been diligent in prosecuting her claim after she purportedly learned of it, yet she waited nearly two years. Courts routinely dismiss claims of equitable tolling when a plaintiff delays the filing of a lawsuit by similar, or lesser amounts of time. *See, e.g.*, *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 295 (N.D.N.Y. 2012) (sixteen-month delay too long); *Tanz v. Kasakove*, No. 08 Civ. 1462 (LAK), 2008 WL 2735973, at *1 (S.D.N.Y. July 7, 2008) (fourteen-month delay too long); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 943–44 (S.D.N.Y. 1990) (same).

## III. Dowe's Claims Fail As a Matter Of Law

Even if this Court was to consider the merits—and overlook the untimeliness—of Dowe's claims, dismissal would be warranted. "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## A.     The Complaint Fails To Adequately Allege Conspiracy Claims Under Section 1985(2) and (3) (Count I and Count II)

To establish a claim under 42 U.S.C. § 1985, a plaintiff must allege with particularity that the defendant:  "(1) engaged in a conspiracy; (2) acted for the purpose of depriving a person of equal protection of the laws or equal privileges and immunities; (3) acted in furtherance of the conspiracy; and (4) caused plaintiff injury with respect to his person or property, or was deprived of a right or privilege of a citizen of the United States."  *Ross v. O'Donnell*, No. 13-CV-01250 (LEK/DEP), 2014 WL 3735667, at *4 (N.D.N.Y. July 29, 2014) (quoting *Mass v. McClenahan*, 893 F.Supp. 225, 231 (S.D.N.Y. 1995)).  Section 1985(2) specifically applies to conspiracies to commit obstruction of justice or witness tampering in federal or state court.  42 U.S.C. § 1985(2).  Dowe asserts claims under Sections 1985(2) and (3) arising out of essentially the same set of insufficiently pled facts and circumstances.  It is well established that "complaints containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights will be dismissed."  *See Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (internal quotations omitted).

### 1.     Dowe's Section 1985 claims are not cognizable because there are no allegations of state action

Claims of Section 1985 violations require "infringement by state action."  *Johnson v. Nextel Communs., Inc.*, --- Fed. App'x ---, 2019 WL 990800, at *2 (2d Cir. Feb. 28, 2019) (dismissing § 1985(3) claim alleging a purely private conspiracy); *Peavey v. Polytechnic Inst. of N.Y.*, 775 F. Supp. 75, 78–9 (E.D.N.Y. 1991), *aff'd*, 969 F.2d 1042 (2d Cir. 1992) (dismissing § 1985(3) claim finding that "[t]he right of access to the courts is guaranteed and protected from unlawful interference and deprivations by the state" (internal quotations omitted)).  Section 1985

claims can be an exception to the state action requirement, but only when the conspiracy is alleged to deprive plaintiff of a constitutional right guaranteed against private impairment, which the Supreme Court has recognized as the right to be free from involuntary servitude and the right to interstate travel, and which does not include equal protection. *Khan v. City of New York*, No. 14-CV-4665 (SLT) (VMS), 2016 WL 1128298, at \*8 (E.D.N.Y. Feb. 1, 2016).

The Prudential Defendants are not, and are not alleged to be, state actors. There are also no allegations that they have violated constitutional rights guaranteed against private impairment. Rather, Dowe alleges a conspiracy by private parties to deprive her of her rights of equal protection—including access to the courts—precisely the type of allegations which the Second Circuit has held to be insufficient to state a Section 1985 claim. *Johnson*, 2019 WL 990800, at \*2 (holding that rights to jury trial, effective, counsel, and access to the courts "are protected only against infringement by state action"). Therefore, all of the Section 1985 claims fail.

### 2.      Dowe fails to plead Section 1985 claims with the requisite particularity

Even if cognizable, Dowe's allegations as to the Prudential Defendants do not establish the elements of a Section 1985 claim with the requisite particularity.

