UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
MAUREEN DOWE; ELVIE MOORE; and ESTHER :
BUCKRAM, individually and on behalf   :
of those Class Members similarly      :        18cv11633 (DLC)
situated,                             :
                                      :        OPINION AND ORDER
                         Plaintiffs,  :
                                      :
            -v-                       :
                                      :
LEEDS BROWN LAW, P.C.; LEEDS MORELLI  :
& BROWN, P.C.; LEEDS MORELLI & BROWN, :
LLP; LEEDS & MORELLI, P.C.; LENARD    :
LEEDS; STEVEN A MORELLI; JEFFREY K.    :
BROWN; PRUDENTIAL FINANCIAL INC.,     :
parent and successor in interest to   :
PRUDENTIAL SECURITIES, INC.; ERIC     :
SCHWIMMER; and JOHN DOES 1-25,        :
fictitious persons and entities,      :
                                      :
                         Defendants.  :
                                      :
--------------------------------------X

APPEARANCES

For the plaintiffs:
Andrew Lavoott Bluestone
233 Broadway, Suite 2702
New York, NY 10279

John W. Moscow
Lewis Baach Kaufman Middlemiss PLLC
405 Lexington Avenue
62nd Floor
New York, NY 10174

For defendants Prudential Financial Inc. and Eric Schwimmer:
Vincent A. Sama
Catherine B. Schumacher
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019

Liza M. Velazquez
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

For defendants Leeds Brown Law, P.C.; Leeds, Morelli & Brown,
P.C.; Leeds, Morelli & Brown, LLP; Leeds & Morelli, P.C.; Lenard
Leeds; Steven A. Morelli; and Jeffrey K. Brown:
Janice J. DiGennaro
Shari C. Lewis
Carol A. Lastorino
Rivkin Radler
929 RXR Plaza
Uniondale, New York 11556

DENISE COTE, District Judge:

Plaintiffs Maureen Dowe, Elvie Moore, and Esther Buckram
are former employees of Prudential Securities, Inc.
("Prudential") and former clients of the law firm Leeds &
Morelli, P.C. or its successors ("LMB").  In this putative class
action, plaintiffs allege that LMB conspired with Prudential to
settle discrimination claims against Prudential for less than
their true value, in exchange for side payments from Prudential
to LMB.

The plaintiffs' settlement agreements with Prudential
included an arbitration clause; LMB's retainer agreements with
the plaintiffs did not.  Prudential and LMB have separately
moved to compel arbitration or in the alternative to dismiss the
complaint as barred by the statute of limitations.  For the
reasons that follow, Prudential's motion to compel arbitration

is granted, and LMB's motion to compel arbitration is denied.
LMB's motion to dismiss is granted.

## Background

Unless otherwise noted, the following facts are taken from
the second amended complaint ("SAC") and assumed to be true for
the purpose of addressing this motion.

I.   The Alleged Conspiracy

Beginning in 1997, LMB solicited Prudential employees to
become clients of the firm and bring employment-discrimination
claims against Prudential.  Dowe was one such client, and in
January 1998 she signed a retainer agreement providing that LMB
would represent her in "negotiating a settlement against"
Prudential and that LMB would receive one third of the
settlement as attorneys' fees.

On February 13, 1998, LMB entered into a five-page Dispute
Resolution Agreement ("DRA") with Prudential.  The DRA provided
that Prudential and the employees represented by LMB had "agreed
to utilize confidential and informal dispute resolution
procedures for the resolution of" the employment-discrimination
claims.  According to the DRA, the employees "irrevocably
agree[d] to forgo a jury trial and submit to the dispute
resolution procedure described below."  That procedure required
the parties to first engage in negotiations and, if unable to

reach agreement, to submit the dispute to "binding mediation."
The DRA also provided that Prudential would pay the employees'
"reasonable attorneys' fees in connection with this process" and
that LMB would advise its clients concerning this fee
arrangement.  The DRA contained a confidentiality agreement,
requiring the employees and LMB not to disclose any information
regarding the employees' claims or the DRA.  In the DRA, LMB
represented that each of the employees had reviewed the
agreement and authorized LMB to execute the agreement on its
behalf.  The fifth page contained signature lines for LMB and
Prudential.

Despite these representations, plaintiffs allege that LMB
had not shown the DRA to its clients and never did so.  Instead,
LMB later presented its clients with a signature page for the
DRA and instructed them to sign.  Defendants have submitted a
signature page executed by Dowe on March 8, 1998.  It is
entitled Execution and Acknowledgement and contains a
declaration under penalty of perjury.  Dowe indicates that she
had "read the foregoing Agreement" and "agree[d] to the
provisions it contains . . . voluntarily with full understanding
of its consequences."  The signature page bears the page number
"6" and does not describe the substantive terms of the
agreement.