Section 1985 "requires that the conspiracy is motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Peterson v. City of N.Y.*, No. 10 Civ 7283, 2018 WL 5811432, at \*4 (S.D.N.Y. Nov. 11, 2018); *see also Mira v. Kingston*, 715 Fed. App'x 28, 30 (2d Cir. 2017). Dowe does not set forth any factual allegations in the Complaint to support the claim that the alleged conspiracy stemmed from racial animus other than a single conclusory statement in the Section 1985(3) count.[13] While Dowe alleges that more than 300

---

[13] There is no reference to discriminatory animus in the Section 1985(2) count. *See Williams v. Long Beach Mortg. Co.*, No. 15-CV-5952 (KMK), 2016 WL 5720810, at \*7 (S.D.N.Y. Sept. 30,

African American and persons of color were among the universe of the Leeds Defendants' clients, the Court can take judicial notice of the fact that in *Vaughn* there were alleged to be more than 500 individuals who participated in the ADR process.  Dowe alleges that the conspiracy "targeted African-American PSI employees," yet she offers no facts in support of that allegation—nor can she—and her allegation of a race-based conspiracy is implausible on its face given that the DRA treats all participants similarly, regardless of race.[14]  Compl. ¶ 89.

The Section 1985(2) claim should be dismissed for the additional reason that Section 1985(2) applies to conspiracies to commit obstruction of justice or witness tampering in federal or state court, none of which is present here.  42 U.S.C. § 1985(2); *see Ajaj v. Fritz*, No. 07 Civ. 5959 (DF), 2011 WL 5116516, at *2 (S.D.N.Y. Oct. 27, 2011) (dismissing Section 1985(2) claim where plaintiff did not allege that defendant (1) "sought to deter him or any witness 'by force, intimidation, or threat' from attending or testifying in court" or (2) "conspired to injure

---

2016), *aff'd*, 709 F. App'x 92 (2d Cir. 2018) ("With respect to Plaintiff's purported claims under § 1985, claims brought pursuant to either §§ 1985(2) or (3), each require a showing of class-based invidiously discriminatory animus on the part of the conspiring parties." (internal quotations omitted)).

[14] The Complaint also does not set forth specific allegations establishing that there was an agreement between the Leeds and Prudential Defendants to enter into a conspiracy to deprive Dowe of her civil rights by retaining a portion of her settlement award in contravention of the DRA.  While Dowe claims that Defendants "entered into a conspiracy - explicitly established through the" DRA, the amended DRAs, and PSI's side letters about fees, she also alleges that the agreement to improperly retain a portion of her fees was a "secret agreement" yet provides no factual basis in support of the existence of this "secret" agreement. Compl. ¶¶ 5–6, 87.  The Complaint merely alleges general allegations that the Defendants "conspired," (*see* Compl. ¶¶ 18 and 66), which are insufficient. *See Webb v. Goord*, 340 F.3d 105, 110 (2d. Cir. 2003) (plaintiffs must allege "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end").  Furthermore, the Complaint does not allege specific facts identifying an "overt act" or agreement in connection with the claimed conspiracies.  The only act that the Complaint alleges relating to the Prudential Defendants is inaction in circumstances where the Prudential Defendants had no reason to doubt the Leeds Defendants' representations regarding disclosure to their clients and, indeed, no right to interfere in the Leeds Defendants' relationship with their clients.

[plaintiff] or any witness for having attended federal court or for having testified in federal court"). Dowe sets forth no facts or allegations that the Prudential Defendants used force, intimidation, or threats to prevent Plaintiff from accessing or attending federal or state courts.

**B.   Dowe's Remaining Claims Against the Prudential Defendants Fail Because the Prudential Defendants Owed No Duty To Dowe**

**1.   Dowe's Claims Against the Prudential Defendants For Fraudulent Concealment and Conspiracy To Commit Fraud Fail (Count IV, Count X)**

Dowe's fraudulent concealment claims are not cognizable against the Prudential Defendants. Dowe pleads that she retained the Leeds Defendants as her attorneys, and there was no fiduciary relationship between the Prudential Defendants and her. Indeed, her allegations that PSI and Schwimmer had obligations to disclose information to her, (Compl. ¶¶ 106–107), run contrary to the ethical obligations of an attorney not to communicate with individuals represented by counsel. *See, e.g.*, N.Y. Code of Professional Responsibility DR 7-104(a)(1) (updated through Dec. 28, 2007).