Unbeknownst to Dowe or the other employees, LMB and Prudential had also executed a side agreement on February 13, 1998 -- the same day they entered into the DRA.  In a letter to LMB, Prudential agreed that it would pay LMB $1,500,000 within one week of LMB's execution of the DRA.  The letter further stated that "[f]ollowing completion of the Dispute Resolution Procedure . . . [Prudential] agrees to entertain, in good faith, a request for reasonable additional attorneys' fees."  Between 1998 and 2000, Prudential paid LMB an additional $6,000,000 in fees.

## II.  Plaintiffs' Settlement Agreements

In February 1999, LMB informed Dowe that Prudential had offered $150,000 to settle her claim.  LMB recommended that Dowe accept the settlement, and she did so.  Dowe signed a settlement agreement on February 6, 1999.  That agreement, which defendants have submitted in support of their motions, was made between Dowe and Prudential.  Prudential therein agreed to pay Dowe $150,000 in exchange for release of her claims.  Dowe agreed not to disclose "any information regarding the amount of, terms of, or facts or circumstances underlying" the settlement.  The settlement agreement also included the following arbitration clause:

> Any claim or controversy arising out of or related to
> this Agreement or the interpretation thereof will be

settled by arbitration under the then prevailing
constitution and rules of the New York Stock Exchange,
Inc., or the National Association of Securities
Dealers, Inc.  Judgment based upon the decision of the
arbitrators may be entered in any court having
jurisdiction thereof.  The governing law of this
Agreement shall be the substantive and procedural law
of the State of New York.

In the agreement, Dowe also acknowledged that she had carefully read and understood its terms, had not relied on any extrinsic representations or statements, and had been encouraged to have the document reviewed by her attorney.  The document was executed by Prudential and Dowe.  It was not signed by LMB, nor was LMB mentioned anywhere in the settlement agreement.[1]

III. Procedural History

Dowe filed this suit on December 12, 2018.  On April 5, 2019, Dowe filed an amended complaint.  On May 20, LMB and Prudential filed separate motions to compel arbitration, or in the alternative to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  On June 10, Dowe filed the SAC, which added Moore and Buckram as named plaintiffs and added four new claims.[2]  Defendants' motions became fully submitted on August 9, 2019.

_____

[1] Defendants assert that plaintiffs Moore and Buckram executed settlement agreements with an identical arbitration provision and have submitted copies of those agreements.  Plaintiffs have not disputed defendants' assertion, and the SAC indeed alleges that Moore and Buckram settled their claims with Prudential.

[2] On June 12, the Court instructed the defendants to indicate how, if at all, the SAC affected their pending motions.

**Discussion**

I.   Motions to Compel Arbitration

Both LMB and Prudential have moved to compel arbitration of the claims brought against them.  Plaintiffs first argue that they are not bound by the arbitration clauses in their settlement agreements because the settlement agreements were fraudulently induced and are unenforceable.  Plaintiffs further argue that they cannot be compelled to arbitrate against LMB because the firm was not a signatory to the settlement agreements containing the arbitration clauses.  Prudential's motion to compel arbitration is granted,[3] and LMB's motion to compel arbitration is denied.

---

According to the defendants, "nothing asserted in the Second Amended Complaint rebuts the arguments raised in the Motions and the Court should still compel arbitration of Plaintiffs' claims or, in the alternative, dismiss them on statute of limitations grounds and because they lack merit."  On June 14, the Court set a briefing schedule for defendants' extant motions and provided that, in the event any of the new claims survived defendants' motions, the defendants would be afforded an opportunity to address those claims in a further motion.

[3] The motion to compel arbitration is also granted as to defendant Eric Schwimmer, the Prudential officer who signed the settlement agreements on Prudential's behalf.  See Huntsman Int'l LLC v. Albemarle Corp., 80 N.Y.S.3d 41, 43 (N.Y. App. Div. 2018) ("[C]orporate officers and employees [may] enforce arbitration agreements entered into by the corporate principal . . . .").

A.   Legal Standards

When deciding motions to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). That is, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party. Id. (citation omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted). Courts, rather than arbitrators, must decide whether parties have agreed to arbitrate "unless the parties clearly and unmistakably provide otherwise." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

The Federal Arbitration Act ("FAA") was enacted to counteract "widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Under § 2 of the FAA,

> A written provision in . . . a contract evidencing a
> transaction involving commerce to settle by

arbitration a controversy thereafter arising out of
such contract or transaction . . . shall be valid,
irrevocable, and enforceable, save upon such grounds
as exist at law or in equity for the revocation of any
contract.