To establish a tort of fraudulent concealment a party must establish that: "(1) the opposing party had a duty to disclose material information, yet (2) made a materially false representation, (3) intended to defraud, (4) upon which the party reasonably relied and (5) suffered damages as a result." *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 496 (S.D.N.Y. 2004). Dowe's fraud claims fail for at least two independent reasons. First, the Prudential Defendants owed no duty to Dowe. Dowe pleads that she was an employee of PSI, but does not (and cannot) plead that a fiduciary duty existed between her and her employer particularly with respect to her claims against PSI. This is fatal to her fraudulent concealment claims against the Prudential Defendants. *See, e.g.*, *Albion All. Mezzanine Fund, L.P. v. State St. Bank & Tr. Co.*, 797 N.Y.S.2d 699, 704 (N.Y. Sup. Ct. 2003), *aff'd*, 2 A.D.3d 162 (1st Dep't

2003) (finding that although defendant allegedly had knowledge of third party's fraud, it was not liable for fraudulent concealment because it "had no duty of disclosure to plaintiffs because it had no fiduciary or other relationship with them").  Second, Dowe cannot claim to have relied on any of PSI's representations because in her settlement agreement, she affirmed that "she has not relied upon any representation or statement, written or oral, not set forth in this [Settlement] Agreement."  Sama Decl., Ex. B, ¶ 13. "[W]here a party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 734 (2d Cir. 1984); *see also Danann Realty Corp. v. Harris*, 157 N.E.2d 597 (N.Y. 1959).

Furthermore, the Second Circuit has made clear that [a] plaintiff may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005); *accord Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623 (RWS), 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007) ("[W]here the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the conspiracy claim is dismissed as duplicative."); *see also Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir. 1985) ("Count 7 added no new allegations to those of counts 1–6 except to reiterate that [defendants] had conspired to commit the acts heretofore described . . . [and therefore] Count 7 was properly dismissed . . . as duplicative . . . .").  Because Dowe's conspiracy claim offers no new allegations beyond those alleged in support of their fraudulent concealment claim against the Prudential Defendants, the fraud conspiracy claim must be dismissed as duplicative. *See e.g.*, *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 315 (S.D.N.Y. 2013).

**2.      Dowe's Claims Against the Prudential Defendants For Aiding & Abetting Breach of Fiduciary Duty, and Conspiracy To Commit Breach of Fiduciary Duty Fail (Count VI, Count IX)**

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). Further, "the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Pomerance v. McGrath*, 124 A.D.3d 481, 485 (N.Y. App. Div. 2015). As explained in the Leeds Defendants' motion to dismiss, Dowe has failed to plead an underlying cause of breach of fiduciary duty and, as such, her claims against the Prudential Defendants must fail. But even if successfully pled against the Leeds Defendants, her claims for aiding and abetting breach of fiduciary duty and conspiracy against the Prudential Defendants would still fail. As explained above, the Prudential Defendants owed no duty to Dowe and had no right to communicate directly with Dowe regarding her employment claims, and thus could not have knowingly aided the Leeds Defendants in any breach. Second, the conspiracy to commit breach of fiduciary duty, like the conspiracy to commit fraud claim, is duplicative and must be dismissed. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 591 (2d Cir. 2005).

## CONCLUSION

For the foregoing reasons, the Prudential Defendants respectfully request that the Court compel arbitration of the claims in the Complaint and dismiss the Complaint with prejudice or, in the alternative, dismiss the Complaint with prejudice.

May 20, 2019

Respectfully submitted,

/s/ Vincent A. Sama

Liza M. Velazquez
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3096
Facsimile: (212) 492-0096
lvelazquez@paulweiss.com

Vincent A. Sama
Catherine B. Schumacher
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8765
Facsimile: (212) 836-9676
vincent.sama@arnoldporter.com
catherine.schumacher@arnoldporter.com

*Counsel for Defendants Prudential Financial*
*Inc., allegedly parent and successor to*
*Prudential Securities, Inc.*, *and Eric Schwimmer*

- 24 -