9 U.S.C. § 2. The Supreme Court has repeatedly instructed that

the FAA reflects "both a liberal federal policy favoring

arbitration and the fundamental principle that arbitration is a

matter of contract." Concepcion, 563 U.S. at 339 (citation

omitted); see also Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612,

1621 (2018); Nitro-Lift Techs., L.L.C. v. Howard, 568 U.S. 17,

20 (2012); Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67

(2010). "This policy is founded on a desire to preserve the

parties' ability to agree to arbitrate, rather than litigate,

disputes." Nicosia, 834 F.3d at 229 (citation omitted). The

FAA thus "requires courts to enforce covered arbitration

agreements according to their terms." Lamps Plus, Inc. v.

Varela, 139 S. Ct. 1407, 1412 (2019).

1. Challenges to the Enforceability of an Agreement
to Arbitrate

When considering a motion to compel arbitration, courts

must resolve two questions: "(1) whether the parties agreed to

arbitrate, and, if so, (2) whether the scope of that agreement

encompasses the claims at issue." Holick v. Cellular Sales of

New York, LLC, 802 F.3d 391, 394 (2d Cir. 2015). Of particular

importance in this case is a distinction that the Supreme Court

9

has drawn between two types of challenges to the validity of arbitration agreements:

> One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006) (citation omitted). "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Id. at 449; see also Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (enforcing arbitration clause despite party's argument that the contract containing the clause was fraudulently induced).

Courts compel arbitration of a challenge to the validity of the contract as a whole "because [9 U.S.C.] § 2 states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' without mention of the validity of the contract in which it is contained." Rent-A-Center, 561 U.S. at 70 (emphasis in original). Thus, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and it may be enforced notwithstanding "a party's challenge to

10

another provision of the contract, or to the contract as a whole." Id. at 70-71 (citation omitted); see also Gingras v. Think Fin., Inc., 922 F.3d 112, 126, 128 (2d Cir. 2019) (considering the validity of an arbitration clause only after finding that plaintiffs had made "a specific, separate challenge to the arbitration clause").

Where a party brings a challenge to the very formation of a contract containing an agreement to arbitrate, however, the court must resolve that challenge itself in order to determine whether to compel arbitration. See Granite Rock, 561 U.S. at 296-97; see also Buckeye, 546 U.S. at 444 n.1 ("The issue of the contract's validity is different from the issue [of] whether any agreement . . . was ever concluded."). Formation issues may include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." Buckeye, 546 U.S. at 444 n.1 (citation omitted). When resolving these issues, "courts generally should apply ordinary principles that govern the formation of contracts." Granite Rock, 561 U.S. at 296; see also Starke v. SquareTrade, Inc., 913 F.3d 279, 288 (2d Cir. 2019).

2.    Enforcement of An Arbitration Agreement by a
              Nonsignatory

     A nonsignatory to an arbitration agreement may compel a

signatory to litigate claims between them when review of "the

relationship among the parties, the contracts they signed, and

the issues that [have] arisen among them discloses that the

issues the nonsignatory is seeking to resolve in arbitration are

intertwined with the agreement that the estopped party has

signed." Milligan v. CCC Info. Servs. Inc., 920 F.3d 146, 154

(2d Cir. 2019) (citation omitted).  As the preceding sentence

reveals, this rule is grounded in the doctrine of equitable

estoppel.  See Ross v. Am. Exp. Co., 547 F.3d 137, 143 (2d Cir.

2008).  Two requirements must be satisfied for a signatory to an

arbitration clause to be estoped from refusing arbitration

against a nonsignatory.  First, "the issues the nonsignatory is

seeking to resolve in arbitration" must be "intertwined with the

agreement that the estopped party has signed." Ragone v. Atl.

Video at Manhattan Ctr., 595 F.3d 115, 127 (2d Cir. 2010)

(citation omitted).  Second, "there must be a relationship among

the parties of a nature that justifies a conclusion that the

party which agreed to arbitrate with another entity should be

estopped from denying an obligation to arbitrate a similar

dispute with the adversary which is not a party to the

arbitration agreement." Id. (citation omitted).

A series of Second Circuit cases illuminate the contours of the rule.[4]  In Denney v. BDO Seidman, L.L.P., the plaintiffs alleged that the defendant accounting firm duped them into participating in a fraudulent tax scheme, causing plaintiffs financial losses when their taxes were selected for auditing. 412 F.3d 58, 62-63 (2d Cir. 2005).  The plaintiffs had entered into consulting agreements with the accounting firm, each of which contained an arbitration clause.  Id. at 61-62.  The plaintiffs further alleged that Deutsche Bank, a nonsignatory to the consulting agreements, had conspired with the accounting firm to implement the fraud.  Id. at 70.  The Second Circuit held that, because the plaintiffs alleged that Deutsche Bank and the accounting firm "acted in concert" to perpetrate the fraud, the plaintiffs could not "escape the consequences of those allegations by arguing that the . . . defendants lack the requisite close relationship" for estoppel.  Id.  The Court of Appeals remanded for the district court to determine "whether

_____

[4] The Supreme Court has instructed that state law governs whether a nonsignatory may enforce an arbitration clause.  Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009).  The arbitration clauses at issue here provide that they are governed by New York law.  No party has cited New York law concerning the ability of nonsignatories to enforce a contract, and the Court has located only limited New York authority on point.  See Huntsman Int'l LLC, 80 N.Y.S.3d at 43.  This Opinion thus relies on the Second Circuit cases, which represent general principles of contract law.  See Ragone, 595 F.3d at 126 (applying "common law principles of contract law" (citation omitted)).

the issues the Deutsche Bank defendants seek to arbitrate are indeed intertwined with the consulting agreements." Id.

A pair of later cases limit the reach of Denney. In Sokol Holdings, Inc. v. BMB Munai, Inc., the plaintiffs had entered into a contract to purchase an interest in an oil field. 542 F.3d 354, 357 (2d Cir. 2008). The contract contained an arbitration clause. Id. Plaintiffs alleged that defendants, nonsignatories to the contract, had tortiously interfered with plaintiffs' purchase rights. Id. The Second Circuit found that the claims against the nonsignatory defendants were "intertwined" with the contract, but explained that,

> [I]n addition to the 'intertwined' factual issues,
> there must be a relationship among the parties of a
> nature that justifies a conclusion that the party
> which agreed to arbitrate with another entity should
> be estopped from denying an obligation to arbitrate a
> similar dispute with the adversary which is not a
> party to the arbitration agreement.

Id. at 359. Because the plaintiffs "in no way consented to extend [the arbitration] agreement to an entity which tortiously subverted [their] rights under the agreement," the nonsignatories were not entitled to compel arbitration. Id. at 362.

In Ross v. American Express Co., the plaintiffs were holders of certain branded credit cards. 547 F.3d at 139. They had entered into cardholder agreements with the banks that

issued the cards.  Id.  Those agreements contained arbitration

clauses.  Id. at 139-40.  The plaintiffs alleged that American

Express ("Amex") had engaged in an antitrust conspiracy with the

banks that issued their credit cards.  Id. at 139.  The Second

Circuit held that Amex could not invoke the arbitration clauses

to which it was not a signatory, reasoning that the "necessary

circumstance of some relation between Amex and the plaintiffs

sufficient to demonstrate that the plaintiffs intended to

arbitrate this dispute with Amex" was "utterly lacking."  Id. at

146.  The Court expanded:  "Amex's only relation with respect to

the cardholder agreements was as a third party allegedly

attempting to subvert the integrity of the cardholder

agreements."  Id.

     The Ross panel then addressed Denney, which it

characterized has having found that "conspiracy allegations were

sufficient to support the possibility of the application of

estoppel."  Id. at 147.  The Court of Appeals observed that

Denney had remanded for the district court to consider the

merits of the estoppel claim.  Id.  The Court of Appeals added

that

          application of estoppel in the context of conspiracy
          allegations is problematic.  It is problematic because
          arbitration is of course a matter of contract[, and]
          under general principles of contract law parties
          should not be compelled to arbitrate unless the

15

> totality of the evidence supports an objective
> intention to agree to arbitrate.

Id. at 148 (citation omitted).

Most recently, in Ragone, the plaintiff brought employment-discrimination claims against her employer, a broadcast production company, and against ESPN, a client of the production company.  595 F.3d at 117-18.  The plaintiff's employment contract with the production company contained an arbitration clause.  Id. at 118.  ESPN was not a signatory to the plaintiff's employment contract, but the complaint indicated that when the plaintiff was hired by the production company, "she understood ESPN to be, to a considerable extent, her co-employer."  Id. at 127.  Because the plaintiff "knew from the date of her employment . . . that she would extensively treat with ESPN personnel," the Second Circuit held that ESPN could compel arbitration of the plaintiff's claims.  Id. at 128.

B.    Application to the Settlement Agreements

1.    Enforcement by Prudential

There is no dispute that the claims against Prudential fall within the broad arbitration clause contained in the settlement agreement between the plaintiffs and Prudential.  The plaintiffs contend, however, that Prudential may not compel arbitration based upon the arbitration clause contained in their settlement agreements because the settlement agreements were fraudulently

16

induced.  This is not the law.  A court may consider a claim of "fraud in the inducement of the arbitration clause itself," but "claims of fraud in the inducement of the contract generally" are for arbitrators to decide.  Buckeye, 546 U.S. at 445–46. The plaintiffs make no allegations targeted at the arbitration clause itself; rather, they allege a conflict of interest that tainted the agreement as a whole.  Under the Supreme Court's cases, this issue is for the arbitrator to decide.

Plaintiffs strenuously argue that Johnson v. Nextel Communications, Inc., 660 F.3d 131 (2d Cir. 2011), requires a different result.  It does not.  While the allegations in Nextel were similar to the allegations here -- in both cases, an alleged conspiracy between LMB and an employer to settle discrimination claims for diminished value -- Nextel has nothing to say about whether a court or an arbitrator should decide plaintiffs' fraudulent inducement challenges to their settlement agreements.

### 2.   Enforcement by Nonsignatory LMB

In contrast, LMB's motion to compel arbitration must be denied.  Plaintiffs, by agreeing to arbitrate disputes arising out of their settlement agreements with Prudential, did not agree to arbitrate claims they might have against LMB.  Nor are

plaintiffs estopped from seeking court adjudication of their claims against LMB.

It is assumed for purposes of the analysis that follows that the issues LMB seeks to resolve in arbitration are intertwined with the settlement agreements between Prudential and the plaintiffs.  To require a signatory to an arbitration agreement to arbitrate its claims against a non-signatory like LMB, however, LMB must also show that the relationship among the plaintiffs, Prudential, and LMB estops the plaintiffs from denying an obligation to arbitrate its dispute with LMB.  See Ragone, 595 F.3d at 127.  But LMB is not "an entity that was, or would predictably become, with [plaintiffs'] knowledge and consent, affiliated or associated with [Prudential] in such a manner as to make it unfair to allow [plaintiffs'] to avoid [their] commitment to arbitrate."  Sokol Holdings, 542 F.3d at 361.  Nor did the plaintiffs' settlement agreements contemplate an ongoing relationship between LMB and Prudential.  Cf. Ragone, 595 F.3d at 128 (involving a plaintiff who "knew from the date of her employment . . . that she would work with and be supervised by" the nonsignatory).

As far as plaintiffs knew, they had an attorney-client relationship with LMB, and LMB's only relationship with Prudential was adversarial.  This is not the sort of

relationship that would make it unfair for plaintiffs to avoid arbitrating claims against LMB.  A client has no reason to foresee that her attorney may be aligned with her adversary, or that concessions made to the adversary may accrue to the attorney's benefit as well.[5]  There is thus no reason to conclude that plaintiffs should be estopped from pursuing their claims against LMB in court.

LMB argues that estoppel is called for by this Court's opinion in Vaughn v. Leeds, Morelli & Brown, P.C., No. 04cv8391 (DLC), 2005 WL 1949468 (S.D.N.Y. Aug. 12, 2005).  Vaughn involved essentially these same allegations and allowed LMB to compel arbitration based on the settlement agreements.  Id. at *1-2, 4-5.  But Vaughn predated Sokol Holdings and Ross and relied heavily on Denney's suggestion that allegations of concerted misconduct were sufficient to give rise to estoppel. Id. at *4-5.  As discussed above, Sokol Holdings and Ross sharply limited the applicability of concerted-misconduct estoppel.  In light of this intervening change in law, Vaughn's

---

[5] Cf. N.Y. State Bar Ass'n, New York Rules of Professional Conduct, Rule 1.7, cmt. 1 (2018), http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671 ("The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties.").

estoppel holding is no longer viable, and LMB cannot compel arbitration of its claims.

## II.  Motions to Dismiss on Statute of Limitations Grounds

Dowe filed this suit in 2018, alleging that the settlement she received from Prudential in 1999 -- nearly two decades prior -- did not reflect the true value of her discrimination claims. Her claims are untimely, as are the claims of the other named plaintiffs; LMB's motion to dismiss is granted on that basis.

Plaintiffs assert two federal and nine New York claims against LMB.  The federal claims are (1) conspiring to deprive persons of the equal protection of the laws, in violation of 42 U.S.C. § 1985(3); and (2) conspiring to impede the due course of justice, in violation of 42 U.S.C. § 1985(2).  The New York claims are (1) fraudulent concealment; (2) conspiracy to commit fraud; (3) breach of fiduciary duty; (4) conspiracy to commit breach of fiduciary duty; (5) legal malpractice; (6) deceit, in violation of N.Y. Judiciary Law § 487(1); (7) collusion, in violation of N.Y. Judiciary Law § 487(1); (8) willfully receiving money for disbursements not incurred, in violation of N.Y. Judiciary Law § 487(2); and (9) conversion by taking client funds without authority.  Each of these claims is barred by the statute of limitations.

A.  Legal Standards

1.  State Claims

Under New York law, an "action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  In the absence of fraud, causes of action that sound in tort, including those for malpractice, "accrue[] when an injury occurs, even if the aggrieved party is then ignorant of the wrong or injury." Ackerman v. Price Waterhouse, 644 N.E.2d 1009, 1011 (N.Y. 1994).

"[I]t is proper under New York law to dismiss a fraud claim on a motion to dismiss pursuant to the two-year discovery rule when the alleged facts . . . establish that a duty of inquiry existed and that an inquiry was not pursued."  Koch v. Christie's Int'l PLC, 699 F.3d 141, 155–56 (2d Cir. 2012). Under this doctrine,

> Where the circumstances are such as to suggest to a
> person of ordinary intelligence the probability that
> he has been defrauded, a duty of inquiry arises, and
> if he omits that inquiry when it would have developed
> the truth, and shuts his eyes to the facts which call
> for investigation, knowledge of the fraud will be
> imputed to him.

Id. at 155 (citation omitted).  The "duty to inquire is triggered by information that relates directly to the

misrepresentations and omissions the [p]laintiffs later allege in their action against the defendants. The triggering information need not detail every aspect of the subsequently alleged fraudulent scheme." Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013) (citation omitted). "[T]he court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." Id. at 362 (citation omitted).

New York also recognizes the doctrine of "equitable estoppel,"[6] which "preclude[s] a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing which produced the long delay between the accrual of the cause of action and the institution of the legal

---

[6] New York law, in a contrast with some federal authorities,

> appears to use the label "equitable estoppel" to cover both the circumstances where the defendant conceals from the plaintiff the fact that he has a cause of action and where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.

Pearl v. City of Long Beach, 296 F.3d 76, 82 (2d Cir. 2002) (citation omitted). The federal doctrine of "equitable tolling" does not apply to New York causes of action. Jang Ho Choi v. Beautri Realty Corp., 22 N.Y.S.3d 431, 432 (N.Y. App. Div. 2016).

proceeding." Putter v. N. Shore Univ. Hosp., 858 N.E.2d 1140, 1142 (N.Y. 2006) (citation omitted). "Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the defendant." Id. Equitable estoppel is an "extraordinary remedy." Pahlad ex rel. Berger v. Brustman, 823 N.Y.S.2d 61, 63 (N.Y. App. Div. 2006) (citation omitted).

"[C]oncealment without actual misrepresentation" gives rise to equitable estoppel only when the plaintiff can "demonstrate a fiduciary relationship which gave the defendant an obligation to inform him or her of facts underlying the claim." Zumpano v. Quinn, 849 N.E.2d 926, 930 (N.Y. 2006) (citation omitted); see also Kaufman v. Cohen, 760 N.Y.S.2d 157, 167 (N.Y. App. Div. 2003).

"A plaintiff seeking to apply the doctrine of equitable estoppel must establish that subsequent and specific actions by defendants somehow kept him or her from timely bringing suit." Putter, 858 N.E.2d at 1142 (citation omitted). "Where the same alleged wrongdoing that [underlies] the plaintiffs' equitable estoppel argument is also the basis of their tort claims, equitable estoppel will not lie." Cusimano v. Schnurr, 27

N.Y.S.3d 135, 140 (N.Y. App. Div. 2016).  There must be a "later fraudulent misrepresentation . . . for the purpose of concealing the former tort."  Ross v. Louise Wise Servs., Inc., 868 N.E.2d 189, 198 (N.Y. 2007).  This general limitation on equitable estoppel applies to fraud claims as well "because otherwise, the mere assertion of an underlying fraudulent act would always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous."  Kaufman, 760 N.Y.S.2d at 167.

"Furthermore, plaintiffs must demonstrate their due diligence in ascertaining the facts and in commencing the action in order to seek" equitable estoppel.  MBI Int'l Holdings Inc. v. Barclays Bank PLC, 57 N.Y.S.3d 119, 126 (N.Y. App. Div. 2017); see also Rite Aid Corp. v. Grass, 854 N.Y.S.2d 1, 2 (N.Y. App. Div. 2008).  Once the facts giving rise to the estoppel have "ceased to be operational" -- for example, once a plaintiff discovers a possible claim despite the alleged concealment -- the plaintiff must then bring suit "within a reasonable time." Simcuski v. Saeli, 377 N.E.2d 713, 717 (N.Y. 1978); see also Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

2.    Federal Claims

"Where a federal statute is silent with respect to the applicable limitations period, courts apply the most appropriate or analogous state statute of limitations."  M.D. v. Southington

24

Bd. of Educ., 334 F.3d 217, 221-22 (2d Cir. 2003) (citation omitted).  Claims brought under 42 U.S.C. § 1985 -- like those under § 1983 -- are generally subject to the limitations period provided by state law for personal injury actions.  See Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." (citation omitted)); Dique v. N.J. State Police, 603 F.3d 181, 185, 189 (3d Cir. 2010) (applying limitations period for personal injury actions to § 1985 claim); Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96-97 (1st Cir. 2004) (applying limitations period for tort actions to § 1985 claim).

For federal claims that borrow state statutes of limitation in this manner, courts "borrow not only a state's limitations period but also its 'tolling rules.'"  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  While the Second Circuit has not definitively resolved the question, it "appears to regard [fraudulent] concealment as a tolling rule to which borrowed state law applies."  Id. at 83.[7]  Since the parties have

---

[7] At any rate, the federal common law doctrine of equitable tolling contains a rule similar to New York's discovery-accrual and equitable estoppel doctrines.  That is,

25

not argued that there is a relevant difference in state and federal law, this Opinion relies on New York law to evaluate the estoppel arguments for the federal as well as the state claims. Federal law, however, determines when the federal causes of action accrue. Id. at 80.

B.    Application to the Claims Against LMB

None of plaintiffs' claims against LMB is timely. This Opinion assumes, for the purpose of analysis, that all the state-law claims against LMB are subject to the statute of limitations in N.Y. C.P.L.R. § 213(8), which runs six years after a cause of action accrued or two years after the plaintiff "could with reasonable diligence have discovered" the alleged fraud.[8] It assumes that the federal-law claims are subject to a

---

Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.

Corcoran v. New York Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (citation omitted).

[8] LMB argues that plaintiffs' fiduciary-duty, malpractice, and conversion claims are not "based on fraud," as required to apply the two-year discovery rule in N.Y. C.P.L.R. § 213(8). But see Mitschele v. Schultz, 826 N.Y.S.2d 14, 19 (N.Y. App. Div. 2006) (applying fraud statute of limitations rather than three-year

three-year statute of limitations.  See Campbell, 782 F.3d at

100.  The latest-occurring injuries claimed by plaintiffs are

that they were paid "arbitrarily undervalued amounts for

injuries to their careers and dignity."  Unless the discovery

rule delays accrual of the state-law claims, the plaintiffs'

claims therefore accrued, at the latest, in 1999, when they

signed agreements settling their claims against Prudential.

This action was not filed until December 12, 2018.  In short,

the only possible avenues for plaintiffs to plead timely claims

are the two-year discovery rule under N.Y. C.P.L.R. § 213(8) or

equitable estoppel due to fraudulent concealment.  Neither path

is open to plaintiffs.

> 1.   Discovery Accrual

The two-year discovery rule does not make plaintiffs'

claims timely.  Taking plaintiffs' allegations as true, they

should have been suspicious of LMB as early as 1998.  Plaintiffs

allege that they were tricked into signing the DRA by LMB

attorneys who presented plaintiffs with only a signature page

---

malpractice statute of limitations, where the alleged fraud was
"not simply the failure to disclose the malpractice"); Kaufman,
760 N.Y.S.2d at 164 (stating that "a cause of action for breach
of fiduciary duty based on allegations of actual fraud" is
subject to the statute of limitations for fraud).  Even applying
the discovery rule, these claims are untimely, so the Court need
not determine whether a shorter statute of limitation applies.

and directed them to sign it. The "Execution and

Acknowledgement" signed by Dowe recites,

> I, Maureen Dowe, have read the foregoing Agreement and
> I accept and agree to the provisions it contains and
> hereby execute it voluntarily with full understanding
> of its consequences.
>
> I declare under penalty of perjury under the laws of
> the State of New York that the foregoing is true and
> correct.

The signature page is numbered at the bottom, page "6".[9]

A reasonably diligent person would have asked to see the

first five pages before agreeing to sign such a document; having

failed to so inquire, the plaintiffs cannot rely on the two-year

discovery rule to render their claims timely. Cf. Guilbert v.

Gardner, 480 F.3d 140, 147 (2d Cir. 2007) (concluding that a

plaintiff could have discovered a fraud, where a "dearth of

documents" evidencing an oral promise to the plaintiff "should

have suggested to [the plaintiff] that something was awry");

Epiphany Cmty. Nursery Sch. v. Levey, 94 N.Y.S.3d 1, 5 (N.Y.

App. Div. 2019) (finding that a plaintiff entity would have

---

[9] In deciding a motion to dismiss, a court may consider any
documents that are "'integral' to the complaint." Sierra Club
v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018). "A matter is
deemed 'integral' to the complaint when the complaint relies
heavily upon its terms and effect." Palin v. New York Times
Co., 940 F.3d 804, 811 (2d Cir. 2019) (citation omitted). The
SAC relies heavily on allegations about the nature of
plaintiffs' acknowledgement of the DRA. The content of Dowe's
signature page is thus properly considered by the Court.

uncovered fraud in an exercise of reasonable diligence, when its executive director signed suspicious asset-purchase documents without adequate investigation); Sheth v. New York Life Ins. Co., 764 N.Y.S.2d 414, 415 (N.Y. App. Div. 2003) (reasoning that "contracts signed by plaintiffs . . . had they been read by plaintiffs as they could have been, would have clearly apprised them" of the fraud they alleged was concealed).  A reasonable investigation in 1998 or 1999 would have revealed the claims asserted here -- the DRA itself disclosed that Prudential would pay "reasonable attorneys' fees" in connection with the dispute resolution procedure.  Because plaintiffs signed their agreement to the DRA without asking to see it, they did not exercise reasonable diligence.

In the ensuing years, more and more of the facts that the plaintiffs rely on here were publicly reported and thus discoverable by a reasonable investigation.[10]  In 2000, the New York Times reported allegations that LMB had offered to resolve discrimination suits against an apartment complex through

---

[10] In deciding a motion to dismiss, courts may "properly consider matters of which judicial notice may be taken."  Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (citation omitted); see also Koch, 699 F.3d at 146 n.2 (noting that the district court took judicial notice of news coverage in deciding a motion to dismiss on statute of limitations grounds).

arbitration in exchange for a payment of $7,500,000 in fees.[11]
In 2004, Newsweek reported allegations that LMB's "modus
operandi is to cut a lot of quick settlements" that
"shortchanged" its clients "but made the firm's partners very
rich."[12]  The allegations made here by plaintiffs are literally
old news.  Consequently, plaintiffs could have discovered the
facts underlying their claims in the exercise of reasonable
diligence.

Indeed, other plaintiffs filed litigation very similar to
the present suit.  In 2004, a putative class action against LMB
and Prudential was filed in this Court, alleging that the two
entities had "conspire[d] and enter[ed] into a secret agreement
or agreements" that "provided for the payment of fees by
[Prudential] directly to [LMB] without disclosure to" LMB's
clients.  Complaint ¶ 12, Vaughn v. Leeds, Morelli & Brown,
P.C., No. 04cv8391 (DLC) (S.D.N.Y. Oct. 25, 2004).  Another
similar action was filed in 2004 in the District of New Jersey.
See Hernandez v. Gentile, No. 04cv4885 (GEB) (D.N.J. Oct. 4,
2004).  This prior litigation confirms that plaintiffs could

--------

[11] John W. Fountain, Co-Op City Accuses a Law Firm of Extortion,
N.Y. Times (July 8, 2000), https://www.nytimes.com/2000/07/08/
nyregion/co-op-city-accuses-a-law-firm-of-extortion.html.

[12] Suing the Street, Newsweek (Dec. 5, 2004), https://
www.newsweek.com/suing-street-123331.

have discovered their claims in the exercise of reasonable
diligence.

            2.   Equitable Estoppel

    Nor is LMB equitably estopped from raising the statute of
limitations as a defense.  First, for the reasons just
discussed, plaintiffs did not exercise the due diligence
required in discovering their claims.  See MBI Int'l Holdings
Inc., 57 N.Y.S.3d at 126 (requiring "due diligence in
ascertaining the facts").  That lack of diligence reaches as far
back as 1998, when Dowe, under penalty of perjury, acknowledged
and agreed to the terms of the document from which this lawsuit
arises.

    Second, even after plaintiffs learned of the claims, they
did not exercise due diligence in bringing the action.
Plaintiffs allege that Dowe learned about LMB's misconduct from
a New Jersey attorney on December 15, 2016.  The original
complaint in this case was filed nearly two years later, on
December 12, 2018.  Where the central allegations at issue have
been public knowledge for over a decade, there is no
justification for Dowe having delayed an additional two years
after acquiring actual knowledge of the claims at issue.[13]  Cf.

_____

[13] This result applies a fortiori to Buckram, who the SAC alleges
learned in 2001 "from another [Prudential] employee that there
was a potential issue with regard to the propriety of the legal

                            31

<u>Tanz v. Kasakove</u>, No. 08cv1462 (LAK), 2008 WL 2735973, at *1
(S.D.N.Y. July 7, 2008) (rejecting equitable-estoppel argument
where plaintiff had delayed bringing suit for fourteen months
after discovery of her claims).[14]

## Conclusion

Prudential's May 20, 2019 motion to compel arbitration is
granted.  LMB's May 20, 2019 motion to dismiss is granted.  The

---

fees that LMB had deducted" from her settlement with Prudential.
A seventeen-year delay in bringing suit is not reasonable.  The
SAC makes no diligence-related allegations with respect to
Moore, but plaintiffs' opposition brief states that he learned
about the "secret agreement" for the first time in 2019.  LMB
responds that Moore in 2002 "settled and released LMB from the
<u>identical</u> claims he is asserting here" and has filed what
appears to be a settlement agreement between Moore and LMB.  The
Court cannot take notice of this extrinsic evidence on a motion
to dismiss, so the result as to Moore turns solely on his lack
of diligence in discovering the claims.

[14] Because the plaintiffs' lack of diligence prevents their
reliance on the doctrine of equitable estoppel, it is
unnecessary to address the additional reasons LMB gives for
barring plaintiffs' reliance on this doctrine.  <u>Cf.</u> <u>Brean
Murray, Carret & Co. v. Morrison & Foerster LLP,</u> 87 N.Y.S.3d
178, 180 (N.Y. App. Div. 2018) ("Even if plaintiff's allegations
of concealment were true, plaintiff has failed to demonstrate
its due diligence . . . ." (citation omitted)).

action against Prudential is stayed pending the outcome of arbitration proceedings.

Dated:     New York, New York
           November 22, 2019

_____
DENISE COTE
United States District Judge